UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISAAC SOLOMON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT CORPORATION, MICHEL COMBES, and ANDREW DAVIES,<br><br>Defendants. | Civil Action No. _____<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>Jury Trial Demanded |

Plaintiff Isaac Solomon ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant Sprint Corporation ("Sprint" or the "Company") securities between January 31, 2019 and April 16, 2019, inclusive (the "Class Period").  This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

1

2. Sprint is a communications company offering a comprehensive range of wireless and wireline communications products and services that are designed to meet the needs of individual consumers, businesses, government subscribers and resellers.

3. During the Class Period, and unbeknownst to investors, Sprint misled investors by highlighting that it had 309,000 total postpaid net additions, a widely-watched metric by Wall Street analysts, while failing to disclose that these additions were not new customers, but instead driven by free lines offered to Sprint customers and the inclusion of less valuable tablet and other non-phone devices, as well as pre- to post-paid migrations that do not represent new Sprint customers.

## JURISDICTION AND VENUE

4. The federal law claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

6. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b). Sprint stock trades on the New York Stock Exchange ("NYSE"), and many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this District.

8. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

9. Plaintiff, as set forth in the attached Certification, purchased Sprint securities at artificially inflated prices during the Class Period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

10. Defendant Sprint Corporation a Delaware corporation with principal executive offices located at 6200 Sprint Parkway, Overland Park, Kansas 66251. The Company's common stock trades on the NYSE under the ticker symbol "S".

11. Defendant Michel Combes ("Combes") has been the Chief Executive Officer of Sprint since May 2018.

12. Defendant Andrew Davies ("Davies") has been the Chief Financial Officer of Sprint since July 2018.

13. Collectively, Combes and Davies are referred to throughout this complaint as the "Individual Defendants".

14. The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their positions with the Company

and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

15. On Sunday, April 29, 2018, T-Mobile US, Inc. and Sprint, the nation's third- and fourth-largest wireless carriers, respectively, agreed to a nearly $27 billion merger.

16. The Class Period begins after trading closed on January 31, 2019. On that date, Sprint filed its Form 10-Q for the period ended December 31, 2018, which stated in pertinent part:

> Subscriber Results
>
> Retail Postpaid — **During the three-month period ended December 31, 2018, net postpaid subscriber additions were 309,000 compared to 256,000 in the same period in 2017.** The net additions in the current quarter were primarily driven by net subscriber additions of other data devices and non-Sprint branded retail postpaid phones. The Company's non-Sprint branded postpaid offering allows prepaid customers to purchase a device under our installment billing program. This program provides prepaid customers with access to this offer under their respective brands. Qualified customers on this non-Sprint branded postpaid offering receive an extension of credit to purchase their device. The subscriber will remain classified as postpaid at the conclusion of their installment billing payments. During the quarter ended December 31, 2018, net subscriber additions under the non-Sprint branded postpaid plan offering were 107,000 and are included in total retail postpaid subscribers above.

17. The statements identified above were materially false and misleading, and omitted material information to make the statements not misleading when issued, because Sprint omitted to disclose, as it would later admit, that the data was "incomplete," and "not a substitute for a realistic analysis of the key factors that are most probative of Sprint's overall competitive position and prospects," because "postpaid net additions recently have been driven by 'free lines' offered to Sprint customers and the inclusion of less valuable tablet and other non-phone devices, as well as pre to post migrations that do not represent 'new' Sprint customers."

18.     Pursuant to the Sarbanes-Oxley Act of 2002, Combes and Davies signed certifications with respect to Sprint's Form 10-Q for the period ended December 31, 2018 attesting that they reviewed the Form 10-Q prior to filing, that it did not contain untrue statements, that it fairly represented the financial condition of the company, and that the company's internal controls are effective.

19.     The Company and the Individual Defendants acted with scienter in that they knew that the document described at paragraph 16 would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements and/or their associations with the Company that made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

20.     The truth was revealed on April 15, 2019, when Sprint filed a letter with the Federal Communications Commission ("FCC") regarding the "Applications of T-Mobile US, Inc. and Sprint Corporation for Consent to Transfer Control of Licenses and Authorizations, WT Docket No. 18-197" (the "FCC Letter").  The FCC Letter stated in pertinent part:

> Sprint's postpaid net additions recently have been driven by "free lines" offered to Sprint customers and the inclusion of less valuable tablet and other non-phone devices, as well as pre to post migrations that do not represent "new" Sprint customers. Sprint lost [BEGIN HIGHLY CONFIDENTIAL] [END HIGHLY CONFIDENTIAL] Sprint postpaid handset subscribers in 3Q FY2018 and is expected to lose over [BEGIN HIGHLY CONFIDENTIAL] [END HIGHLY CONFIDENTIAL] postpaid handset subscribers for all of FY2018 when excluding these pre to post migrations. ***While these public statements and the individual metrics cited are all accurate, they are incomplete*** and none are a substitute for a

> realistic analysis of the key factors that are most probative of Sprint's overall competitive position and prospects.

(Emphasis added.)

21. The FCC Letter was referenced in a Wall Street Journal Article entitled "T-Mobile-Sprint Deal Runs Into Resistance From DOJ Antitrust Staff," published on April 16, 2019 (the "April 16, 2019 Wall Street Journal Article"). The article made reference to the FCC Letter, noting that "Sprint said in a Monday FCC filing that its current performance would be unsustainable without the merger due to weak network infrastructure and a customer base prone to leave in search of better deals."

22. The Wall Street Journal published another article on April 18, 2019 entitled "Sprint Tells Regulators Its Business Is Worse Than Earlier Portrayed." This article stated in pertinent part:

> With its proposed merger with [T-Mobile] under pressure, the wireless carrier told regulators this week that its performance isn't as strong as it appears and it will struggle to operate as a stand-alone company.
>
> The recent gains in so-called postpaid connections—a closely watched measure of monthly accounts not paid in advance—were driven by free lines given to existing Sprint customers, the company disclosed in a regulatory filing dated Monday. The tally also includes tablet connections and customers switching their phones from Sprint's prepaid services.
>
> Those aren't new Sprint customers. The No. 4 U.S. carrier by subscribers lost lucrative postpaid handset connections last quarter and expects to lose them for the entirety of the fiscal year that ended in March, excluding the prepaid-to-postpaid customer shifts, according to the filing.
>
> When it reported results for the last three months of 2018, Sprint highlighted that it had 309,000 total postpaid net additions, a year-on-year improvement. Sprint entered 2019 with 32.6 million postpaid connections and 8.8 million prepaid connections.
>
> [Chart Omitted]
>
> "While these public statements and the individual metrics cited are all accurate, they are incomplete," according to the filing by Sprint's lawyers to the Federal

Communications Commission, which was partly redacted. A Sprint spokeswoman declined to comment.

23. Following the submission of the FCC Letter, Sprint's stock price fell from $6.10 per share at close on Friday, April 12, 2019 to $5.88 per share at close on Monday, April 15, 2019, a drop of roughly 3.61%. Sprint's stock price fell again following the publication of the April 16, 2019 *Wall Street Journal* article, from a close of $6.01 per share on April 16, 2019 to $5.64 per share at the close on April 17, 2019, a drop of over 6%.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Sprint securities between January 31, 2019 and April 15, 2019, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

25. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. More than 621.74 million Sprint shares trade on the NYSE.

26. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    (a)    Whether the Exchange Act was violated by Defendants;

    (b)    Whether Defendants omitted and/or misrepresented material facts;

    (c)    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e) Whether the price of the Company's securities was artificially inflated; and

(f) The extent of damage sustained by Class members and the appropriate measure of damages.

27. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

28. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FRAUD ON THE MARKET**

30. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) The omissions and misrepresentations were material;

(c) The Company's securities traded in efficient markets;

(d) The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e) Plaintiff and other members of the class purchased the Company's securities between the time Defendants misrepresented or failed to disclose material

facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

31. At all relevant times, the markets for the Company's securities were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's securities, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

32. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

33. Sprint's stock price closed trading at $6.10 per share on Friday, April 12, 2019. On Monday, April 15, 2019, the day the FCC Letter was filed, Sprint's stock price closed at $5.88 per share, a decline of roughly 3.61%. Then, following the publication of the April 16, 2019 Wall Street Journal Article, Sprint's stock price fell from a close of $6.01 per share on April 16, 2019, to close at $5.64 per share on April 17, 2019, a decline of over 6%. These declines were attributable, in part if not in whole, to the disclosures set out in the FCC Letter.

9

## CAUSES OF ACTION

### COUNT I

**Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

34. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

35. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the Class Period.

37. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's securities. Plaintiff and the Class would not have purchased the Company's securities at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

### COUNT II

**Violation of Section 20(a) of the Exchange Act
(Against The Individual Defendants)**

38. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

39.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein.  The Individual Defendants were provided with, or had unlimited access to, the documents where false or misleading statements were made and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

C.     Awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

D.     Awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: June 5, 2019

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
    ahood@pomlaw.com
    jlindenfeld@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, _Isaac Solomon_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Sprint Corporation ("Sprint" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Sprint securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Sprint securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Sprint securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed     5/18/19
             (Date)

_____
(Signature)

Isaac Solomon
(Type or Print Name)

**Sprint Corporation (S)**                                                                                                          **Solomon, Isaac**

## List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 4/3/2019 | Purchase | 500 | 5.65 |
| 4/16/2019 | Sale | 500 | 5.52 |