**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
ISAAC SOLOMON, FRANCINE CANION,                         :
Individually and on behalf of all others similarly     :    19-cv-5272 (MKV)
situated,                                               :
                                                        :
                        Plaintiffs,                     :
                                                        :
            v.                                          :
                                                        :
SPRINT CORPORATION, MICHEL COMBES,                      :
ANDREW DAVIES, MARCELO CLAURE and                       :
TAREK ROBBIATI,                                         :
                                                        :
                        Defendants.                     :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## RESPONSE TO SUR-REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT


Scott D. Musoff
Arthur R. Bookout
Thania Charmani
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
scott.musoff@skadden.com
art.bookout@skadden.com
thania.charmani@skadden.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ...................................................................................................................................1

I.    PLAINTIFFS' ALLEGATIONS REGARDING POSTPAID ADDITIONS ARE
      MERITLESS ........................................................................................................................1

II.   THE FCC CONSENT DECREE DOES NOT SUPPORT PLAINTIFFS'
      ALLEGATIONS ..................................................................................................................4

CONCLUSION ................................................................................................................................5

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*In re AT&T/DirecTV Now Securities Litigation*,
    480 F. Supp. 3d 507 (S.D.N.Y. 2020)..............................................................................2

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    477 F. Supp. 3d 88 (S.D.N.Y. 2020)..........................................................................3, 4

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    No. 10 Civ. 2835 (NRB), 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ...........................4

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)......................................................................................4

*In re Ferroglobe PLC Sec. Litig.*,
    No. 19-cv-00629 (RA), 2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020) ...............................3

*Lau v. Opera Limited*,
    No. 20-cv-674 (JGK), 2021 WL 964642 (S.D.N.Y. Mar. 13, 2021)...................................4

*Lazaro v. Good Samaritan Hospital*,
    54 F. Supp. 2d 180 (S.D.N.Y. 1999)..............................................................................2

*In re Sanofi Securities Litigation*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016)..............................................................................5

*Toure v. Central Parking Systems*,
    No. 05 Civ. 5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ...........................1

*Tung v. Bristol-Myers Squibb Co.*,
    No. 18-cv-01611 (MKV), 2020 WL 5849220 (S.D.N.Y. Sept. 30, 2020) ...........................2

*Williams v. New York City Department of Education*,
    No. 19-cv-01353 (MKV), 2021 WL 1178118 (S.D.N.Y. Mar. 29, 2021)...........................1

ARGUMENT[1]

## I. PLAINTIFFS' ALLEGATIONS REGARDING POSTPAID ADDITIONS ARE MERITLESS[2]

**October 2, 2018 Statements by Defendant Davies.** Plaintiffs attempt to manufacture inconsistencies by conflating absolute and incremental numbers or ignoring context. Contrary to Plaintiffs' contention, Davies' statement that Sprint "expect[ed] to see continued accretion" on "postpaid handset ARPU [and] wireless service revenue," "which will result in wireless service revenue returning to growth by the end of the year," is entirely consistent with Combes' statements in March 2018 and 2019 referenced in the FCC Letter. (Sur-Reply at 1-2; AC ¶ 122.)

*First,* Combes informed Sprint management that the assumption that it would "increase ARPU" by a specified percentage in order to achieve its internal standalone projections was not realistic. (Ex. L, FCC Letter, at 13.) Combes never told Sprint management that its expectation of continued accretion in ARPU was unrealistic, just that Sprint's internal target of the specific *amount* of the increase was not realistic in light of current numbers.[3]

*Second*, Combes told Sprint's Board of Directors in March 2019 that "total service revenue decreas[ed] in the past 3 years." (Ex. L, FCC Letter, at 18.) Identifying the change in total service revenue—a number that is publicly disclosed (*see, e.g.*, Ex. A, Sprint 2018 10-K, at 37)—*over the last three years* quantifies something completely different than Davies' statements about

---

[1] Capitalized terms have the same definitions as those set forth in Defendants' principal brief. Plaintiffs' Sur-Reply to Reply in Support of Motion to Dismiss (ECF No. 56) shall be referred to as the "Sur-Reply."

[2] As an initial matter, Defendants did not raise any new arguments in their Reply Brief ("Reply"). Rather, Defendants were responding to issues raised for the first time in Plaintiffs' Opposition Brief ("Opp."), and accordingly these arguments are properly before the Court. *See Williams v. N.Y.C. Dep't of Educ.*, No. 19-cv-01353 (MKV), 2021 WL 1178118, at *4 (S.D.N.Y. Mar. 29, 2021) (Vyskocil, J.) ("A court generally will consider arguments raised for the first time in reply if they are responses to the other party's opposition."); *see also Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *2 (S.D.N.Y. Sept. 28, 2007) (finding that defendants were not raising new legal arguments, "but rather respond[ing] to issues raised in opposition or amplify[ing] points already made on the initial motion"). For the below reasons and those outlined in Defendants' Opening Brief ("Brief" or "Br.") and Reply, Plaintiffs' claims fail as a matter of law and should be dismissed with prejudice.

[3] In addition, Combes was remarking internally on whether the combined set of assumptions in Sprint's base projections were realistic, not whether any one assumption was achievable. (Ex. L, FCC Letter, at 13.) This further distinguishes Combes' statements from Davies' and only highlights why it is inappropriate to try to compare the two.

incremental accretion in wireless service revenue and a "return[] to growth by the end of the year."[4] (Sur-Reply at 1.)  In any event, "the fact that [Sprint] may have been overly optimistic about [future ARPU and wireless revenue] does not state a claim for fraud."  *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 526 (S.D.N.Y. 2020); *see also Tung v. Bristol-Myers Squibb Co.*, No. 18-cv-01611 (MKV), 2020 WL 5849220, at *17 (S.D.N.Y. Sept. 30, 2020) (Vyskocil, J.) ("[C]ourts should not engage in *post hoc* analysis of a company's optimistic statements.").

**August 1, 2018 Statements by Defendant Combes.**  Plaintiffs first claim that Combes' statement in response to an analyst question that Sprint "'delivered 87,000 postpaid phone net adds in Q1, which is the twelfth consecutive quarter of growth' . . . and that 'you can obviously expect Sprint to remain net adds positive for the year'" was misleading in light of the analyst's question and statements referenced in the FCC Letter.  (Sur-Reply at 2.)  Plaintiffs are wrong for two reasons. First, Plaintiffs again conflate absolute growth and growth rate.  Combes was referring to absolute growth and net adds, and Plaintiffs do not argue that he was wrong.[5]  Indeed, contrary to Plaintiffs' insinuation, Combes answered the analyst's question, which asked if it was Combes' "expectation that we'll see postpaid phone net adds remain positive as we go through the fiscal year."  (AC ¶ 114.)  He was not asked about the rate of growth of net adds.  Moreover, Combes' statements to Sprint's board members that "postpaid handset gross and net adds were declining" and that there had been "drastic reductions in postpaid [net adds] in [the] last 3 years" (Sur-Reply at 2 (first alteration omitted; emphases omitted)) are not inconsistent: by definition, reduced or declining "net adds" still reflect positive absolute growth.[6]

---

[4] Plaintiffs' claim related to the "service revenue decreas[e]" statement can also be dismissed because it was not included in either the AC or the Opposition.  *See Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) ("[I]t is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.").

[5] Combes' statement was entirely consistent with the publicly disclosed information in Sprint's Quarterly Updates.  (*See* Ex. X, 2Q17 Investor Update, at 6; Ex. Y, 1Q18 Investor Update, at 6.)

[6] Again, this is not misleading because the data reflected in the FCC Letter was already disclosed in Sprint's Quarterly Investor Updates.  (*See* Ex. X, 2Q17 Investor Update, at 5; Ex. Y, 1Q18 Investor Update, at 5; Ex. Z, 4Q18 Investor

Plaintiffs also claim that Combes told the analyst "that churn rates were improving." (Sur-Reply at 2.) This mischaracterizes the earnings call. Combes told the analyst that Sprint had some "pressure on gross adds, but we manage that with churn improvements as well." (AC ¶ 114.) Combes' statement to Sprint directors three months earlier that "postpaid phone churn expected to be down [year over year] for all national carriers except Sprint" is not inconsistent. (Sur-Reply at 2 (emphasis removed).) Nothing in Combes' response to the analyst's question references Sprint's year-over-year churn rate or the churn rate of the industry.

**Statements at Goldman Sachs Communacopia Conference.** Defendants have likewise rebutted Plaintiffs' claims that Combes made false or misleading statements during the Goldman Sachs Communacopia Conference and the Sur-Reply adds nothing to Plaintiffs' deficient allegations. As set forth in the Reply, Combes was responding to a question about "***industry-wide*** momentum" when he commented on prepaid to postpaid migrations and increased customer access to postpaid bundles industry-wide due to "the improvement of the economy overall." (*See* Reply at 1-2; AC ¶ 120 (emphasis added).) *See In re Ferroglobe PLC Sec. Litig.*, No. 19-cv-00629 (RA), 2020 WL 6585715, at *7 (S.D.N.Y. Nov. 10, 2020) (company's statements about "macro-trends within its industry did not require an accompanying disclosure" about the company's financial health). Though the analyst also asked "for how long do you see [the momentum] benefiting Sprint?" as the transcript shows, Combes did not respond to that part of the question but addressed only the reasons for the industry-wide momentum starting with: "I could highlight maybe two reasons for what we're seeing." (AC ¶ 120.) Plaintiffs misleadingly argue that Combes "spoke about how industry wide 'momentum' would benefit Sprint," a reference absent from his answer.

---

Update, at 5 (showing that the Company reported 344 and 405 postpaid net additions in 2Q16 and 3Q16 respectively but significantly lower numbers for the next seven quarters).) *See Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 477 F. Supp. 3d 88, 109 (S.D.N.Y. 2020) (finding that the challenged statements were not misleading because defendant "had already disclosed to the market, and the market understood [the allegedly omitted facts]").

(*Compare* Sur-Reply at 3 (emphasis removed), *with* AC ¶ 120.)  But even assuming that the same two factors that benefited the industry also applied to Sprint separately, Combes' answer about industry-wide trends is not contradicted by the FCC Letter.[7]  (*See* Reply at 2-3.)

Plaintiffs claim that Sprint should have explained that when its existing prepaid customers migrate to postpaid contracts with Sprint, they do not represent "new" Sprint customers.  (Sur-Reply at 2-3.)  That is obvious and Plaintiffs' claim is absurd on its face.  Moreover, Plaintiffs never explain why Sprint should have explained this obvious concept to industry experts.

**Statements in FCC Letter.**   Finally, Plaintiffs misrepresent Defendants' argument regarding Sprint's statements in the FCC Letter.  Defendants never argued "that their statements to the FCC were not factually accurate."  (Sur-Reply at 3.)  Rather, Defendants merely point out that Plaintiffs take Sprint's statements in the FCC Letter out of context—specifically, by eliding that while all previously disclosed public statements and metrics were accurate, they did not provide a complete picture of Sprint's "competitive relevance as a standalone company," which was the antitrust subject matter of the FCC Letter.[8]  (*See* Reply at 2-3; Ex. L, FCC Letter, at 11.)

## II.   THE FCC CONSENT DECREE DOES NOT SUPPORT PLAINTIFFS' ALLEGATIONS

Plaintiffs claim that Sprint's settlement with the FCC (the "Consent Decree") "discredits" Defendants' statement that Sprint had inadvertently claimed monthly Lifeline subsidies for

---

[7] Available metrics on postpaid additions, including the contribution of promotions, were clearly reflected in Sprint's financial disclosures.  (Br. at 11-12.)  Because this information was already known to investors, Plaintiffs have not alleged any actionable misstatements rendering the Company's statements "so incomplete as to mislead."  (Br. at 10-12; Reply at 3.)  *See Atlantica Holdings*, 477 F. Supp. 3d at 109; *see also Lau v. Opera Limited*, No. 20-cv-674 (JGK), 2021 WL 964642, at *7 (S.D.N.Y. Mar. 13, 2021) (holding that "a defendant may not be held liable for failing to disclose . . . information" where it is "readily accessible in the public domain").

[8] Plaintiffs continue to fail to address the core illogic underlying their claim: that Sprint knowingly and voluntarily exposed securities fraud that it had allegedly committed two months prior.  (*See* Br. at 1.)  *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009) (rejecting strong inference of scienter where allegations "suffer[ed] from a basic problem concerning plausibility"); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, No. 10 Civ. 2835 (NRB), 2011 WL 4357368, at *17 (S.D.N.Y. Sept. 19, 2011) (rejecting scienter allegations as "simply bizarre" and "extremely illogical" where plaintiffs suggested that defendants concocted a fraudulent scheme and made several misrepresentations "only to reveal th[e] massive overvaluation to the world a few months later").

ineligible subscribers due to a coding error.  (Sur-Reply at 6.)[9]  Yet the information in the Consent Decree is consistent with Sprint's disclosures that a technical error resulted in Sprint "inadvertently claim[ing] monthly Lifeline subsidies that may not have met the usage requirements" from July 2017 until the error was discovered in mid-2019.  (Br. at 7.)  That the FCC's investigation was not confined to a single state is consistent with the notion that, as disclosed, there was a technical failure of Sprint's system that was not localized in Oregon and was not particularized to a specific subset of subscribers.  Rather than indicating human tampering or fraud, the error was the result of a coding issue producing randomized incorrect data nationwide.  (*See* Br. at 26-27; Reply at 9-10.)  Indeed, the Consent Decree explains that the FCC expanded its investigation when Sprint "voluntarily disclosed to the Commission in late August 2019" that "due to a software programming issue, Sprint's systems failed to detect that over a million Lifeline subscribers nationwide lacked usage." (ECF No. 56-1 ¶ 12.)  Further, the Consent Decree states that "Sprint cooperated with all phases of the Investigation."  (*Id*.)  To the extent accorded any weight, the Consent Decree confirms that the non-fraudulent inference of a coding error is far more "cogent and . . . compelling" than an inference of intent to commit securities fraud that was later self-reported to the regulator.  *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 405 (S.D.N.Y. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007)).

## CONCLUSION

For the foregoing reasons and those stated in Defendants' Opening Brief and Reply, Defendants respectfully request that this Court dismiss the Amended Complaint with prejudice.

---

[9] Plaintiffs misleadingly argue that Defendants' reference to the Consent Decree "interject[s] 'alternative facts' outside the four corners of the Amended Complaint," (Sur-Reply at 5), when Defendants expressly noted that consideration of the settlement is "not necessary to resolve the motion to dismiss."  (Reply at 4.)

5

Dated: New York, New York
       July 7, 2021                          Respectfully submitted,

                                             /s/ Scott D. Musoff
                                             Scott D. Musoff
                                             Arthur R. Bookout
                                             Thania Charmani
                                             SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP
                                             One Manhattan West
                                             New York, NY 10001
                                             Phone: (212) 735-3000
                                             Fax:    (212) 735-2000
                                             scott.musoff@skadden.com
                                             art.bookout@skadden.com
                                             thania.charmani@skadden.com

                                             *Attorneys for Defendants*