**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ISAAC SOLOMON and FRANCINE CANION, Individually and On Behalf of All Others Similarly Situated,<br><br>                   Plaintiffs,<br><br>          v.<br><br><br>SPRINT CORPORATION, MICHEL COMBES, ANDREW DAVIES, MARCELO CLAURE and TAREK ROBBIATI<br><br>                  Defendants. | **Civil Action No. 1:19-cv-05272-MKV** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR LEAVE TO FILE THE**
**SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES .........................................................................................................ii

INTRODUCTION ..........................................................................................................................1

PROCEDURAL HISTORY ............................................................................................................2

THE SAC'S CORE NEW FACTS ................................................................................................3

    I.      ARGUMENT.......................................................................................................6

            A.  Legal Standard ....................................................................................6

            B.  A Powerful Inference Of Scienter Is Pled In The SAC ...........................8

            C.  No Factor Weighs Against Allowing An Amendment .........................15

    II.     CONCLUSION.................................................................................................19

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
   19 F.4th 145 (2d Cir. 2021) ................................................................................18

*Anthony v. City of New York*,
   339 F.3d 129 (2d Cir. 2003).................................................................................8

*Ap-Fonden v. GE Co.*,
   No. 17-CV-8457 (JMF), 2022 U.S. Dist. LEXIS 66717 (S.D.N.Y. Apr. 11,
   2022) ...................................................................................................................17

*Barron v. Helbiz, Inc.*,
   No. 21-278, 2021 U.S. App. LEXIS 29745 (2d Cir. Oct. 4, 2021) .........7, 15, 18, 19

*Block v. First Blood Associates*,
   988 F.2d 344 (2d Cir. 1993)...........................................................................16, 17

*Christine Asia Co. v. Yun Ma*,
   718 F. App'x 20 (2d Cir. 2017) ..........................................................................11

*Cmty. Ass'n Underwriters of Am. v. Main Line Fire Prot. Corp.*,
   No. 18 Civ. 4273 (PMH) (JCM), 2020 U.S. Dist. LEXIS 156882 (S.D.N.Y.
   Aug. 28, 2020) ....................................................................................................16

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ..............................................................................7

*Foman v. Davis*,
   371 U.S. 178 (1962)...............................................................................................6

*Hall v. Children's Place Retail Stores, Inc.*,
   580 F. Supp. 2d 212 (S.D.N.Y. 2008) .................................................................11

*Hedick v. Kraft Heinz Co.*,
   No. 19-cv-1339, 2021 U.S. Dist. LEXIS 151343 (N.D. Ill. Aug. 11, 2021) .........12

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004) .................................................................13

*In re Chembio Diagnostics, Inc.*,
   No. 20-CV-2706 (ARR) (PK), 2022 U.S. Dist. LEXIS 31772 (E.D.N.Y. Feb.
   23, 2022) ...............................................................................................................6

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...................................................................15

*In re Hain Celestial Grp., Inc. Sec. Litig.*,
20 F.4th 131 (2d Cir. 2021) ..................................................................................15

*In re Initial Pub. Offering Sec. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003) ....................................................................6

*In re Insys Therapeutics, Inc. Sec. Litig.*,
No. 17 Civ. 1954 (PAC), 2018 U.S. Dist. LEXIS 100000 (S.D.N.Y. June 12,
2018) .....................................................................................................................10

*In re LendingClub Sec. Litig.*,
254 F. Supp. 3d 1107 (N.D. Cal. 2017) .................................................................13

*In re Mylan N.V. Sec. Litig.*,
No. 16-CV-7926 (JPO), 2018 U.S. Dist. LEXIS 52084 (S.D.N.Y. Mar. 28,
2018) .....................................................................................................................13

*In re OSG Sec. Litig.*,
12 F. Supp. 3d 622 (S.D.N.Y. 2014) ......................................................................11

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)..........................................................................9, 12, 18

*In re Synchrony Fin. Sec. Litig.*,
988 F.3d 157 (2d Cir. 2021)...................................................................................17

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008) .....................................................................7

*In re Veeco Instruments, Inc., Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) ...........................................................................12

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009).................................................................................12

*Jt. Stock Co. v. Infomir LLC*,
16CIV1318GBDBCM, 2017 U.S. Dist. LEXIS 50723 (S.D.N.Y. Mar. 27,
2017) .....................................................................................................................17

*LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*,
Nos. 13-11272-JLG, 14-02442-JLG, 2018 Bankr. LEXIS 1770 (Bankr.
S.D.N.Y. June 15, 2018) ........................................................................................16

*Lea v. TAL Educ. Grp.*,
   837 F. App'x 20 (2d Cir. 2020) ...................................................................14, 15

*Longhi v. Lombard Risk Sys.*,
   No. 18-CV-8077 (VSB), 2019 U.S. Dist. LEXIS 170188 (S.D.N.Y. Sep. 30,
   2019) .............................................................................................................8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015).........................................................................7, 15, 19

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019).................................................................................9

*Lowry v. RTI Surgical Holdings, Inc.*,
   532 F. Supp. 3d 652 (N.D. Ill. 2021) ............................................................13, 14

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986)...........................................................................7

*Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*,
   No. 12 CV 3858 KMW JLC, 2012 U.S. Dist. LEXIS 141974 (S.D.N.Y. Oct.
   1, 2012) .......................................................................................................16, 17

*Nguyen v. New Link Genetics Corp.*,
   297 F. Supp. 3d 472 (S.D.N.Y. 2018) ..........................................................17

*Richardson Greenshields Secur., Inc. v. Mui-Hin Lau*,
   825 F.2d 647 (2d Cir. 1987)..........................................................................16

*Ronzani v. Sanofi S.A.*,
   899 F.2d 195 (2d Cir. 1990)..........................................................................6

*Set Capital LLC v. Credit Suisse Grp. AG*,
   996 F.3d 64 (2d Cir. 2021)............................................................................14

*Setzer v. Omega Healthcare Inv'rs, Inc.*,
   968 F.3d 204 (2d Cir. 2020)..........................................................................14

*Sudunagunta v. Nantkwest, Inc.*,
   No. CV 16-1947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228534 (C.D. Cal.
   Sep. 20, 2017) .............................................................................................13

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
   531 F.3d 190 (2d Cir. 2008)..........................................................................10

*Thomas v. Magnachip Semiconductor Corp.*,

iv

167 F. Supp. 3d 1029 (N.D. Cal. 2016) .................................................................................13

*Washtenaw Cty. Emples. Ret. Sys. v. Avid Tech., Inc.*,
    28 F. Supp. 3d 93 (D. Mass. 2014) ...................................................................................15

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011)............................................................................................ 7

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
    655 F.3d 1039 (9th Cir. 2011) ..........................................................................................9

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................ 7, 18

Fed. R. Civ. P. 15................................................................................................................6, 7, 8

**Statutes**

Private Securities Litigation Reform Act............................................................................2, 17, 18

Sarbanes-Oxley Act ............................................................................................................4

Plaintiffs Isaac Solomon and Francine Canion (collectively the "Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion For Leave to File the Second Amended Class Action Complaint (hereafter the "SAC"). Plaintiffs' proposed SAC, along with a redline to the Amended Class Action Complaint (ECF No. 29, "Amended Complaint"), are attached as Exhibits A and B respectively.[1]

**INTRODUCTION**

In its March 25, 2022 Order on Defendants' Motion to Dismiss, the Court ruled that Plaintiffs adequately pled falsity and loss causation concerning Defendants' false statements about the Company's revenue figures and internal controls over financial reporting. ECF No. 62 at 14-15 (hereafter the "Order"). The Court dismissed these allegations only for lack of scienter because it concluded that the Wall Street Journal article described in the Amended Complaint was not sufficient on its own to show that: (1) Sprint took illegal Lifeline subsidies nationwide in 2014, (2) the illegal Lifeline subsidies taken in 2014 were linked to the illegal Lifeline subsidies again taken by Sprint between 2017 and 2019, and (3) "Sprint insiders" knew or recklessly disregarded the resulting problems with the Company's internal controls. Order at 19-20.

After reviewing the Order, Plaintiffs conducted another investigation, interviewed investigators from the Oregon Public Utility Commission ("OPUC") with direct oversight over the Lifeline program (the regulators that repeatedly caught Sprint taking improper subsidies for years), requested and received evidentiary material from regulators who settled similar claims with Sprint after the end of the Class Period, and again reviewed the Company's SEC filings and internal policies to determine how they would impact an amendment in light of the new information.

---

[1] Paragraph ("¶_") references are to the proposed SAC attached as Exhibit A. Internal quotation marks and citations are omitted and emphases are added unless otherwise noted throughout this brief.

Based upon Plaintiffs' investigation and documentary evidence now described in the SAC, there are sufficient facts to plead that Sprint took illegal subsidies nationwide in 2014 because of a widespread failure in General IT Controls, Sprint insiders knew about this specific failure, another symptom of the same problem again emerged between 2017 and 2019, and Defendants knew or recklessly disregarded all these facts and made false statements instead. The SAC also contains additional factors that bolster an inference of fraud beyond the cured deficiencies that the Court identified as fully explained herein. As such, the SAC would withstand a motion to dismiss, and the Court should grant leave to amend.

Plaintiffs have filed only one complaint concerning the Lifeline related issues. This Action was first filed in June 2019 or nearly four months before the first corrective disclosure occurred in September 2019 that relates to this theory. Hence, facts giving rise to the claim did not even emerge until after the lawsuit was filed, and Plaintiffs have not had any opportunity to amend these specific claims. Second Circuit precedent demands that leave to amend should be granted under these circumstances with extreme liberality, especially because this is a securities fraud case brought pursuant to the Private Securities Litigation Reform Act ("PSLRA"). Even if the Court entertained any purported reason to deny leave, there is no factor that credibly weighs against allowing an amendment. For these reasons and for the reasons fully explained below, Plaintiffs respectfully request the Court to grant the motion.

**PROCEDURAL HISTORY**

On March 25, 2022, the Court granted Defendants' motion to dismiss the Amended Complaint in part and denied it in part. Order at 1. The Court allowed Plaintiffs' claims related to the postpaid metrics to proceed to discovery. Order at 11-14, 17-19, 21-22. The corrective disclosure related to this postpaid services claim occurred in April 2019. ¶¶202-04. In addition,

the Court ruled that the Amended Complaint adequately pled falsity and loss causation regarding the Lifeline related claims, including false statements about Sprint's revenue figures and the adequacy of the Company's internal controls over financial reporting. Order at 14-15 (citing First Amended Compl. ¶¶51, 116-17, 148-49, 167). However, the Court found that Plaintiffs did not sufficiently plead scienter for the Lifeline related claims. Order at 19-20. Specifically, the Court concluded that the Amended Complaint did not explain why the email from a Sprint lawyer described in the Wall Street Journal article referred "to a nationwide problem rather than one localized in Oregon," and that the Amended Complaint did not contain sufficient facts to demonstrate that "there was knowledge among Sprint insiders about the problems with the [C]ompany's internal controls." Order at 19-20. The Court also observed that the Amended Complaint did not plead sufficient facts to show that the statements made by the Sprint lawyer in 2014 were related to the Lifeline issues identified in 2019. Order at 20. The SAC cures each of these deficiencies, and pleads even more circumstantial evidence of scienter.

### THE SAC'S CORE NEW FACTS

The SAC now contains corroborating evidence based on internal emails and other documents from Sprint employees and regulators with oversight over the Lifeline program. Email correspondence between the OPUC and Elaine M. Divelbliss ("Divelbliss"), Senior Counsel at Sprint responsible for legal and regulatory compliance related to the Lifeline program, demonstrates that Sprint received illegal subsidies in 2014 nationwide in violation of federal and State laws. ¶¶103-05. Divelbliss admitted to the OPUC that Sprint failed to ensure that usage complied with the FCC's rules in violation of its own policies. ¶¶20, 117. Despite repeated attempts by OPUC in 2015 to seek confirmation from Sprint's lawyers that Sprint had cured the

deficiencies, Sprint did not do so, and OPUC again caught Sprint taking illegal subsidies based on a similar course of conduct in 2019. ¶¶111-116

During the Class Period, Kenneth Schifman ("Schifman"), another Senior Counsel at Sprint with responsibility to interface with regulators across the country, admitted that Sprint again took illegal subsidies, and stated that the Company rectified the problem in *July 2019*, but Defendants continued to make false statements about the Company's revenues and internal controls in *August 2019*. ¶¶196-99. It is "virtually inconceivable," to use the Second Circuit's words under strikingly similar facts, that Divelbliss and Schifman would admit to regulators that Sprint engaged in illegal conduct without the knowledge of Sprint's General Counsel, who directly reported to CEOs Marcelo Claure ("Claure") and Michel Combes ("Combes"), and who was required by Company policy to inform the Board of Directors of *any* legal issue that *could* impact the Company's financial statements. ¶¶25, 118. Documentary evidence in the form of emails between the FCC and OPUC confirms that the regulators considered the events of 2014-2015 and 2017-2019 as related. ¶¶23, 116. So did the Wall Street Journal. ¶102. The investigative findings of regulators in California also establish that the root cause of this pervasive problem was Sprint's failure to implement adequate General IT Controls pursuant to the Sarbanes-Oxley compliance program that properly tracked customer usage to ensure adherence to FCC rules and prevent the risk of error in Sprint's financial statements. ¶¶134-137. Thus, facts pled in the SAC cure all the deficiencies identified in the Order and demonstrate that Sprint's legal department was aware of all the facts necessary to know the underlying reasons why the Company experienced material weaknesses in its internal controls of such a long duration and scope. This is enough to plead corporate scienter.

The SAC also pleads additional facts to raise a strong inference that the Individual Defendants acted with scienter. During the Class Period, Claure signed a Business Combination Agreement (hereafter the "Merger Agreement") with T-Mobile USA Inc. ("T-Mobile"), in which Sprint made highly specific Representations and Warranties about the accuracy of its financial statements and other SEC filings and the adequacy of its internal controls over financial reporting. ¶¶26, 123-24. In particular, Sprint guaranteed that it was in compliance with all federal, State and local laws, and more importantly, that all information was "accumulated" and "communicated" to the CEO and CFO to certify that Sprint's disclosure controls and procedures were effective. ¶¶26, 125-26. As such, Defendants knew or recklessly disregarded the fact that material weaknesses in Sprint's General IT Controls repeatedly caused its IT systems to count as "usage" what was prohibited by federal and State laws, and that the Company was collecting illegal subsidies that inflated its revenues and income as a result for years. Defendants' individual responsibilities and experience in finance and accounting bolster an inference of fraud. The Charter of the Audit Committee of the Board of Directors required each of the Individual Defendants to regularly review any significant deficiency or material weakness in internal controls with the Audit Committee. ¶¶27, 120. Sprint was put on notice as early as 2015 that its IT platform did not properly track, monitor and count as "usage" only such activity that is allowed by FCC regulations, and that the Company's internal controls therefore contained material weaknesses.

Other new factors pled in the SAC further enhance an inference of scienter. Multiple regulatory investigations, settlements, and assessed fines refute Defendants' mischaracterization of the material weaknesses as "self-disclosed" or isolated, and further undermine any assumption that the Individual Defendants were ignorant of the facts during the Class Period. ¶¶102-27. The fact that Sprint has repeatedly admitted that taking improper subsidies violated its own policies,

both in 2014 and again in 2019, and has paid over half a billion dollars to federal and State governments to resolve claims arising from the illegal receipt of subsidies also supports scienter. ¶¶102, 115-117, 129.

I. ARGUMENT

A. Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court should freely give leave to amend when justice so requires." *See also In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003) (same). In this Circuit, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); *see also In re Chembio Diagnostics, Inc.*, No. 20-CV-2706 (ARR) (PK), 2022 U.S. Dist. LEXIS 31772, at *53 (E.D.N.Y. Feb. 23, 2022) ("When claims are dismissed for failure to state a claim, it is customary to grant leave to replead unless to do so would be futile."). The Supreme Court and the Second Circuit have both held that an outright refusal to allow an amendment is a reversible error unless the court provides a valid basis for the denial such as futility of the amendment, undue delay, dilatory motive or bad faith on the part of a plaintiff, or undue prejudice to a defendant that would result from allowing the amendment. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962) (holding that an outright refusal to grant leave to amend without a proper justification is an abuse of discretion); *Ronzani*, 899 F.2d at 198 (holding that the district court abused its discretion in denying leave to amend without a proper justification when the plaintiff offered to amend the complaint and leave was not previously given). For these reasons, the Court's silence on the specific nature of the dismissal cannot be read as a dismissal with prejudice in the absence of specific findings on futility, undue delay, prejudice or bad faith— findings that the Court never made.

The Second Circuit has also repeatedly expressed skepticism of refusals to allow

6

amendments when a plaintiff does not have the benefit of any ruling from a court because "without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Barron v. Helbiz, Inc.*, No. 21-278, 2021 U.S. App. LEXIS 29745, at *9 (2d Cir. Oct. 4, 2021). "This permissive standard is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011).

These well-established rules of law apply with even greater force in securities fraud cases because such cases "combine[] a complex commercial reality with a long, multi-prong complaint." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015); *see also id.* at 190 (holding that "the court treated Plaintiffs' decision to stand by the complaint after a preview of Defendants' arguments—in the critical absence of a definitive ruling—as a forfeiture of the protections afforded by Rule 15. This was, in our view, premature and inconsistent with the course of litigation prescribed by the Federal Rules."); *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend."); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (observing that granting leave to amend is particularly appropriate in securities fraud lawsuits); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-53 (9th Cir. 2003) (holding that leave to amend should be granted "with extreme liberality" in securities fraud cases).

Plaintiffs have not amended their Lifeline related claims even once either on their own or with the Court's leave. Nor could they because this lawsuit was filed on June 5, 2019, nearly four months before the first corrective disclosure related to the FCC investigation came to light in late September 2019. Without that corrective disclosure, there were no additional losses and thus no grounds to plead a securities fraud claim for the Lifeline related claims. Nor could Plaintiffs

predict events that occurred in September 2019 when the lawsuit was filed in June 2019 without access to a time machine. As such, claims related to the Lifeline program were raised only once in the Amended Complaint filed on July 31, 2020. The Court dismissed them only for a failure to plead scienter on March 25, 2022. Plaintiffs immediately conducted another investigation in response to the Court's Order and this motion was filed within weeks of receiving additional information from the regulators that settled claims with Sprint.

Hence, the Court's analysis should be limited to determining only whether the amendment is futile. An amendment is not futile if a new complaint would survive a motion to dismiss. *See Longhi v. Lombard Risk Sys.*, No. 18-CV-8077 (VSB), 2019 U.S. Dist. LEXIS 170188, at *1-2 (S.D.N.Y. Sep. 30, 2019). For the reasons explained in Section B., the proposed SAC would withstand a motion to dismiss. Therefore, the Court should grant Plaintiffs' motion and order the Defendants to file an Answer.

Moreover, Defendants cannot meet their burden to demonstrate futility, undue delay, bad faith, dilatory motive or undue prejudice even if the Court considered all of these factors. The judicial policy favoring amendment is so strong that the burden is on the ***non-***moving party to demonstrate the existence of these factors. *See Anthony v. City of New York*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (interpreting Rule 15(a) "in favor of allowing the amendment absent a showing by the non-moving party of bad faith or undue prejudice"). For the reasons explained in Section C., Defendants cannot meet this burden.

**B.     A Powerful Inference Of Scienter Is Pled In The SAC**

The SAC both cures the deficiencies identified in the Court's Order and pleads additional facts that support a cogent and compelling inference of scienter. Amendment is thus not futile. A recitation of the actual email exchange between the regulators at OPUC and Divelbliss, Senior

Counsel at Sprint with overall legal and compliance responsibilities for the Lifeline program in 2014 and 2015 shows that the Wall Street Journal's interpretation of the widespread nature of the problem described in the Amended Complaint is correct. Divelbliss was asked directly if Sprint's receipt of illegal subsidies was "systemic," *i.e.*, a "widespread" one that occurred in States other than Oregon, and Divelbliss responded and confirmed that "***the failure was systemic and not confined to Oregon***." ¶¶106-07. This addresses the Court's concern about whether the email referenced in the Wall Street Journal article referred to a problem limited to Oregon or involved other States. Order at 19-20.

Divelbliss further had knowledge that a serious deficiency in Sprint's General IT Controls caused the Company to take Lifeline funds in violation of federal and State laws. ¶¶106-08, 117-18. Divelbliss admitted to OPUC that taking such funds in violation of federal regulations was contrary to Sprint's own policies, claimed that improperly received funds were returned nationwide, and lawyers who reported to Divelbliss assured OPUC that corrective action would be taken to rectify the deficiencies. ¶¶106-09. Despite numerous attempts by OPUC in early 2015 to seek confirmation that the deficiencies had been cured, Sprint did not provide such confirmation, and OPUC again caught Sprint taking Lifeline funds in violation of federal regulations and contrary to its own policies during the Class Period. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (holding that pre-class period data was relevant to confirm what defendants should have known during the class period); *see also WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1053 (9th Cir. 2011) (similar), *overruled on other grounds by Lorenzo v. SEC*, 139 S. Ct. 1094 (2019).

Even though senior lawyers in Sprint's in-house legal department had notice of all the relevant facts concerning Sprint's internal control deficiencies before the Class Period, Sprint

failed to cure the deficiencies between 2014 and 2019 and a material weakness in Sprint's General IT controls caused the Company to again take illegal subsidies during the Class Period. ¶¶18, 135. Schifman, who served as the Director of Government Affairs at the Company with responsibility to interface with Public Services Commissions in over two dozen States, ¶112, knew about these facts, and told the OPUC that the material weakness was cured no later than *July 16, 2019*, but Defendants *continued* to report false revenue figures and made false statements about the Company's internal controls on *August 2, 2019* and *August 7, 2019*. ¶¶196-99. The investigative findings of an enforcement division of the Public Utilities Commission of the State of California demonstrate that the root cause of these problems was Sprint's failure to maintain the necessary General IT Controls that properly monitored usage and ensured compliance with FCC regulations in a manner that did not render its financial statements false when made. ¶¶24, 134-35. Documentary evidence described in the SAC also shows that the federal and State regulators viewed Sprint's illegal receipt of subsidies in 2014-2015 and 2017-2019 as a common course of misconduct just as the Wall Street Journal did in its reporting about the illegal subsidies in an article published in December 2019. ¶¶23, 102, 116.

Knowledge of illegal conduct and serious deficiencies in Sprint's IT systems that caused the Company to repeatedly violate the law at the high levels of Sprint's legal department combined with the duration and magnitude of the material weaknesses is enough to hold Sprint liable for securities fraud. *See, e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008) (holding that liability for a securities fraud claim can attach based on the conduct of senior executives who are not expressly named in the complaint); *see also In re Insys Therapeutics, Inc. Sec. Litig.*, 17 Civ. 1954 (PAC), 2018 U.S. Dist. LEXIS 100000, at *17-18 (S.D.N.Y. June 12, 2018) (noting that courts in the District have repeatedly found that

admissions of weak internal controls support an inference of scienter); *Hall v. Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008) (observing that the "the Company admitted that it had material weaknesses in its internal controls -- weaknesses probative of scienter.").

Additional factors connect the dots between the Individual Defendants' knowledge or reckless disregard of the truth and the information pled in the SAC. It is "virtually inconceivable," to use the Second Circuit's words, *Christine Asia Co. v. Yun Ma*, 718 F. App'x 20, 23 (2d Cir. 2017), that senior lawyers at Sprint like Divelbliss and Schifman, who reported to the General Counsel, would admit to regulators that the Company had received illegal subsidies in violation of federal and State laws and its own professed policies without informing Sprint's General Counsel, who directly reported to Defendants Claure and Combes. ¶¶25, 118. The Charter of the Audit Committee of Sprint's Board of Directors required the General Counsel to inform the Audit Committee about *any* legal matters that *could* have a significant impact on Sprint's financial statements and *any* material reports received from regulatory or governmental agencies. ¶120. Claure was a member of Sprint's Board of Directors from January 2014 to April 2020. ¶45. Both the Second Circuit and other courts in the District have found that scienter was sufficiently pled under strikingly similar facts. *See Yun Ma*, 718 F. App'x at 23 (holding that "it is virtually inconceivable" that the details of a meeting attended by a senior executive would not be shared with the individual defendants given the reporting structure at the company and the nature of the regulatory risks involved); *see also In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 632 (S.D.N.Y. 2014) ("It is implausible that OSG treasurers would have understood the implications of joint and several liability in 2001, yet failed to communicate that knowledge to [the Individual Defendant] with respect to subsequent credit agreements employing the same language.").

In addition, on April 29, 2018, Claure signed the Merger Agreement with T-Mobile on behalf of Sprint. ¶123. On July 26, 2019, Claure signed an amendment to the Merger Agreement. *Id.* The Merger Agreement contains highly specific Representations and Warranties made as part of the due diligence process concerning the accuracy of Sprint's financial statements, the adequacy of the Company's internal controls over financial reporting, and Defendants' compliance with all federal, State and local laws. ¶¶124-26.

In particular, Sprint guaranteed that, since January 1, 2016, there were no material misstatements or omissions in its SEC filings or any significant deficiencies or material weaknesses in its internal controls, and that these assessments were specifically based on information "accumulated" and "communicated" to the CEO and CFO of the Company to enable them to make accurate certifications about Sprint's disclosure controls and procedures. ¶¶124-25. *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009) (holding that "the most powerful evidence of scienter were the content and context of [defendant's] statements themselves."); *Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2021 U.S. Dist. LEXIS 151343, at *44-45 (N.D. Ill. Aug. 11, 2021) (concurring that representations like the ones made here, at a minimum, demonstrate recklessness because a defendant cannot represent that he has all information necessary to be informed yet disclaim knowledge of the specific risks at the same time).

That Sprint admitted to violating its own policies both in 2014 and again in 2019 when it repeatedly took improper subsidies further supports an inference of scienter. ¶¶20, 102, 129-30. *See In Re Scholastic Corp. Sec. Litig.*, 252 F.3d at 77 (holding that "defendants' asserted actions contrary to expressed policy and prior practice can form the basis for proof of recklessness."); *see also In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 231 (S.D.N.Y. 2006) (same).

Defendants Tarek Robbiati ("Robbiati") and Andrew Davies ("Davies") also held themselves out as experts in finance and accounting, and a strong understanding of the technology necessary to maintain internal controls and the accuracy and integrity of a company's financial statements was their core job function as CFOs of the Company. *See In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1122 (N.D. Cal. 2017) (ruling that a CFO cannot escape liability for securities fraud claims related to internal controls because "internal controls over *financial reporting* fell squarely within her oversight.") (emphasis in original); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 221-22 (S.D.N.Y. 2004) (finding scienter based, in part, on the fact that the defendant was "the executive most responsible for the Company's accounting."); *In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926 (JPO), 2018 U.S. Dist. LEXIS 52084, at *38-39 (S.D.N.Y. Mar. 28, 2018) (similar).

In fact, the Charter of the Audit Committee required each Individual Defendant, both CEOs and CFOs, to regularly update the Audit Committee on the Company's internal controls, and review with the Committee any significant deficiency or material weaknesses in Sprint's internal controls over financial reporting in real time. ¶¶120-22. *See, e.g.*, *Sudunagunta v. Nantkwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228534, at *39 (C.D. Cal. Sep. 20, 2017) (inferring scienter based on specific responsibilities of the audit committee); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1043-44 (N.D. Cal. 2016) (ruling that membership in the audit committee and defendants' specific responsibilities that emanated from it combined with other facts raised an inference of scienter).

Considering the allegations holistically, it was extremely reckless for each Individual Defendant to repeatedly claim during the Class Period that he had personally evaluated Sprint's internal controls and found that there were no deficiencies or material weaknesses. *See Lowry v.*

*RTI Surgical Holdings, Inc.*, 532 F. Supp. 3d 652, 663 (N.D. Ill. 2021) ("The fact that each defendant attested to the accuracy of information in quarterly and annual SEC filings yet failed to even once detect a risk of erroneous financial reporting during the class period is more than sufficient at the pleading stage to indicate recklessness.").

Facts that emerged after the Class Period ended enhance an inference of scienter. *See, e.g.*, *Setzer v. Omega Healthcare Inv'rs, Inc.*, 968 F.3d 204, 214 n.13 (2d Cir. 2020) (holding that scienter was adequately pled, in part, based on post-class period admissions made in a bankruptcy filing that bolstered complaint allegations). Contrary to Defendants' repeated mischaracterization of the issue as a "self-disclosed coding error," the SAC demonstrates that Defendants were again caught by the OPUC for taking improper subsidies in violation of the law, during the Class Period, because of persistent weaknesses in the Company's General IT Controls. *Compare* ECF No. 43 at 1 *with* ¶¶110-16. Defendants ultimately admitted to an enforcement division of the Public Utilities Commission of the State of California that the principal cause of the problem was a serious deficiency in General IT Controls that failed to ensure compliance with FCC rules and State laws. ¶¶134-35. *See Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 81 (2d Cir. 2021) (noting that admission of certain facts in defendants' own SEC filings added to circumstantial evidence of recklessness). That the settlement agreement with the FCC and the FCC Consent Decree address a broader set of misconduct, including the submission of duplicative claims, which is an entirely different category from including ineligible subscribers, demonstrates the sheer magnitude of the exposure and Sprint, in fact, has paid over $600 million in settlements and fines to date. *Id.* at 79 n.58 (noting that magnitude of the fraud can support an inference of recklessness); *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 27 (2d Cir. 2020) (same). Information contained in the FCC Consent Decree also shows that Sprint engaged outside counsel to interface with the FCC during the Class

14

Period, bolstering an inference that the Individual Defendants knew about the material weaknesses in internal controls in 2019 yet continued to make false statements to investors.  ¶¶24-25, 130-33. Multiple regulatory investigations into Defendants' illegal conduct that resulted in large settlements and assessment of fines should also be considered as part of the Court's holistic review. ¶¶29, 205.  *See In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (agreeing that governmental investigations can be considered as another piece of the puzzle when analyzing scienter); *Washtenaw Cty. Emples. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 115 (D. Mass. 2014) (same).

Taking all the allegations collectively, the inference of scienter is both cogent and compelling.  *See TAL Educ. Grp.*, 837 F. App'x at 24-25 (reversing dismissal because the district court failed to address **all** the allegations collectively when it dismissed the complaint for lack of scienter); *see also In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 137-38 (2d Cir. 2021) (reversing dismissal and instructing the lower court to conduct a proper holistic review by weighing allegations of scienter as a whole instead of scrutinizing each one in isolation).  The SAC also debunks any opposing inference that the material weaknesses in General IT Controls were "self-disclosed" or isolated.  *See* ECF No. 43 at 1.

For all of these reasons, the SAC sufficiently pleads a strong inference of scienter, and Plaintiffs should be allowed to proceed to the next stage of litigation.

C.      **No Factor Weighs Against Allowing An Amendment**

Defendants will not be able to show any reason to deny leave to amend here.  There was no delay whatsoever.  The clock starts to tick only from the date of the Court's dismissal of the Lifeline related claims on March 25, 2022.  *See, e.g.*, *Helbiz, Inc.*, 2021 U.S. App. LEXIS 29745, at *9; *Wells Fargo Sec., LLC*, 797 F.3d at 190-91.  In response to the Court's Order, Plaintiffs

immediately conducted another investigation, interviewed additional Confidential Witnesses (though that was not fruitful), and sent public records requests to several regulatory bodies that settled similar claims with Sprint after the Amended Complaint was filed, including the FCC and regulators in California, Oregon, Michigan, Florida and Texas. A document production from the AG's Office in Oregon was received at the end of May 2022. This motion was filed within weeks of Plaintiffs' receipt of critical information that allowed them to plead scienter. There has been no delay under these circumstances. *See, e.g.*, *Richardson Greenshields Secur., Inc. v. Mui-Hin Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (noting that mere delay alone is not enough to deny leave to amend, and collecting cases where plaintiffs were aware of facts that supported new claims years before the original complaint was filed); *Cmty. Ass'n Underwriters of Am. v. Main Line Fire Prot. Corp.*, 18 Civ. 4273 (PMH) (JCM), 2020 U.S. Dist. LEXIS 156882, at *8-9 (S.D.N.Y. Aug. 28, 2020) (rejecting claims of undue delay when plaintiff moved to amend the complaint within two months of discovering new information); *see also LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*, Nos. 13-11272-JLG, 14-02442-JLG, 2018 Bankr. LEXIS 1770, at *29-30 (Bankr. S.D.N.Y. June 15, 2018) (rejecting claims of delay as meritless considering Second Circuit precedent that the clock starts to run only from the day of dismissal).

Moreover, the Second Circuit has held that a non-movant is required to show delay coupled with prejudice to the non-moving party or bad faith by the moving party. *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). Defendants cannot meet this high standard. "In determining what constitutes prejudice, courts consider whether the amended pleading would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute.'" *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, 12 CV 3858 KMW JLC, 2012 U.S. Dist. LEXIS 141974, at *5 (S.D.N.Y.

Oct. 1, 2012) (*quoting Block*, 988 F.2d at 350). Where, as here, a party seeks leave to amend at the pleading stage, before the parties have started discovery, courts in this Circuit routinely find a lack of prejudice. *See, e.g.*, *Jt. Stock Co. v. Infomir LLC*, 16CIV1318GBDBCM, 2017 U.S. Dist. LEXIS 50723, at *3-4 (S.D.N.Y. Mar. 27, 2017) (finding a lack of prejudice when no discovery had commenced); *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 501 (S.D.N.Y. 2018) (similar in a securities fraud case). Defendants also have had notice of the same claims and the same theories since July 2020 when the Amended Complaint was filed, and they have settled countless claims with federal and State governments concerning the same exact issue for over half a billion dollars in the last two years. *See Ap-Fonden v. GE Co.*, No. 17-CV-8457 (JMF), 2022 U.S. Dist. LEXIS 66717, at *29-30 (S.D.N.Y. Apr. 11, 2022) (ruling that ample notice of plaintiffs' claims and core theories severely undermined any assertion of purported prejudice). Defendants therefore have no grounds to assert any prejudice.

Plaintiffs also acted in good faith and without dilatory motive. It was reasonable for Plaintiffs to rely on the Wall Street Journal's reporting and its conclusions concerning Sprint's chronic internal control deficiencies in the Amended Complaint. *See, e.g.*, *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 169 (2d Cir. 2021) (reversing dismissal and crediting information reported in the Wall Street Journal to conclude that securities fraud claims were adequately pled because "we have previously explained that financial publications, such as the WSJ, which also corroborated [plaintiff's] alleged timeline of events, play an important role in informing investors about public corporations."). The Wall Street Journal's interpretation and conclusions about the duration and magnitude of the problem were, in fact, correct as demonstrated by corroborating, documentary evidence now described in the SAC.

Any assertion that, in moving to amend now, Plaintiffs are motivated by some presumed

desire to gain a tactical advantage is of no moment. After the Court concluded that the information contained in the Wall Street Journal was not sufficient on its own to plead scienter, Plaintiffs immediately requested and received from Sprint's regulators numerous documents that contain Sprint's own admissions despite the discovery stay of the PSLRA that allows Defendants to hide documents, and despite how getting such information is not an easy task or bound to be successful without the subpoena power of the Court. This motion was brought as soon as those documents were received, and Plaintiffs' investigation was complete. Plaintiffs' good faith in moving to amend speaks for itself based on the detailed allegations in the SAC that now rely on internal documents from the Company and from Sprint's regulators.

It cannot be emphasized enough that Plaintiffs are not required to plead any "evidence" to proceed to the next stage of litigation and, in fact, plaintiffs are barred by the PSLRA from gaining access to any "evidence" in Defendants' possession without discovery. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 150, 151-52 (2d Cir. 2021) (noting that plaintiffs are not required to prove their case within the confines of a securities fraud complaint, and warning that courts "must be careful not to mistake heightened pleading standards for impossible ones."); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d at 72 (holding that neither the PSLRA nor Rule 9(b) require a plaintiff to plead "detailed evidentiary matter" in a securities case). Still, the SAC pleads such "detailed evidentiary matter," *In re Scholastic Corp. Sec. Litig.*, 252 F.3d at 72, exceeding the requirements of the PSLRA, solely in an effort to address all of the Court's concerns. This course of conduct in the litigation is the opposite of bad faith or any improper motive.

There can also be no repeated failure to cure deficiencies despite numerous amendments here because Plaintiffs have not previously amended their Lifeline related claims and did not need to do so before the Court's dismissal. *See, e.g.*, *Helbiz, Inc.*, 2021 U.S. App. LEXIS 29745, at *9;

*Wells Fargo Sec., LLC*, 797 F.3d at 190-91. In any event, repleading serious claims of fraud and being allowed to do so is the default rule and standard practice in securities litigation.

## II.      CONCLUSION

For all of these reasons, Plaintiffs respectfully request the Court to grant the motion for leave to file the SAC and order the Defendants to file an Answer.

Dated: June 17, 2022                                Respectfully submitted,

**POMERANTZ LLP**

*/s/ Omar Jafri*

Patrick V. Dahlstrom
Omar Jafri
Brian P. O'Connell
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com
        ojafri@pomlaw.com
        boconnell@pomalaw.com


***Lead Counsel for Plaintiffs***