**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x
                                     :

ISAAC SOLOMON, FRANCINE CANION,      :
Individually and on behalf of all others similarly   :    19-cv-5272 (MKV)
situated,                                     :

                      Plaintiffs,           :

                   v.                    :

SPRINT CORPORATION, MICHEL COMBES, :
ANDREW DAVIES, MARCELO CLAURE and :
TAREK ROBBIATI,                    :

                     Defendants.        :

                                       :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Scott D. Musoff
Arthur R. Bookout
Thania (Athanasia) Charmani
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
scott.musoff@skadden.com
art.bookout@skadden.com
thania.charmani@skadden.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY.........................................................................2

      A.     Plaintiffs' Amended Complaint. ....................................................................................2

      B.     The Court Dismisses Plaintiffs' Lifeline and Internal Control Allegations. ............3

      C.     Plaintiffs Waited Two Years To Conduct Their Lifeline Investigation And
            Amend Their Allegations.............................................................................................4

      D.     Plaintiffs' Proposed Second Amended Complaint. ....................................................5

            1.     The new allegations demonstrate that the coding errors discovered
                  in 2014 and 2019 were two separate issues. ................................................6

            2.     The PSAC's amended scienter allegations. .................................................7

ARGUMENT ...................................................................................................................................8

I.     THE MOTION TO AMEND SHOULD BE DENIED BECAUSE IT IS
      UNTIMELY AND DEFENDANTS WILL BE PREJUDICED..........................................9

      A.     The Motion to Amend Is Untimely and Plaintiffs Offer No Reasonable
            Justification for Their Delay. .......................................................................................9

      B.     Granting Leave To Amend Would Unduly Prejudice Defendants. ........................13

II.    THE MOTION TO AMEND IS FUTILE. .......................................................................14

      A.     The 2014 Lifeline Scope Was Already Conceded by Sprint. ...............................16

      B.     Plaintiffs' One FCC Email Does Not Link The 2014 And 2019 Lifeline
            Allegations. ................................................................................................................16

      C.     Plaintiffs Fail to Plead That Sprint Executives or Directors Knew of
            Sprint's Coding Errors or Its Misstated Financials..................................................18

CONCLUSION..............................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)..............................................................22

*Barrett v. PJT Partners Inc.*,
    No. 16-CV-2841 (VEC), 2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017)...........................25

*Barron v. Helbiz, Inc.*,
    No. 21-278, 2021 WL 4519887 (2d Cir. Oct. 4, 2021).......................................12

*Bay Harbour Management LLC v. Carothers*,
    474 F. Supp. 2d 501 (S.D.N.Y. 2007)..............................................................11

*Berman v. Morgan Keegan & Co.*,
    No. 10 Civ. 5866(PKC), 2011 WL 2419886 (S.D.N.Y. June 3, 2011),
    *aff'd*, 455 F. App'x 92 (2d Cir. 2012)..................................................................9

*Berman v. Parco*,
    986 F. Supp. 195 (S.D.N.Y. 1997) ...................................................................9

*Burch v. Pioneer Credit Recovery, Inc.*,
    551 F.3d 122 (2d Cir. 2008)..........................................................................8

*Christine Asia Co. v. Ma*,
    718 F. App'x 20 (2d Cir. 2017) ...............................................................21, 22

*Community Association Underwriters of America, Inc. v. Main Line Fire Protection Corp.*,
    No. 18 Civ. 4273 (PMH)(JCM), 2020 WL 5089444 (S.D.N.Y. Aug. 28, 2020) .............12

*DeCastro v. City of New York*,
    No. 16-CV-3850 (RA), 2020 WL 4932778 (S.D.N.Y. Aug. 24, 2020)...........................13

*Ellis v. Chao*,
    336 F.3d 114 (2d Cir. 2003)..........................................................................15

*Evans v. Syracuse City School District*,
    704 F.2d 44 (2d Cir. 1983)............................................................................13

*In re Fed Ex Corp. Securities Litigation*,
    517 F. Supp. 3d 216 (S.D.N.Y. 2021)..............................................................22

*Grace v. Rosenstock*,
    228 F.3d 40 (2d Cir. 2000)............................................................................13

*Hall v. Children's Place Retail Stores, Inc.*,
  580 F. Supp. 2d 212 (S.D.N.Y. 2008)................................................................20

*Higginbotham v. Baxter International Inc.*,
  495 F.3d 753 (7th Cir. 2007) ...........................................................................19

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland
  Group, PLC*,
  783 F.3d 383 (2d Cir. 2015)..............................................................................15

*In re Insys Therapeutics, Inc. Securities Litigation*,
  No. 17 Civ. 1954 (PAC), 2018 WL 2943746 (S.D.N.Y. June 12, 2018) .........................20

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020)................................................................................24

*Jackson v. Avanos Medical, Inc.*,
  No. 16-CV-05093-LTS, 2019 WL 1437517 (S.D.N.Y. Mar. 31, 2019),
  *aff'd sub nom. Jackson v. Abernathy*, 960 F.3d 94 (2d Cir. 2020) ..............................24, 25

*Karpov v. Insight Enterprises, Inc.*,
  No. CV 09-856-PHX-SRB, 2010 WL 4867634 (D. Ariz. Nov. 16, 2010),
  *aff'd*, 471 F. App'x 607 (9th Cir. 2012).............................................................25

*Kiarie v. Dumbstruck, Inc.*,
  473 F. Supp. 3d 350 (S.D.N.Y. 2020)..............................................................9, 11

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018)..............................................................................8, 15

*Klinkowitz v. Jamaica Hospital Medical Center*,
  No. 20-CV-4440-EK-SJB, 2022 WL 818943 (E.D.N.Y. Mar. 17, 2022) ...................10, 14

*Lacher v. Commissioner*,
  32 F. App'x 600 (2d Cir. 2002) .........................................................................13

*In re LendingClub Securities Litigation*,
  254 F. Supp. 3d 1107 (N.D. Cal. 2017) .............................................................22

*Liu v. Intercept Pharmaceuticals, Inc.*,
  No. 20-3488, 2022 WL 2165621 (2d Cir. June 16, 2022)...........................................12, 25

*Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Securities, LLC*,
  797 F.3d 160 (2d Cir. 2015)..............................................................................12

*Matrix Capital Management Fund, LP v. BearingPoint, Inc.*,
  576 F.3d 172 (4th Cir. 2009) ...........................................................................20

*McCulloch v. Town of Milan*,
　　No. 07 Civ. 9780(LAP)(RLE), 2009 WL 3326638 (S.D.N.Y. Oct. 15, 2009)..............9, 13

*In re Mylan N.V. Securities Litigation*,
　　No. 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018)...........................22

*Oneida Indian Nation of New York State v. County of Oneida, New York*,
　　199 F.R.D. 61 (N.D.N.Y. 2000)...................................................................................13

*In re OSG Securities Litigation*,
　　12 F. Supp. 3d 622 (S.D.N.Y. 2014)...............................................................................23

*In re Par Pharmaceutical Securities Litigation*,
　　No. 06-cv-3226 (PGS), 2008 WL 2559362 (D.N.J. June 24, 2008).................................25

*Park B. Smith, Inc. v. CHF Industries Inc.*,
　　811 F. Supp. 2d 766 (S.D.N.Y. 2011)................................................................................9

*Priestley v. American Airlines, Inc.*,
　　No. 89 CIV. 8265 (JMC), 1991 WL 64459 (S.D.N.Y. Apr. 12, 1991) ...............................9

*Richardson Greenshields Securities, Inc. v. Lau*,
　　825 F.2d 647 (2d Cir. 1987).............................................................................................12

*In re Rockwell Medical, Inc. Securities Litigation*,
　　No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ..........................22

*Rombach v. Chang*,
　　355 F.3d 164 (2d Cir. 2004)............................................................................................15

*In re Sanofi Securities Litigation*,
　　155 F. Supp. 3d 386 (S.D.N.Y. 2016)..............................................................................20

*In re Scholastic Corp. Securities Litigation*,
　　252 F.3d 63 (2d Cir. 2001)........................................................................................16, 21

*Slayton v American Express Co.*,
　　604 F.3d 758 (2d Cir. 2010)......................................................................................19, 20

*Sjunde AP-Fonden v. General Electric Co.*,
　　No. 17-CV-8457 (JMF), 2022 WL 1078460 (S.D.N.Y. Apr. 11, 2022) ..........................14

*Sudunagunta v. NantKwest, Inc.*,
　　No. CV 16-1947-MWF (JEMx), 2017 WL 8810760 (C.D. Cal. Sept. 20, 2017)..............22

*In re Synchrony Financial Securities Litigation*,
　　988 F.3d 157 (2d Cir. 2021)............................................................................................11

iv

*Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)..............................................................................24, 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................15

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ............................................................23

*In re Veeco Instruments, Inc. Securities Litigation*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ......................................................................21

*In re Veon Ltd. Securities Litigation*,
    No. 15-cv-08672 (ALC), 2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)..........................22

*Verizon New York Inc. v. Global NAPS, Inc.*,
    No. 1:03-cv-05073-ENV-RML, 2007 WL 9706459 (E.D.N.Y. July 20, 2007)..........11, 14

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
    655 F.3d 1039 (9th Cir. 2011), *abrogated on other grounds by*
    *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019)...............................................................16

## STATUTES AND RULES

15 U.S.C. § 78u-4(b)(2) .........................................................................................15

Fed. R. Civ. P. 15..................................................................................................12

Fed. R. Civ. P. 15(a)(2)............................................................................................8

Fed. R. Civ. P. 16..................................................................................................12

v

**PRELIMINARY STATEMENT**

On March 25, 2022, the Court issued a thorough decision granting in part Defendants' motion to dismiss as to Plaintiffs' Lifeline and internal control allegations for failure to allege facts from which to draw a strong inference of scienter (the "Order," ECF No. 62). The decision did not grant leave to replead and directed Defendants to answer the complaint. About two months later, Plaintiffs, in response to Defendants' draft of a joint letter to the Court in advance of the upcoming status conference, raised for the first time that they might seek leave to file an amended complaint. At the June 8, 2022 status conference, Plaintiffs indicated that they intended to file a motion for leave to amend and the Court warned Plaintiffs not to simply repackage their existing allegations. Plaintiffs represented that their unfiled motion for leave to amend the complaint a second time would not repeat the same Lifeline-related scienter allegations that were already rejected by the Court.

Plaintiffs' motion reveals that there is nothing new or materially different in the proposed Second Amended Complaint (the "PSAC") that would cure the fatal defects in the first amended complaint. Nearly all of the purportedly "new" allegations are based on materials that Plaintiffs knew or could have known through reasonable investigation back when they filed their first amended complaint on July 30, 2020, and materials that were addressed in briefing on the prior motion to dismiss. Plaintiffs offer no reasonable explanation for their failure to have conducted such due diligence before amending their complaint the first time to add the Lifeline allegations or at any time while the motion to dismiss was pending. For this reason alone, the Court should deny the Motion to Amend (ECF No. 73).

But even putting aside Plaintiffs' unreasonable and unexplained delay, the Court may deny the motion for leave to amend on the grounds of futility. Plaintiffs' purportedly transformative new facts do not and cannot change this Court's ruling on lack of scienter, as they largely boil

down to (i) an email confirming that the 2014 Lifeline error was not limited to Oregon—*__which__*

*__Sprint already conceded and addressed in its motion to dismiss__*; (ii) an email from the FCC in

2019 asking Oregon for information about its 2014 investigation; (iii) an email from a Sprint

lawyer in July 2019 stating that Sprint had fixed the new coding error causing the different issue

identified by Oregon; and (iv) statements made in the Sprint-T-Mobile merger agreement

concerning Sprint's financial statements.   None of these items cures Plaintiffs' scienter

deficiencies (and they actually contradict any inference of scienter).  In short, Plaintiffs still rely

on the settlement with the FCC (that did not contain any admissions of wrongdoing) and

conclusorily assert that senior management somehow must have known about these coding errors

before they were uncovered.  But Plaintiffs cannot overcome the lack of any new material factual

allegations by speculating about what information the Defendants should have known simply by

their positions and ignoring Sprint's own statements (which Plaintiffs plead in the PSAC)

establishing that (i) there were different error issues in the two time periods separated by years

(2014 and 2019); and (ii) the 2019 Lifeline issue was caused by a coding error that was made *__in__*

*__2017__* in response to FCC changes to the Lifeline program, which obviously could not have existed

during the 2014 time period.

**BACKGROUND AND PROCEDURAL HISTORY**

A.      **Plaintiffs' Amended Complaint.**

On June 5, 2019, Plaintiff Isaac Solomon filed a putative class action complaint (the "Initial

Complaint") against Sprint and certain current and former Sprint officers alleging that Sprint

misled investors regarding its postpaid net additions figures.  (ECF No. 1 ¶ 3.)   The Initial

Complaint did not contain a single reference to the Lifeline program.  (ECF No. 1.)

The Court appointed Plaintiff Isaac Solomon as lead plaintiff (being the only movant).

(ECF No. 23.)  On July 31, 2020, after receiving permission from the Court to file an amended

2

complaint, Plaintiffs Isaac Solomon and Francine Canion (a self-appointed co-plaintiff) filed the Amended Complaint (the "AC" or "Amended Complaint," ECF No. 29), which added a new, wholly unrelated theory of liability based on a coding error relating to the government's Lifeline program that incorrectly caused Sprint to retain $200 million in government subsidies (which were voluntarily returned upon discovery). (AC ¶¶ 17-25, 35-36, 46-56, 89-109, 134, 146-57, 161-68.) Based on this, Plaintiffs added the former CEO and CFO at Sprint as individual defendants and enlarged what was previously an eight-month Class Period to two years by combining the two disparate claims into one Frankenstein-type complaint. (*Id.* ¶¶ 1, 35-36; *see generally id.* ¶¶ 1-26.)

Defendants filed a Motion to Dismiss the Amended Complaint (the "MTD," ECF No. 43) and briefing was completed, including motion practice regarding a sur-reply, on July 7, 2021 (ECF No. 57). The Court heard oral argument on August 4, 2021. (ECF No. 59.)

**B.      The Court Dismisses Plaintiffs' Lifeline and Internal Control Allegations.**

On March 25, 2022, the Court granted in part Defendants' motion to dismiss as to Plaintiffs' Lifeline and internal control allegations. (ECF No. 62.) The Court held that Plaintiffs failed to plead a cogent and compelling inference of scienter because "Plaintiffs' sole argument is that scienter is established through an email sent by an unnamed 'senior lawyer' at Sprint explaining that Sprint's failure to accurately keep track of Lifeline subscribers was the result of a 'systemic' failure." (*Id.* at 19.) Notably, Sprint conceded in briefing that the senior lawyer told the Oregon Public Utility Commission ("OPUC") that the 2014 Lifeline problem was a systemic coding error and not confined to Oregon (yet a system-wide coding error does not mean there were systemic control issues). (MTD at 26-27; ECF No. 49 ("Reply") at 10.) The Court also held that "Plaintiffs provide no other facts to back up th[eir] assertion" that Sprint insiders knew about problems with the company's internal controls (let alone knowledge at the highest levels necessary

3

to plead scienter against Sprint or the Individual Defendants).  (ECF No. 62 at 19.)  The Court

continued, "[i]n particular, Plaintiffs give no reason that the statements, made in 2014, could be

linked for purposes of scienter to the later Lifeline issues identified in 2019." (*Id.* at 20.)  The

Court also held that "Plaintiffs' claims about inaccuracies in Sprint's financial statements" fail to

sustain Plaintiffs' claim because "Plaintiffs do not attempt to point to internal documents or

information that contraindicates the information presented in Sprint's financial statements." (*Id.*)[1]

## C.    Plaintiffs Waited Two Years To Conduct Their Lifeline Investigation And Amend Their Allegations.

On April 22, 2022, without any indication from Plaintiffs that they intended to amend their

pleading, Defendants filed their Answer responding to the remaining allegations of the Amended

Complaint.  (ECF No. 65.)  During the months following the Court's decision, Plaintiffs did not

inform Defendants that they might seek leave to amend the Complaint until the joint status letter

filed with the Court on May 25, 2022.  (ECF No. 69 at 2-3.)[2]  At the June 8, 2022 initial pretrial

conference, Plaintiffs informed the Court that they would seek leave to amend their Amended

Complaint.  The Court warned Plaintiffs not to simply repackage their existing allegations, and

Plaintiffs assured the Court that the amended allegations would be substantively and substantially

different than the dismissed allegations.  Relying on these representations, the Court granted

Plaintiffs' request to file the Motion to Amend, which the Court said it would attempt to consider

promptly because of the parties' upcoming mediation.

On June 17, 2022, Plaintiffs filed their motion to amend and supporting brief (ECF Nos.

73, 74) and a proposed Second Amended Complaint with redline (ECF Nos. 74-1 (previously

---

[1]    The Court also held that Plaintiffs failed to adequately allege any "motive and opportunity."  (Order at 20.)  Plaintiffs do not claim to have attempted to cure this deficiency.

[2]    On May 25, 2022, the parties also informed the Court that they agreed to privately mediate the dispute.  (ECF No. 69 at 3.)

4

defined as the "PSAC"), 74-2). Plaintiffs' new allegations rely almost entirely on public filings and public records in existence before the Amended Complaint was filed two years ago. In addition, Plaintiffs concede that they only decided to send public records requests to several regulatory bodies that investigated Lifeline issues after the Court dismissed the Lifeline claims. (ECF No. 74 at 15-16.) Plaintiffs also claim that after the Order, they interviewed investigators from OPUC and additional confidential witnesses about the Lifeline program, though the confidential witness interviews were "not fruitful." (*Id.* at 1, 16.) As explained below, in addition to being available to Plaintiffs for more than two years, Plaintiffs' new allegations do not cure their prior scienter deficiencies.

**D.      Plaintiffs' Proposed Second Amended Complaint.**

Despite their assurances to the Court as to the nature of their amended allegations, the PSAC offers no new allegations that cure the deficiencies identified in the Order. Plaintiffs' renewed investigation, which included "public records requests to several regulatory bodies," a document production from the Attorney General's office in Oregon, "interview[s] with additional Confidential Witnesses," and apparently a second review of public filings by Sprint and the government, essentially yielded virtually nothing that was not available to Plaintiffs at the time the Amended Complaint was filed on July 31, 2021. (*See* ECF No. 74 at 16; PSAC ¶¶ 19, 24, 26-27, 59-62, 65, 119-27.) The only information post-dating the Amended Complaint is the FCC consent decree that was published while the parties were briefing Defendants' MTD (and was addressed in MTD briefing (*see* Reply at 4; ECF No. 56 at 5-6; ECF No. 57 at 4-5)), and statements made by OPUC and California regulators nearly 18 months after Sprint voluntarily disclosed the 2019 Lifeline issue.

5

### 1.     The new allegations demonstrate that the coding errors discovered in 2014 and 2019 were two separate issues.

Plaintiffs' revised allegations only confirm that the coding errors discovered in 2014 and 2019 were separate issues and, as with the Amended Complaint, the PSAC's allegations fail to show that Defendants were aware of the 2019 coding error—let alone the scope and impact of that error—when making the alleged misleading statements.  (PSAC ¶¶ 19-27, 35, 59-62, 65, 103-37.)

**The 2014 coding issue**.  Plaintiffs allege that an OPUC representative alerted Sprint to improper Lifeline subsidies from incoming text messages, and Sprint responded that the issue resulted from a 2013 coding error.  (PSAC ¶¶ 103, 105.)  Reiterating their prior allegations, Plaintiffs allege that Sprint admitted the error was not confined to Oregon.  (*Compare* PSAC ¶¶ 104, 106-107, *with* AC ¶ 89.)  Sprint conceded this response in its MTD briefing.  (MTD at 26-27; Reply at 10.)  The only difference is that Plaintiffs now cite to the specific email sent by an internal Sprint lawyer, Elaine Divelbliss.  (PSAC ¶ 107.)

The PSAC then alleges that Sprint informed OPUC in January 2015 that the error had been fixed, but that regulators had not produced to Plaintiffs any follow-up correspondence from Sprint. (*Id.* ¶¶ 108-09.)

**July 2019 coding issue**.  Plaintiffs allege that, on July 8, 2019, OPUC and the Oregon AG's office alerted Sprint to potential Lifeline issues and provided the serial number of the damaged phone that presented no activity but had yet received usage letters from Sprint.  (*Id*. ¶ 111.)  Plaintiffs allege that Sprint identified the issue and explained to the regulators that its platform mistakenly counted as usage incoming unanswered calls that went to the subscriber's voicemail.  (*Id*. ¶¶ 114-15.)  On July 16, 2019, Sprint allegedly informed the Oregon AG's office that it had fixed the coding error that caused the issue.  (*Id*. ¶ 115.)  Sprint determined that the coding error "occurred in July 2017 while the system was being updated to address . . . required

6

changes" mandated by the FCC in 2016.  (*Id.* ¶ 130.)  Sprint subsequently adopted a remediation plan and implemented new controls to track usage, and reimbursed federal and state governments for any subsidy payments that were improperly collected.  (*Id.* ¶¶ 129, 134.)  Sprint also entered into settlements with the FCC, California, and Oregon, under which Sprint paid fines of $200 million (which was addressed in the prior MTD briefing), $41 million, and $1.65 million, respectively.  (*Id.* ¶¶ 131, 134, 137.)

Although the PSAC alleges that the coding error discovered in 2014 related to text messages and was introduced in a 2013 system update (*id.* ¶¶ 104-08), and the coding error discovered in 2019 related to voicemail forwarding and was introduced in a 2017 system update (*id.* ¶ 130), Plaintiffs argue that the two errors were "linked." (ECF No. 74 at 1.)  The only support Plaintiffs' point to is a 2019 email from an FCC lawyer to the Oregon AG's office asking for information about Oregon's 2014 investigation.  (*Id.* ¶¶ 23, 116.)  The PSAC does not and cannot allege that the FCC ever found that the two issues were linked.[3]

### 2.     The PSAC's amended scienter allegations.

Based on the unsupported alleged "link" between the two errors, Plaintiffs draw implausible conclusions and urge the Court to adopt grounds for Defendants' scienter largely based on facts available to Plaintiffs at the time they filed the Amended Complaint and argued in prior MTD briefing.  *First*, Plaintiffs rely on the magnitude of Sprint's settlement agreements with the FCC, California, and Oregon.  (*Id.* ¶¶ 18, 29.) Second, Plaintiffs allege that Sprint's Chief Legal and Compliance Officer ("CLO") or General Counsel[4] must have made the Individual Defendants

---

[3]    Plaintiffs also reference Sprint's settlement agreements with California and Oregon, which occurred 18 months after Sprint voluntarily disclosed the 2019 Lifeline issue.[3]  (*Id.* ¶¶ 134-35, 137).  Plaintiffs likewise do not allege that the "'investigative findings'" of California and Oregon included any link between the 2014 coding error and the 2019 coding error.

[4]    Plaintiffs alternately use the terms interchangeably and to divide them by era: 2014 for General Counsel and 2019 for CLO.  (*See* PSAC ¶¶ 25, 104, 113, 118.)

aware of issues that led to the 2019 coding error because (i) the Sprint lawyers who communicated with OPUC in 2014 and 2019 "reported to" Sprint's General Counsel/CLO (*id*. ¶¶ 25, 104, 113);[5] and (ii) the General Counsel/CLO, in turn, reported directly to Sprint's CEO, who directly interacted with Sprint's Board of Directors (*id*. ¶¶ 113, 120).

Plaintiffs also rely on an allegation that Sprint hired one of its numerous outside counsel to assist with the FCC investigation of the 2019 Lifeline issue, a decision Plaintiffs believe must have needed the CLO's consent.  (*Id*. ¶ 133.)  Plaintiffs further allege that the Individual Defendants must have had knowledge of purported weaknesses in Sprint's internal controls, or were reckless for failing to do so, simply based on their roles and responsibilities within the company. (*Id*. ¶ 119.)  Finally, Plaintiffs allege that Sprint's merger agreement with T-Mobile that was signed by Mr. Claure contained representations and warranties about Sprint's compliance with laws and the adequacy of Sprint's internal controls, including that necessary information about its internal controls is communicated to Sprint's CEO and CFO.  (*Id*. ¶¶ 125-26.)

## ARGUMENT

Plaintiffs can amend their complaint with the Court's leave only where "justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[M]otions to amend should generally be denied in instances of . . . undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).  Further, "leave . . . need not be granted when amendment would be futile."  *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018).

---

[5]   Plaintiffs alternately allege that the Sprint lawyers "directly reported" to Sprint's General Counsel and "reported" to Sprint's General Counsel. (*Compare* PSAC ¶ 25 ("directly reported"), *with id*. ¶¶ 104, 113, *and* ECF No. 74 at 11 ("reported").)  While the Court need not address to consider this on the motion, neither Ms. Divelbliss nor Kenneth Schifman, the two Sprint lawyers alleged to be running point on the Lifeline issues in 2014 and 2019, respectively, directly reported to the General Counsel (or CLO) of Sprint.  In fact, neither Ms. Divelbliss nor Mr. Schifman reported to a direct report to the Sprint General Counsel/CLO.

**I.**      **THE MOTION TO AMEND SHOULD BE DENIED BECAUSE IT IS UNTIMELY AND DEFENDANTS WILL BE PREJUDICED.**

**A.**      **The Motion to Amend Is Untimely and Plaintiffs Offer No Reasonable Justification for Their Delay.**

The Motion For Leave to Amend should be denied because Plaintiffs can offer no reasonable explanation for their undue delay in conducting their new investigation and filing the PSAC.  Denial of a motion for leave to amend is warranted where "[t]here is no indication that plaintiffs' requests stem from newly uncovered information that was previously unavailable when the [c]omplaint was filed" and plaintiffs "offer no valid explanation for their undue delay." *Berman v. Morgan Keegan & Co.*, No. 10 Civ. 5866(PKC), 2011 WL 2419886, at *3-4 (S.D.N.Y. June 3, 2011), *aff'd*, 455 F. App'x 92 (2d Cir. 2012); *see also Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 357 (S.D.N.Y. 2020) ("[A] court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." (citation omitted)); *accord Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997); *Priestley v. Am. Airlines, Inc.*, No. 89 CIV. 8265 (JMC), 1991 WL 64459, at *1 (S.D.N.Y. Apr. 12, 1991).

"The burden to explain a delay is on the party that seeks leave to amend." *McCulloch v. Town of Milan*, No. 07 Civ. 9780(LAP)(RLE), 2009 WL 3326638, at *2 (S.D.N.Y. Oct. 15, 2009) (citation omitted).  The Court should deny the motion where, as here, plaintiffs' offer no credible explanation for their delay.  *See Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779-81 (S.D.N.Y. 2011) (denying leave to amend because of plaintiff's failure to provide a valid explanation for its delay); *McCulloch*, 2009 WL 3326638, at *2 (denying leave to amend where plaintiff gave "little reason for her delay in filing her motion").

Plaintiffs' Amended Complaint and PSAC offer the same factual basis for the Lifeline allegations:  the 2014 and 2019 coding errors that caused Sprint's IT platform to record ineligible

9

subscribers.  (*Compare* AC ¶¶ 19, 22, 25, *with* PSAC ¶¶ 102-16.)  Nearly all of their "new" allegations could have been asserted in the Amended Complaint filed almost two years ago or presented to the Court while the motion was pending.  The only information cited in the PSAC that post-date the Amended Complaint are (i) the FCC Consent Letter; (ii) a statement in April 2021 from a California regulator imposing a fine of $41 million and stating that Sprint had agreed to implement certain changes; and (iii) a May 2021 press release from OPUC imposing a fine of $1.6 million and stating that its investigation caused it to determine that Sprint had been systematically overcharging users.  (PSAC ¶¶ 131-37.)  None of these move the needle for Plaintiffs.  The FCC Consent Letter was addressed in the prior motion to dismiss briefing.  (Reply at 4; ECF No. 56 at 5-6; ECF No. 57 at 4-5.)  The 2021 statements post-date Sprint's own disclosure of the issues by approximately 18 months, and the fines are immaterial compared to the hundreds of millions of dollars in revenue, refunds, and fines that the Court was made aware of in the prior motion to dismiss briefing.  (MTD at 1; Reply at 4.)

Instead of completing their investigation before filing the Amended Complaint, which itself was filed more than a year after the Initial Complaint, Plaintiffs elected not to pursue these leads for nearly two years.  Plaintiffs' attempted justifications fall far short of the mark here.

*First*, Plaintiffs' assertion that they have only filed one complaint concerning the Lifeline issues (in July 2020) does not excuse this delay.  (ECF No. 74 at 2.)  Plaintiffs argue that "facts giving rise to the claim did not even emerge until after the lawsuit was filed, and Plaintiffs have not had any opportunity to amend these specific claims."  (*Id*.)  But they gloss over the fact that, as explained above, nearly everything new cited in the PSAC was available at the time Plaintiffs filed their Amended Complaint on July 31, 2020.  Plaintiffs' explanation cannot justify their delay.  *See, e.g.*, *Klinkowitz v. Jamaica Hosp. Med. Ctr.*, No. 20-CV-4440-EK-SJB, 2022 WL 818943, at

10

*3 (E.D.N.Y. Mar. 17, 2022) (in considering whether to grant leave to amend "[t]he [c]ourt must also examine whether [p]laintiff had notice of, or was diligent in discovering, the alleged new facts" (citation omitted)); *Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d 501, 503 (S.D.N.Y. 2007) (denying leave to file a second amended complaint where plaintiff "had a full and fair opportunity to investigate this matter, both before suit was filed and before the . . . deadline [to amend the initial complaint]").

*Second*, Plaintiffs argue that it was reasonable for them to rely on the *Wall Street Journal*. (ECF No. 74 at 17.)  Whether or not the *Wall Street Journal* article is reliable does not alter the undisputed fact that Plaintiffs chose to conduct no further investigation whatsoever even though all relevant information was available to them at the time.  *See Kiarie*, 473 F. Supp. 3d at 357. Plaintiffs apparently believed that the *Wall Street Journal* article standing alone was sufficient to plead scienter and chose not to proffer any other allegations.  (*See* ECF No. 45 at 21-22.)  That is a strategic decision that Plaintiffs made, and neither the Court nor Defendants should bear the burden of Plaintiffs' remorse. *See Verizon N.Y. Inc. v. Glob. NAPS, Inc.*, No. 1:03-cv-05073-ENV-RML, 2007 WL 9706459, at *3 (E.D.N.Y. July 20, 2007) (denying leave to amend where plaintiff's "cho[ice]," "[f]or whatever reason," to not include the proposed amended allegations in the initial complaint, "was a strategic choice of [plaintiff]'s at the time that cannot simply be undone after th[e] litigation ha[d] been pending for almost four years").[6]

None of Plaintiffs' cited cases addressed a circumstance in which the plaintiff deliberately delayed asserting known claims until well after the agreed deadline to do so and after the litigation was pending for three years, and Plaintiffs' assertion that the "clock" for an amendment "starts to

---

[6]    Unlike here, plaintiffs in *In re Synchrony Financial Securities Litigation*, 988 F.3d 157 (2d Cir. 2021), did not make a strategic decision to rely exclusively on a Wall Street Journal article. *Id.* Rather, the Wall Street Journal article in *Synchrony* merely corroborated the accounts of "multiple former employees." *Id*. at 161.

11

tick only from the date of the Court's dismissal" is unsupported by the cases.  (ECF No. 74 at 15.)

For example, in *Barron v. Helbiz, Inc.*, No. 21-278, 2021 WL 4519887 (2d Cir. Oct. 4, 2021), the court merely referred to cases where "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."  *Id*. at *3.  The court did not hold that any "clock" starts "only from the date" of a dismissal, a conclusion that is contrary to the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 15, 16.  Moreover, the court in *Barron* did not discuss circumstances where, like here, plaintiffs offer no plausible explanation as to their years-long delay to amend their allegations based on facts available to them since the filing of the initial pleadings.

Plaintiffs' citation of *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), likewise does not help their cause.  There, the Second Circuit found that "the procedure by which the district court denied leave to amend was improper" because the court had suspended normal briefing procedure and required plaintiffs to respond to a "Hobson's choice" of either amending their complaint in response to a letter from defendants raising deficiencies or "forfeit[ing] the opportunity to replead."  *Id*. at 190-91.  In contrast, Plaintiffs here had ample opportunity to conduct their investigation before amending their complaint the first time to add the Lifeline allegations or at any time while the motion to dismiss was pending yet chose not to do so until well after the Court's decision.[7]  Just this month, in *Liu v. Intercept*

---

[7]    Plaintiffs' other cases are similarly inapposite.  In *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647 (2d Cir. 1987), the court held that "the district judge usurped power" when she prevented defendants from filing a motion for leave to amend their answer without a prior conference, delayed that conference, then denied the motion for leave as untimely.  *Id.* at 652.  In *Community Association Underwriters of America, Inc. v. Main Line Fire Protection Corp.*, No. 18 Civ. 4273 (PMH)(JCM), 2020 WL 5089444 (S.D.N.Y. Aug. 28, 2020), plaintiff uncovered new information through deposition testimony taken in an ongoing case and filed its motion to amend two months later.  *Id.* at *2.  Here, Plaintiffs could have uncovered their "new" information two years ago.

12

*Pharmaceuticals, Inc.*, No. 20-3488, 2022 WL 2165621 (2d Cir. June 16, 2022),[8] the Second Circuit held that plaintiffs were not entitled to the opportunity to amend merely because they made a "cursory" request in "a casual two-line mention" at the end of their opposition brief to defendants' motion to dismiss—thereby rejecting plaintiffs' argument that "they never had the benefit of a ruling." *Id.* at \*4. Here, Plaintiffs did not include even a "cursory" request for leave to amend in their opposition to Defendants' motion to dismiss. (*See* ECF No. 45.)

**B.      Granting Leave To Amend Would Unduly Prejudice Defendants.**

Defendants will be unduly prejudiced if forced to respond to additional meritless claims. A motion to amend may be denied "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice [the defendant]." *DeCastro v. City of New York*, No. 16-CV-3850 (RA), 2020 WL 4932778, at \*10 (S.D.N.Y. Aug. 24, 2020) (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000)); *accord McCulloch*, 2009 WL 3326638, at \*2. In particular, a party may be unduly prejudiced, if, among other things, the assertion of the new allegations would: (i) require the party "to expend significant additional resources to conduct discovery and prepare for trial," and (ii) "significantly delay the resolution of the dispute." *McCulloch*, 2009 WL 3326638, at \*2 (quoting *Lacher v. Comm'r*, 32 F. App'x 600, 603 (2d Cir. 2002)). The prejudice inquiry "involves a balancing process" weighing any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied. *Oneida Indian Nation of New York State v. Cnty. of Oneida, N.Y.*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000). "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (citation omitted).

---

[8]    *Intercept* was also a securities case "combin[ing] a complex commercial reality with a long, multi-prong complaint." (*See* ECF No. 74 at 7.)

13

Because Plaintiffs have unreasonably delayed seeking amendment, Defendants need to make only a "minimal" showing of prejudice.  *Klinkowitz*, 2022 WL 818943, at *5.

Granting the Motion to Amend would prejudice both the Court and the Defendants, especially in light of Plaintiffs' inexplicable delay.  At this stage, the Court has reviewed extensive briefing on Plaintiffs' Amended Complaint, as well as related motion practice, heard oral argument and issued a lengthy decision.  *See Verizon N.Y.*, 2007 WL 9706459, at *3 ("In considering prejudice caused by the delay in bringing [a] motion [for leave to amend], the Court may also consider the use of judicial resources and the burden on the judicial system.").  Two individual defendants—Messrs. Claure and Robbiati—are currently out of the case because the only claims against them related to the Lifeline allegations.  (ECF No. 69 at 3.)  Further, Plaintiffs' attempt to reanimate the Frankenstein complaint risks burdening Defendants with the cost of litigating two completely different claims and more than doubling the class period.  Defendants should not be required to undertake this burden, especially when Plaintiffs' new allegations arise from the same nucleus of facts at issue in the Amended Complaint and are based almost exclusively on material Plaintiffs could have cited when the Amended Complaint was filed two years ago.[9]

## II.    THE MOTION TO AMEND IS FUTILE.

Even setting aside Plaintiffs' undue delay and the significant burden that granting leave to amend would impose on Defendants and the Court, the Motion to Amend should be denied as

---

[9]    While Plaintiffs cite cases suggesting that because the parties have not yet engaged in discovery, the expense (and time) related to defending against the amendment and moving to dismiss the PSAC do not, in and of themselves, constitute undue prejudice (ECF No. 74 at 17), Plaintiffs have not cited any cases where the additional expense and time associated with defending against meritless and untimely amendments were not unduly prejudicial.  *Cf. Sjunde AP-Fonden v. Gen. Elec. Co.*, No. 17-CV-8457 (JMF), 2022 WL 1078460, at *6 (S.D.N.Y. Apr. 11, 2022) (granting leave to amend where plaintiffs' amendment was premised on facts discovered during discovery and finding that because "[p]laintiffs could not have successfully filed their proposed amendment before receiving the documents they received during fact discovery," demonstrating as they "must" that "despite . . . having exercised diligence, the applicable deadline could not have been reasonably met").  These are not the circumstances present here where Plaintiffs did not diligently pursue information available to them for years and therefore, Defendants need to make only a "minimal" showing of prejudice.  *Klinkowitz*, 2022 WL 818943, at *5.

futile—because the amended allegations do not raise the requisite strong inference of scienter and cannot salvage the deficient Lifeline allegations. *See Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004) (explaining that plaintiffs must "state with particularity [the] facts giving rise to a strong inference that the defendant acted with the required state of mind" (quoting 15 U.S.C. § 78u-4(b)(2))); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007) ("[A]n inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent . . . .").

"[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). A proposed amendment is futile if it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). In other words, an amendment is futile if it will have "no impact on the basis for the district court's dismissal." *Kim*, 884 F.3d at 105-06.

Plaintiffs' attempt to address the pleading deficiencies in the Amended Complaint constitutes nothing more than repackaging the allegations previously considered and rejected by this Court and does not warrant a different result. Indeed, Plaintiffs concede that "the same claims and the same theories" were known to Defendants "since July 2020 when the Amended Complaint was filed." (ECF No. 74 at 17.)

The PSAC does not attempt to add allegations to sufficiently plead that Defendants "had a motive and opportunity to commit fraud in connection with the Lifeline program and their internal controls." (Order at 20-21.) Similarly, Plaintiffs do nothing "to point to internal documents or information that contraindicates the information presented in Sprint's financial statements." (*Id.*

15

at 20.)

Instead, Plaintiffs argue that they have overcome their scienter deficiencies because they have pleaded additional information to support their prior allegations that (i) the 2014 Lifeline issues were systemic and not limited to Oregon; (ii) the 2014 and 2019 errors were linked; and (iii) that Sprint "insiders" knew or recklessly disregarded the company's internal control problems. (ECF No. 74 at 1.)  Nothing in the PSAC, either individually or "holistically" (ECF No. 74 at 13-14, 15), can overcome Plaintiffs' prior pleading deficiencies and the Motion to Amend should be denied.

## A. The 2014 Lifeline Scope Was Already Conceded by Sprint.

Plaintiffs argue that they have cured their scienter deficiencies because they have found the actual email from the Sprint lawyer telling OPUC that the 2014 Lifeline issue, which involved counting text messages as compensable "usage" for the Lifeline program, was "systemic" and not just confined to Oregon.  (ECF No. 74 at 8-9; PSAC ¶¶ 102, 107; *see also id.* ¶¶ 103, 105.)  But Sprint conceded this in the prior motion to dismiss briefing.  (MTD at 26-27; Reply at 10.)  Thus, there is nothing new here.[10]

## B. Plaintiffs' One FCC Email Does Not Link The 2014 And 2019 Lifeline Allegations.

In dismissing the Lifeline claims, the Court previously held that "Plaintiffs give no reason that the statements, made in 2014, could be linked for purposes of scienter to the later Lifeline

---

[10]   Plaintiffs argue that two cases support their proposition that pre-class period information is relevant to their claims here. (ECF No. 74 at 9.)  Neither do.  In *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039 (9th Cir. 2011), *abrogated on other grounds by Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), plaintiffs alleged that pre-class period information showed that defendants had "repeatedly ignored" the requirements of a right of first refusal in a co-sale agreement to surreptitiously sell shares and that they "went to such great lengths to avoid disclosure of their sales." *Id.* at 1053.  By contrast, here Sprint disclosed the 2014 Lifeline error and was transparent about its cause and the Company's remedial measures. (PSAC ¶¶ 103, 107-08.)  In *In re Scholastic Corp. Securities Litigation*, 252 F.3d 63 (2d Cir. 2001), pre-class period data showed that defendants had knowledge of declining sales in *the quarter prior to the class period*, but made representations to the contrary in the company's financials. *Id.* at 72.  Here, the two coding errors were years apart and impacted different functions of the phone. (PSAC ¶¶ 103, 105, 111, 114-15, 130.)

16

issues identified in 2019." (Order at 20.) Plaintiffs do not allege that the Lifeline issues involved the same fact pattern, nor could they. (*See* ECF No. 45 at 2-3.) In 2014, the Lifeline issue involved counting text messages as usage for purposes of Lifeline compensation. (PSAC ¶ 103.) In 2019, the Lifeline issue involved forwarded voicemails being counted as usage. (*Id.* ¶¶ 114-15.)

Nevertheless, Plaintiffs claim that they have cured this deficiency because they have identified an email from the FCC in 2019 to the Oregon AG's office asking for information about Oregon's 2014 investigation. (*Id.* ¶ 116.) But Plaintiffs do not explain why it is reasonable to infer that the FCC viewed the two incidents as related or linked. Notably, Plaintiffs do not point to any statement from the FCC stating that it "viewed [the two incidents] as a common course of misconduct." (ECF No. 74 at 10.) Plaintiffs cannot transmute the FCC's request for information into an inference of a conclusion that the two incidents were related. There are no allegations in the PSAC that the FCC (or any other regulator for that matter) expressed the view that the two incidents were viewed as one continuous issue.[11]

In fact, Plaintiffs' new allegations only bolster the fact that the 2019 incident could not be based on the same code that caused the 2014 incident ***because the 2019 coding error did not occur until 2017***. Plaintiffs first conceded this in the Amended Complaint and cited to the *Wall Street Journal* stating that the 2019 Lifeline coding error occurred when "Sprint again made changes to its IT platform following further Lifeline program changes in 2016." (ECF No. 44-19: MTD Ex. S, Wall Street Journal Article, Dec. 3, 2019 (cited in AC ¶¶ 25, 89).)

Similarly, the PSAC alleges that Sprint publicly disclosed that the coding issue underlying Plaintiffs' 2019 Lifeline claims "occurred in July 2017 while the system was being updated to

---

[11]    While Plaintiffs cite to statements from a California regulator and OPUC in 2021—about 18 months after Sprint voluntarily disclosed the 2019 Lifeline issue—notably absent from Plaintiffs' allegations is any statement from those regulators that any of their "'investigative findings'" uncovered a link between the 2014 and 2019 issues. (PSAC ¶¶ 24, 134.)

17

address the required changes" enacted by the FCC in 2016 to the Lifeline program.  (PSAC ¶ 130; *see also* ECF No. 44-11: MTD Ex. K, Sprint 2019 10-K/A, at 4 (same).)  Plaintiffs try to blunt the fact that, as they put it elsewhere, Sprint would have needed a "time machine" (ECF No. 74 at 8) to link the 2014 and 2019 claims by alleging that "[n]either the 2012 [FCC] Rule nor the 2016 [FCC] rule considered the receipt of text messages or any calls forwarded to voicemail as 'usage.'" (PSAC ¶ 130.)  Maybe so, but that does not change the undisputed alleged facts that the 2014 and 2019 Lifeline issues involved different uses (text messages vs. voicemail) and the coding issue underlying Plaintiffs' Lifeline claims during the Class Period did not occur until years after the 2014 Lifeline issue.  Plaintiffs' single email does not adequately plead scienter and cannot overcome the more compelling inference from other pleaded facts that the 2019 Lifeline issue was based on code that was not inserted into Sprint's systems until years after the 2014 Lifeline issue.[12]

## C.    Plaintiffs Fail to Plead That Sprint Executives or Directors Knew of Sprint's Coding Errors or Its Misstated Financials.

As explained above, in the PSAC, "Plaintiffs do not attempt to point to internal documents or information that contraindicates the information presented in Sprint's financial statements." (Order at 20; *see supra* pp. 5-8.)  Instead of pointing to internal Sprint documents that show knowledge by any Sprint executive of the 2019 Lifeline problems or inaccurate financial statements, Plaintiffs try to compile disparate statements from several different sources to

---

[12]   Plaintiffs also allege that OPUC sent two emails in early 2015 to Sprint lawyers asking them to confirm that the tests Sprint promised to conduct of its systems had been completed, and then makes the wild argument that Sprint "failed to cure the deficiencies between 2014 and 2019" because there was no response from Sprint in the public records produced by Oregon in response to Plaintiffs' requests.  (PSAC ¶ 109; ECF No. 74 at 9-10.)  It is not reasonable to infer that Sprint failed to cure deficiencies simply because Oregon did not produce emails from Sprint responding to questions about tests.  Plaintiffs allege that Sprint told OPUC in January 2015 that it has fixed the 2014 coding error.  (PSAC ¶ 108.)  In addition, Plaintiffs provide this Court no explanation of (i) what materials Plaintiffs requested from the Oregon regulators; or (ii) any representation from Oregon that they produced all communications related to the 2014 Lifeline issue that ever existed.  Moreover, Plaintiffs do not explain why, if Oregon had any actual concern that Sprint had not addressed the 2014 Lifeline issue and Sprint had failed to respond, Oregon apparently walked away and did not press Sprint further.

manufacture knowledge.

Principally, Plaintiffs rely on two things. *First*, Plaintiffs allege that OPUC reached out to Sprint on July 8, 2019, to alert it to the 2019 Lifeline issue and Sprint promptly addressed the coding error, but "continued to make false statements about the Company's revenues and internal controls in August 2019." (ECF No. 74 at 4 (emphasis omitted); PSAC ¶ 115.) But the PSAC's allegations reveal the frailty of this claim. Plaintiffs allege that OPUC alerted Sprint on July 8, 2019, that a damaged phone with no activity was receiving usage letters, and that Sprint immediately initiated an investigation. (*Id*. ¶ 111.) Sprint informed the Oregon Department of Justice that Sprint had mistakenly "counted as usage incoming unanswered calls that went to the customer's voicemail, but the issue was fixed on July 16, 2019" and fixed the coding error. (*Id*. ¶ 115 (emphasis omitted).) Plaintiffs do not allege that Sprint told OPUC (or anyone else) that, in the span of eight days, Sprint had looked into and concluded an investigation into any potential affected phone lines and subsidies to assess what, if any, impact there was to Sprint's broader internal controls and financials. Companies are allowed reasonable time to investigate issues and respond when the investigation is complete. *See, e.g.*, *Slayton v Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010); *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 761 (7th Cir. 2007) ("Taking the time necessary to get things right is both proper and lawful. Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal."). Thus, a far more compelling inference is not that Sprint magically assessed the impact to its system within a matter of a few weeks, but that, when Sprint released its fiscal 2019 first quarter financial results on August 2 and August 7, 2019, the Company's investigation was still in its initial stages and there is no indication that any senior executives had knowledge or reason to believe there were

19

"material weaknesses" in Sprint's internal controls. (*Id.* ¶ 121.)[13]

Tellingly, after the investigation yielded sufficient information, Sprint self-disclosed the extent of the issue to the FCC and on November 12, 2019, it filed an amendment to its 2019 annual report fully disclosing the issue, its impact, and Sprint's remediation plan to address this deficiency in its internal controls. (*See* ECF No. 44-11: MTD Ex. K, Sprint 2019 10-K/A, at 4.) "Later disclosures that timely raised questions about the reliability of financial information . . . lend weight to an inference that contemporaneous financial statements were made in good faith." *Slayton*, 604 F.3d at 777 (quoting *Matrix Capital Management Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 187 (4th Cir. 2009)). Thus, "[u]nder these circumstances, the disclosure made about internal control deficiencies lends some weight to the inference that defendants were not acting with scienter but rather were endeavoring in good faith to inform investors of their internal control and financial reporting problems." *BearingPoint*, 576 F.3d at 189. This is a more "cogent and compelling" inference than one of intent to commit securities fraud. *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 405 (S.D.N.Y. 2016).[14]

*Second*, Plaintiffs point to the April 29, 2018, Sprint-T-Mobile merger agreement, which

---

[13]    Plaintiffs cite two additional cases for the proposition that admitting a "'material weakness in . . . internal controls'" supports an inference of scienter. (ECF No. 74 at 10-11 (citation omitted).) Sprint made no such admission to Oregon in July 2019, and Plaintiffs' cases are inapposite. In *In re Insys Therapeutics, Inc. Securities Litigation*, No. 17 Civ. 1954 (PAC), 2018 WL 2943746 (S.D.N.Y. June 12, 2018), the court found motive and opportunity (which is not asserted in the Motion to Amend) and held that the complaint was "replete" with "extensive" allegations of recklessness because, among other things, senior executives with direct responsibility for the company's financial statements knew that they failed to account for material information. *Id.* at *6-7. In *Hall v. Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212 (S.D.N.Y. 2008), the court denied a motion to dismiss in an options backdating case where (i) the company had committed 120 separate breaches of a contract, which it withheld and never fully disclosed; (ii) the company had admitted that it backdated options in light of upcoming disclosures; and (iii) the company's CEO and auditor had each resigned. *Id.* at 221-23, 228-33. The PSAC is devoid of any type of the particularized allegations of knowledge that were present in either case.

[14]    Plaintiffs repeatedly try to play "gotcha" because Sprint has stated that it "self-disclosed" the 2019 Lifeline issues and impact even though OPUC first alerted Sprint to the issue. (*See, e.g.*, PSAC ¶ 24; ECF No. 74 at 14.) But Plaintiffs do not dispute that Sprint self-reported the 2019 Lifeline issue to the FCC and other regulators, and that the eventual fine to Sprint from Oregon of approximately $1.6 million was not material both in terms of Sprint's overall revenue for any one year (let alone multiple years) and in terms of the fine from the FCC, which was before the Court on the previous motion to dismiss. (MTD at 1; Reply at 4.)

Mr. Claure signed on behalf of Sprint, because it contained representations and warranties about Sprint's compliance with laws and the adequacy of Sprint's internal controls, including that necessary information about its internal controls had been communicated to Sprint's CEO and CFO. (PSAC ¶¶ 123-26.)  The PSAC then alleges that on July 26, 2019, Mr. Claure signed an amendment to the merger agreement, affirming the same representations. (*Id*.)  Plaintiffs claim that these representations demonstrate Defendants' recklessness. (*Id*. ¶ 127.)  But even if a merger agreement could provide inference of scienter,[15] Plaintiffs do not allege that anyone had told Mr. Claure about the 2019 Lifeline issue when he signed the merger agreement in 2018 or that he had been advised of the issue when signing the amendment in July 2019.[16]  (*See* MTD at 23-25.)

Plaintiffs also point to other purported "facts" that Plaintiffs argue make it reasonable to infer that senior executives and the Sprint board knew of the 2019 Lifeline issue but sat silent.  But none actually state a fact sufficient to provide a compelling inference of scienter.[17]

Quoting *Christine Asia Co. v. Ma*, 718 F. App'x 20, 23 (2d Cir. 2017), Plaintiffs argue that it is "virtually inconceivable" that Sprint's internal lawyers would not have reported the Lifeline issues to Sprint's General Counsel, who then presumably would have informed his "direct[] report[]," the CEO, as well as the Audit Committee under the terms of its charter. (ECF No. 74 at 11; PSAC ¶¶ 120-22.)  Plaintiffs also allege that it is "'virtually inconceivable'" that Ms.

---

[15]  Notably, T-Mobile did not ever accuse Mr. Claure or Sprint of breaching this representation and warranty.

[16]  Plaintiffs concede that the representation and warranty only went back to January 1, 2016 (PSAC ¶ 124), and thus would not have involved the 2014 Lifeline issue.

[17]  Plaintiffs cite to two cases where defendants failed to timely take accounting write-downs despite knowing that such write-downs were required, arguing that the failure to follow company policies can support a finding of recklessness. *See Scholastic*, 252 F.3d at 77 (company failed to timely take write-down for additional book returns despite closely monitoring returns); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 231 (S.D.N.Y. 2006) (defendants failed to timely write down nonsaleable inventory, and confidential witnesses stated that defendants specifically instructed them to delay the write-downs).  These cases are inapposite because, here, there are not allegations that Defendants purposely hid the coding error from investors or instructed anyone to delay in disclosing the error.  Indeed, the more compelling inference is that Sprint, as it disclosed publicly, undertook an investigation of the 2019 Lifeline issue and disclosed the results of that investigation when it was complete.

21

Divelbliss, the Sprint attorney who interfaced with Lifeline regulators regarding the 2014 issue, "would not understand that the same type of deficiency had once again arisen" in 2019. (PSAC ¶ 118.) This argument fails both legally and inferentially. It fails legally because that knowledge cannot be inferred merely from employees' roles and responsibilities (allegations that Plaintiff also advanced in the Amended Complaint).[18] (PSAC ¶¶ 117-22; AC ¶¶ 38, 184, 189.) *See, e.g., In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 237-38 (S.D.N.Y. 2021) (allegations that the individual defendants had access to relevant non-public information about their company's operations "because of their positions within FedEx," and "their positions of control and authority as officers and/or directors of the Company" were insufficient to plead scienter); *In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ. 1691 (RJS), 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018) ("[I]t is practically hornbook law that 'accusations' . . . which are 'founded on nothing more than a defendant's corporate position[,] are entitled to no weight.'" (citation omitted)).[19]

---

[18] Similarly, allegations about a CFO's "expert[ise] in finance and accounting" are insufficient to plead scienter. *See In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC), 2018 WL 4168958, at *20 (S.D.N.Y. Aug. 30, 2018) (allegation that CFO "played a 'crucial role in financial reporting' as CFO . . . , which 'should have alerted him' to the lack of internal controls" did not support claim, because allegations about a defendant's "role as CFO . . . do not give rise to an inference of scienter"). Plaintiffs' cited cases are easily distinguishable. In *In re LendingClub Securities Litigation*, 254 F. Supp. 3d 1107 (N.D. Cal. 2017), the court held that plaintiffs had adequately alleged scienter of the CFO because she was on notice of CEO's "earlier pattern of alleged abuses" and self-dealing to inflate numbers by exploiting "flaws" in the company's "internal procedures . . . and financial reporting." *Id.* at 1121-22. The court concluded that, given the CEO's conduct, "it would be 'absurd' for [the CFO] to have been blind to these weaknesses and improprieties." *Id.* (citation omitted). In *In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004), the CFO made statements about "strong growth in . . . advertising revenues" while having "intimate involvement with . . . allegedly fraudulent advertising deals." *Id.* at 222. Likewise, in an alleged price fixing case, the court found adequate allegations of scienter from a confidential witness who had "personal observations at meetings with Mylan's CEO and CFO" where they had agreed on "dramatic price increases" for Mylan's products. *In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926 (JPO), 2018 WL 1595985, at *17 (S.D.N.Y. Mar. 28, 2018). Notably, the court dismissed other allegations for lack of scienter, holding that "'government investigations cannot bolster allegations of scienter that do not exist.'" *Id.* (citation omitted). There are no similar allegations of direct (or personally observed) misconduct by senior executives here.

[19] For the same reasons, *In Sudunagunta v. NantKwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2017 WL 8810760 (C.D. Cal. Sept. 20, 2017), does not support Plaintiffs' claims. There, the court did not find that generalized allegations based on the company's audit committee's general role and responsibilities were sufficient to plead a strong inference of scienter. *Id.* Instead the court stated that such allegations "may be enough 'when combined with allegations of particular activities suggesting access to and knowledge of information concerning the specific

*(cont'd)*

In addition, *Christine Asia Co.*, 718 F. App'x at 22-23, does not help Plaintiffs' cause. There, the court found it "virtually inconceivable" that Alibaba's Chief Risk Officer would not have told Alibaba's CEO and CFO, who were named defendants, that he had been hauled into a secret meeting by the Chinese government and threatened with a fine of 1% of the daily gross value of everything Alibaba sold on its online sales platforms unless it stopped selling counterfeit goods, which threatened a multi-billion dollar impact that would derail Alibaba's imminent IPO. *Id.* By contrast, here, the Lifeline issues involved a small branch of Sprint's overall company, the Assurance Wireless segment (PSAC ¶ 16), none of the Sprint lawyers identified directly reported to any of the Individual Defendants, and the regulators did not haul Sprint's lawyers into a secret meeting and threaten to take action that would derail an enormous strategic project like an IPO.[20] Indeed, the regulators did not make any findings until well after Sprint voluntarily disclosed the 2019 Lifeline issue.

The allegations also cannot produce any cogent or compelling inference of scienter because Plaintiffs do not adequately explain why it is "virtually inconceivable" that any senior executive

---

fraud at issue,'" *id.* at *12 (citation omitted), and credited allegations that the audit committee had specifically reviewed and approved "the terms of the modification warrant" at the center of plaintiff's claims. *Id.* Here, the PSAC does not include any specific allegations about the Sprint audit committee's involvement with the lifeline issue. Similarly, *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029 (N.D. Cal. 2016), is wholly distinguishable. There, the court held that plaintiffs had sufficiently alleged scienter with respect to high-level executives who were also members of the audit committee where the company had violated "arguably the most fundamental and straightforward corporate accounting principle" by improperly recognizing revenue that caused the company's total net income to be "inflated by almost 500%." *Id.* at 1042. The PSAC does not allege that defendants had knowledge that Sprint's financials were false when made, or that the Lifeline program accounted for a material part of Sprint's revenue or net income, let alone could impact it by anything approaching 500%.

[20] Plaintiffs' reliance on *In re OSG Securities Litigation*, 12 F. Supp. 3d 622 (S.D.N.Y. 2014), is also misplaced. Unlike here where Plaintiffs rely on purported knowledge by two members of Sprint's legal department, in *OSG*, the court held that the tanker company's president and CEO, as well as the CFO and treasurer, knew about or recklessly disregarded the company's income tax liability stemming from a foreign subsidiary's guarantee of loans of its U.S. parent because anyone in a position of financial decision-making authority would have known that "joint and several" language in credit agreements constituted a guarantee, and that those individuals were aware of deliberate withholding by the company's senior vice president and general counsel of documents relevant to company's tax liability from company's outside counsel and the subsequent request that outside counsel issue a tax opinion "despite knowing there were contradictory documents in its files." *Id.* at 631-32.

23

would not have knowledge of the 2014 issue or any reason to believe that the 2014 and 2019 Lifeline issues were linked at all and thus that there might be some sort of "general" problem tied back to the 2014 Lifeline issue. Plaintiffs do not allege that Sprint admitted any violation of law in the settlements with either the FCC or any state regulators, and the FCC Consent Decree specifically disclaims any violation of law. (ECF No. 56-11 at 6.) As explained above, Plaintiffs do not adequately plead that the 2014 and 2019 issues are linked at all, let alone sufficiently linked, for the General Counsel to somehow determine that there must be a broad internal control issue (and thus worthy of raising to the CEO or the Audit Committee) because of a coding error that was fixed in eight days. The Court will not find "the requisite inference of reckless conduct" where "several layers of speculative inferences are required to construe the new material as support for a finding of recklessness on the part of any Defendant."[21] *Jackson v. Avanos Med., Inc.*, No. 16-CV-05093-LTS, 2019 WL 1437517, at \*3-4 (S.D.N.Y. Mar. 31, 2019), *aff'd sub nom. Jackson v. Abernathy*, 960 F.3d 94 (2d Cir. 2020). In addition, it cannot be "virtually inconceivable" that Ms. Divelbliss did not realize the link between 2014 and 2019 Lifeline issues when the 2019 error was discovered because she left Sprint in 2018. (PSAC ¶ 104.)[22]

Moreover, the knowledge of the Sprint lawyers cannot be imputed to Sprint because Plaintiffs fail to make any "particularized allegations" identifying statements or reports provided to senior management by these employees. *See Jackson v. Abernathy*, 960 F.3d 94, 98-99 (2d Cir. 2020) (rejecting plaintiffs' attempt to impute three employees' knowledge of product issues to

---

[21] *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190 (2d Cir. 2008), does not support a finding of scienter here. In *Teamsters*, the Second Circuit rejected the district court's finding of scienter based on motive and opportunity and also rejected other inferences of scienter, including inferences of recklessness based on information received from lower level employees. *Id*. at 192, 194-97.

[22] Plaintiffs allege that knowledge of the Lifeline issues "at the high levels of Sprint's legal department" combined with the magnitude and duration of the issues, "is enough to hold Sprint liable for securities fraud." (ECF No. 74 at 10.) But Plaintiffs made the same conclusory allegation in the Amended Complaint. (*See* AC ¶¶ 25, 89.) It has not improved with time.

corporate defendants because "while particularized allegations that senior officers ignored those employees' warnings could demonstrate that those officers acted fraudulently, [the] proposed amended complaint fails to make that showing"); *see also Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."); *Intercept Pharms.*, 2022 WL 2165621, at *2-3 (affirming denial of leave to amend because "speculative allegations concerning data that [i]ndividual [d]efendants 'must have reviewed' or were 'already aware [of]' are insufficient to carry [p]laintiffs' pleading burden"). Further, there are no allegations that any of the lawyers involved with the Lifeline issues played any role in preparing the challenged disclosures. *See Barrett v. PJT Partners Inc.*, No. 16-CV-2841 (VEC), 2017 WL 3995606, at *8 (S.D.N.Y. Sept. 8, 2017).[23]

Given Plaintiffs' continued inability to identify any facts supporting a strong inference of scienter, the PSAC's amended allegations do not move the scienter needle. *See Jackson*, 2019 WL 1437517, at *4-5 (denying leave to amend because "[the] suggested layers of inferences are insufficient to plead plausibly the scienter element of the securities fraud claim, even when the further proposed additions to the PSAC are considered").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for leave to amend.

---

[23] Plaintiffs' allegation that Sprint's hiring of outside counsel to assist with the FCC investigation in 2019 supports a compelling inference of scienter has been rejected by the courts; in fact, it is just the opposite. *See, e.g.*, *Karpov v. Insight Enters., Inc.*, No. CV 09-856-PHX-SRB, 2010 WL 4867634, at *9 (D. Ariz. Nov. 16, 2010) ("[The company] hired outside counsel and accountants to conduct an investigation. This fact weighs against concluding that the inference of scienter is at least as compelling as the inference that [the company] and its management discovered an accounting error that was perhaps the result of sloppy policies and worked to correct it."), *aff'd*, 471 F. App'x 607 (9th Cir. 2012); *see also In re Par Pharm. Sec. Litig.*, No. 06-cv-3226 (PGS), 2008 WL 2559362, at *8 n.11, *14 (D.N.J. June 24, 2008) (holding that plaintiffs failed to plead scienter where, among other things, they alleged that audit committee hired independent counsel to investigate the company's reporting).

Dated:  New York, New York
        June 29, 2022

                                    Respectfully submitted,

                                    /s/ Scott D. Musoff
                                    Scott D. Musoff
                                    Arthur R. Bookout
                                    Thania ("Athanasia") Charmani
                                    SKADDEN, ARPS, SLATE,
                                      MEAGHER & FLOM LLP
                                    One Manhattan West
                                    New York, NY 10001
                                    Phone: (212) 735-3000
                                    Fax:    (212) 735-2000
                                    scott.musoff@skadden.com
                                    art.bookout@skadden.com
                                    thania.charmani@skadden.com

                                    *Attorneys for Defendants*