# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISAAC SOLOMON and FRANCINE CANION, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br><br>SPRINT CORPORATION, MICHEL COMBES, ANDREW DAVIES, MARCELO CLAURE and TAREK ROBBIATI<br><br>　　　　　　　　Defendants. | **Civil Action No. 1:19-cv-05272-MKV** |

## REPLY IN SUPPORT OF
## PLAINTIFFS' MOTION FOR LEAVE TO FILE THE
## <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION .........................................................................................................................1

   I.    ARGUMENT ......................................................................................................................2

          A.  Claims of Delay and Prejudice Are Baseless..........................................................2

          B.  Defendants Fail To Show A More Compelling Inference Of Innocence ................4

  II.    CONCLUSION.................................................................................................................10

**Cases**

*Acticon AG v. China N.E. Petroleum Holdings Ltd.*,
    615 F. App'x 44 (2d Cir. 2015) ...............................................................................................4

*Ap-Fonden v. Goldman Sachs Grp., Inc.*,
    No. 18-CV-12084 (VSB), 2021 U.S. Dist. LEXIS 120905
    (S.D.N.Y. June 28, 2021)...............................................................................................6, 10

*Barrett v. PJT Partners, Inc.*,
    No. 16-CV-2841 (VEC), 2017 U.S. Dist. LEXIS 145781 (S.D.N.Y. Sep. 8, 2017) .................9

*Barron v. Helbiz, Inc.*,
    No. 21-278, 2021 U.S. App. LEXIS 29745 (2d Cir. Oct. 4, 2021) ...........................................3

*Bay Harbour Mgmt. LLC v. Carothers*,
    474 F. Supp. 2d 501 (S.D.N.Y. 2007) ...................................................................................3

*Berman v. Morgan Keegan & Co.*,
    No. 10 Civ. 5866 (PKC), 2011 U.S. Dist. LEXIS 60874 (S.D.N.Y. June 3,
    2011) ........................................................................................................................................3

*Berman v. Parco*,
    986 F. Supp. 195 (S.D.N.Y. 1997) ...........................................................................................4

*Christine Asia Co. v. Yun Ma*,
    718 F. App'x 20 (2d Cir. 2017) ................................................................................................7

*Cohen v. Kitov Pharm. Holdings, Ltd.*,
    17-cv-0917, 2018 U.S. Dist. LEXIS 45676 (S.D.N.Y. Mar. 20, 2018)....................................5

*Decastro v. City of N.Y.*,
    No. 16-CV-3850 (RA), 2020 U.S. Dist. LEXIS 153037 (S.D.N.Y. Aug. 24,
    2020) ........................................................................................................................................3

*Evans v. Syracuse City Sch. Dist.*,
    704 F.2d 44 (2d Cir. 1983)........................................................................................................3

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ....................................................................................................8

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016).........................................................................................................6

*In re CIL Ltd.*,
  Nos. 13-11272-JLG, 14-02442-JLG, 2018 Bankr. LEXIS 1770 (Bankr.
  S.D.N.Y. June 15, 2018) ....................................................................................................3

*In re Fed Ex Corp. Sec. Litig.*,
  517 F. Supp. 3d 216 (S.D.N.Y. 2021) .............................................................................10

*In re Rockwell Med., Inc. Sec. Litig.*,
  No. 16 Civ 1691 (RJS), 2018 U.S. Dist. LEXIS 56897 (S.D.N.Y. Mar. 30,
  2018) .................................................................................................................................10

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001)..............................................................................................6, 9

*In re Veon Ltd. Sec. Litig.*,
  No. 15-CV-08672 (ALC), 2018 U.S. Dist. LEXIS 148272 (S.D.N.Y. Aug. 30,
  2018) .................................................................................................................................10

*In re Volkswagen "Clean Diesel" Mktg.*,
  328 F. Supp. 3d 963 (N.D. Cal. 2018) ...............................................................................8

*Iowa Pub. Employees' Ret. Sys. v. MF Glob., Ltd.*,
  620 F.3d 137 (2d Cir. 2010)................................................................................................6

*Iwa Forest Indus. Pension Plan v. Textron Inc.*,
  14 F.4th 141 (2d Cir. 2021) ................................................................................................4

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020)..................................................................................................9

*Kiarie v. Dumbstruck, Inc.*,
  473 F. Supp. 3d 350 (S.D.N.Y. 2020) ................................................................................3

*Klinkowitz v. Jam. Hosp. Med. Ctr.*,
  No. 20-CV-4440-EK-SJB, 2022 U.S. Dist. LEXIS 49594 (E.D.N.Y. Mar. 17,
  2022) ...................................................................................................................................3

*Lacher v. Comm'r of Internal Revenue*,
  32 F. App'x 600 (2d Cir. 2002) ..........................................................................................3

*Lea v. TAL Educ. Grp.*,
  837 F. App'x 20 (2d Cir. 2020) .....................................................................................4, 10

*Liu v. Intercept Pharm., Inc.*,
  No. 20-3488, 2022 U.S. App. LEXIS 16659 (2d Cir. June 16, 2022)...................................3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)...................................................................................3

*Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*,
  576 F.3d 172 (4th Cir. 2009) ..............................................................................6, 8

*McCulloch v. Town of Milan*,
  No. 07 Civ. 9780 (LAP) (RLE), 2009 U.S. Dist. LEXIS 96121 (S.D.N.Y. Oct.
  14, 2009) .............................................................................................................3

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)...................................................................................6

*Oaktree Principal Fund V, L.P. v. Warburg Pincus LLC*,
  No. CV 15-8574 PSG (MRWx), 2018 U.S. Dist. LEXIS 227458 (C.D. Cal.
  Aug. 29, 2018) ....................................................................................................8

*Oneida Indian Nation v. Cty. of Oneida*,
  199 F.R.D. 61 (N.D.N.Y. 2000)..............................................................................4

*Park B. Smith, Inc. v. CHF Indus.*,
  811 F. Supp. 2d 766 (S.D.N.Y. 2011) .....................................................................3

*Priestley v. Am. Airlines, Inc.*,
  No. 89 Civ. 8265 (JMC), 1991 U.S. Dist. LEXIS 4804 (S.D.N.Y. Apr. 12,
  1991) ....................................................................................................................4

*Richardson Greenshields Secur., Inc. v. Mui-Hin Lau*,
  825 F.2d 647 (2d Cir. 1987)....................................................................................3

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010).................................................................................6, 8

*Sudunagunta v. Nantkwest, Inc.*,
  No. CV 16-1947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228534 (C.D. Cal.
  Sep. 20, 2017) ....................................................................................................10

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
  531 F.3d 190 (2d Cir. 2008)....................................................................................9

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) .................................................................10

*Verizon N.Y., Inc. v. Glob. Naps, Inc.*,
  No. 1:03-cv-05073-ENV-RML, 2007 U.S. Dist. LEXIS 95714 (E.D.N.Y. July
  19, 2007) ..............................................................................................................4

**Rules**

Fed. R. Civ. P. 9(b) ..............................................................................................................6

**Statutes**

Oregon False Claims Act, 180.755 .....................................................................................5, 6

Oregon Public Records and Meetings Law, 192.345 ..........................................................2, 3

Private Securities Litigation Reform Act............................................................................6

Sarbanes-Oxley Act ..........................................................................................................1, 5

Plaintiffs respectfully submit this Reply in support of their Motion For Leave to File the SAC.[1]

## INTRODUCTION

Defendants' claims of delay and undue prejudice rest on unfounded assumptions and are without merit. The new documents cited in the SAC were not "available" when the Amended Complaint was filed because there were ongoing regulatory investigations into Sprint's misconduct, and regulators do not share such documents during the pendency of an investigation. Other crucial documents cited in the SAC such as the settlement agreements with the States of California and Oregon became available nearly a year after the Amended Complaint was filed. Not one case Defendants cite supports a departure from the rule that leave to amend should be granted with extreme liberality in securities fraud actions.

Defendants' scienter analysis is also fatally flawed. Defendants ignore crucial facts that corroborate Plaintiffs' theory and undermine their arguments. For example, Defendants admitted to the Public Utilities Commission of the State of California ("PUCC") that the primary cause of the problem was a persistent failure to maintain adequate General IT Controls within the scope of a SOX 404 assessment to ensure proper monitoring of usage and compliance with federal and State laws. This is the connective tissue between the taking of illegal subsidies in 2014-2015 and 2017-2019. Defendants' decision to disregard this damaging information in their analysis of competing inferences interferes with the Court's ability to conduct a holistic analysis of the SAC pursuant to Supreme Court and Second Circuit precedent. Similarly, Defendants attempt to justify making false statements in August 2019—even though a senior lawyer at Sprint told OPUC that the

---

[1] Paragraph ("¶_") references are to the proposed SAC. Internal quotation marks and citations are omitted, and emphases are added unless otherwise noted throughout this brief. Capitalized terms have the same meaning as those in the SAC and Plaintiffs' Motion for Leave to file the SAC unless otherwise defined herein.

primary cause had not only been identified but *fixed* no later than July 2019—based on the unsupported assumption that additional time was required to assess the impact on Sprint's financial statements. Even if the Court considered this question of fact at the pleading stage, which it should not, this is not a valid excuse for making affirmative misrepresentations. Without extraordinary effort, Defendants could, but chose not to, warn investors that there was a potential deficiency in internal controls because the Company had taken illegal subsidies. Defendants' decision to omit these facts and make affirmative misrepresentations instead is sufficient to state a claim for securities fraud.

Defendants' remaining arguments are weak and unpersuasive for the reasons fully explained below. As such, Plaintiffs respectfully request the Court to grant the motion because Defendants fail to offer a more compelling inference of innocence to seek premature dismissal.

## I. ARGUMENT

### A. Claims of Delay and Prejudice Are Baseless

Defendants' charge of delay ignores the fact that Plaintiffs were denied access to documents Defendants claim were "available" based on what the FCC told Plaintiffs was an ongoing investigation. The Oregon AG's Office has similarly told Plaintiffs that the documents it produced to Plaintiffs in May 2022 would be subject to an exemption from disclosure for ongoing investigations under the Oregon Public Records and Meetings Law. ORS 192.345(1).

Plaintiffs never "concede[d]" that they "only decided" after the dismissal "to send public record requests." Opp. at 5. Plaintiffs sent document requests to the FCC before the Amended Complaint was filed, which were denied because its investigation was ongoing. Regulators do not discuss pending investigations publicly nor produce documents to a third party like Plaintiffs. Oregon's Public Records Law similarly exempts from disclosure documents related to an ongoing law enforcement investigation, and the AG's recent production would be subject to the exemption

2

before Sprint settled the claims.  ORS 192.345(1).  Even now, regulators in California are withholding documents from Plaintiffs, and a Sprint lawyer has obstructed Plaintiffs' investigation into its settlement of claims associated with Lifeline subscribers in Texas.

Regardless, assertions of delay alone are wholly insufficient to oppose an amendment without ***undue*** prejudice, and none of Defendants' cited cases support their arguments. A determination of futility was not made when the Lifeline claims were dismissed.  *Compare Liu v. Intercept Pharm., Inc.*, No. 20-3488, 2022 U.S. App. LEXIS 16659, at *9-10 (2d Cir. June 16, 2022) (affirming dismissal when a proper finding of futility was made below) *with Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015) (expressing consternation at outright refusal not because of the exchange of pre-motion letters, but because a futility analysis was "skirted," and because a bare dismissal on scienter grounds is usually subject to "***reasonable dispute***")[2] and *with Richardson Greenshields Secur., Inc. v. Mui-Hin Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where plaintiffs were aware of facts ***years*** before an amended complaint was filed).  Undue prejudice existed in each one of Defendants' cases.[3]

---

[2] Defendants' misinterpretation of *Wells Fargo Sec., LLC*, 797 F.3d at 191 contradicts how courts in the District have read the case.  *Compare* Opp. at 12 *with In re CIL Ltd.*, Nos. 13-11272-JLG, 14-02442-JLG, 2018 Bankr. LEXIS 1770, at *29-30 (Bankr. S.D.N.Y. June 15, 2018) (rejecting the same misinterpretation of Second Circuit precedent). Defendants also fail to distinguish *Barron v. Helbiz, Inc.*, No. 21-278, 2021 U.S. App. LEXIS 29745, at *9 (2d Cir. Oct. 4, 2021).  The "availabil[ity]" of facts is a figment of Defendants' imagination, Opp. at 12, and Defendants say nothing about the Second Circuit's skepticism of dismissals without leave to amend or its holding that requests cannot be denied based on form alone.  *Helbiz, Inc.*, 2021 U.S. App. LEXIS 29745, at *9.

[3] *See Lacher v. Comm'r Of Internal Revenue*, 32 F. App'x 600, 603 (2d Cir. 2002) (motion filed after trial had ended); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (motion brought six days before trial); *Klinkowitz v. Jam. Hosp. Med. Ctr.*, No. 20-CV-4440-EK-SJB, 2022 U.S. Dist. LEXIS 49594, at *5-6, 10-11 (E.D.N.Y. Mar. 17, 2022) (motion filed eight months after the Rule 16 deadline to amend was blown, and after the deadline to complete fact discovery); *Decastro v. City of N.Y.*, No. 16-CV-3850 (RA), 2020 U.S. Dist. LEXIS 153037, at *15-19 (S.D.N.Y. Aug. 24, 2020) (similar and applying Rule 16's onerous good cause standard); *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 359-60 (S.D.N.Y. 2020) (motion filed after the close of discovery); *Park B. Smith, Inc. v. CHF Indus.*, 811 F. Supp. 2d 766, 779-81 (S.D.N.Y. 2011) (motion filed after completion of summary judgment briefing and discovery was nearly complete); *Berman v. Morgan Keegan & Co.*, No. 10 Civ. 5866 (PKC), 2011 U.S. Dist. LEXIS 60874, at *7-9 (S.D.N.Y. June 3, 2011) (denial based on exacting standard to vacate judgment before moving to amend); *McCulloch v. Town of Milan*, No. 07 Civ. 9780 (LAP) (RLE), 2009 U.S. Dist. LEXIS 96121, at *2-3 (S.D.N.Y. Oct. 14, 2009) (motion filed four days before end of fact discovery); *Bay Harbour Mgmt. LLC v. Carothers*, 474 F. Supp. 2d 501, 504-05 (S.D.N.Y. 2007) (leave to amend denied in the interests of justice because sole witness

Equally meritless is Defendants' claim that they will be prejudiced simply by defending additional claims in this lawsuit. Opp. at 13-14. A case Defendants cite rejected this excuse as grossly off the mark. *See Oneida Indian Nation v. Cty. of Oneida*, 199 F.R.D. 61, 77-79 (N.D.N.Y. 2000) (ruling that burdens associated with the addition of new parties, additional motion practice and discovery amounted to "grasping at straws" because additional time, effort and money does not constitute undue prejudice). The only parties that would be prejudiced are Plaintiffs and the Class who, if amendment is denied, would have no avenue to redress Defendants' securities law violations that resulted in additional losses.

**B.** **Defendants Fail To Show A More Compelling Inference Of Innocence**

Even a tie between a plaintiff and a defendant with respect to the inferences of scienter supports the plaintiff at the pleading stage, and a defendant must proffer facts that establish a ***more*** compelling inference of innocence to prevail. *See, e.g.*, *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 24-25 (2d Cir. 2020). Defendants have not proffered sufficient facts here. Moreover, competing inferences must be rationally drawn from the facts alleged in the SAC, not from Defendants' denials, counterfactuals or hypothetical theories. *Compare* Opp. at 8 n.5, 17 n.11, 18 n.12, 20 n.13 & n.14, 23 *with Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 615 F. App'x 44, 46 (2d Cir. 2015) (noting that courts can weigh only those competing inferences that are rationally drawn from the facts pled in the complaint) and *with Iwa Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 147 (2d Cir. 2021) (reversing dismissal and holding that courts cannot make assumptions that are inconsistent with a securities fraud complaint or demand that plaintiffs provide superior

---

that formed the only basis for amendment recanted under penalty of perjury); *Verizon N.Y., Inc. v. Glob. Naps, Inc.*, No. 1:03-cv-05073-ENV-RML, 2007 U.S. Dist. LEXIS 95714, at *12-17 (E.D.N.Y. July 19, 2007) (motion brought by party to forum-shop and after discovery had "essentially concluded"); *Berman v. Parco*, 986 F. Supp. 195, 201 (S.D.N.Y. 1997) (similar); *Priestley v. Am. Airlines, Inc.*, No. 89 Civ. 8265 (JMC), 1991 U.S. Dist. LEXIS 4804, at *4-6 (S.D.N.Y. Apr. 12, 1991) (similar and trial was imminent).

theories instead of reasonable ones at the pleading stage); *see also Cohen v. Kitov Pharm. Holdings, Ltd.*, 17-cv-0917, 2018 U.S. Dist. LEXIS 45676, at *14-15 (S.D.N.Y. Mar. 20, 2018) (denying the allegations and vehemently insisting on one's own version of the facts cannot support dismissal).

It is clear from the Order that Defendants successfully sowed confusion with claims that Sprint took illegal subsidies in 2014 because of an irrelevant "technical failure," ECF No. 43 at 27. *Compare also* Order at 19-20 *with* ECF No. 60 at 22 (claiming that "coding error is systemic means it was in the systems."). The SAC debunks Defendants' previous representations with actual quotations from the email exchange, which prove Plaintiffs' interpretation is correct. ¶¶105-07.

Defendants also ignore the fundamental rule that all allegations must be considered holistically when they ask this Court to only consider the emails exchanged between OPUC and the FCC in 2019 in isolation. Opp. at 16-18. Defendants would have this Court disregard the investigative findings of the PUCC proffered in the SAC where Sprint admitted to the PUCC that it repeatedly took illegal subsidies for years because of a persistent failure to meet the requirements of General IT Controls within the scope of a SOX 404 assessment. ¶¶134-36. In addition, Sprint's Consent Decree with the FCC is not limited to "coding errors," "technical failures" or "systems." ¶¶131-32. The SAC also alleges that Sprint agreed to settle claims with Oregon for "systematically" taking illegal subsidies in violation of the Oregon False Claims Act. ¶137; ORS 180.755. Sprint's admission to the PUCC and the expansive nature of its settlements with the FCC and Oregon demonstrate that the taking of illegal subsidies in 2014-2015 and 2017-2019 were symptoms of the same problem. As such, Defendants' attempt to minimize the issue by distinguishing the taking of illegal subsidies between ineligible text messages and ineligible voice

messages violates the rule to consider allegations of scienter holistically, not individually, which requires consideration of all the evidence in the aggregate. Opp. at 16-18. *See Novak v. Kasaks*, 216 F.3d 300, 312-13 (2d Cir. 2000) (holding that admissions made after the end of the class period powerfully supported scienter); *Iowa Pub. Employees' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 143 n.13 (2d Cir. 2010) (reversing dismissal and holding that an ultimate acknowledgment of the problem can support that it existed earlier depending on the circumstances).[4]

As for the correspondence between the FCC and OPUC in September 2019, Defendants offer no competing inference concerning why the FCC would ask about the illegal conduct in 2014-2015, nine months after it started an investigation into whether Sprint had submitted duplicative claims, particularly when the Consent Decree targets a broad set of misconduct on its face. ¶¶116, 131-32. Plaintiffs are not required to produce additional evidence of the FCC's or the PUCC's views to support their reasonable inferences in the SAC. *Compare* Opp. at 17 & n.11 *with Ap-Fonden v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2021 U.S. Dist. LEXIS 120905, at *37-38 (S.D.N.Y. June 28, 2021) (rejecting similar tactics and emphasizing that the PSLRA and Rule 9(b) do not require plaintiffs to plead details, so long as the complaint gives fair notice of the claims and grounds upon which they are based). Plaintiffs did not "concede" that Sprint's alleged "coding error" first occurred in 2017. Opp. at 17. Defendants' quotation does not

---

[4] For these reasons, Defendants' attempt to distinguish *In Re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) and similar decisions also fails. Opp. at 16 n.10. Sprint **did not** disclose the taking of illegal subsidies in 2014 to **investors**—the WSJ did—and illegal subsidies were taken because of a persistent failure to comply with basic requirements of General IT Controls to monitor usage and ensure compliance with the law **both** between 2014-2015 and 2017-2019. Defendants continue to press the misleading claim that Sprint "self-disclosed" the internal control deficiencies. Opp. at 20. Sprint was **caught** taking illegal subsidies by OPUC before it met with the FCC in August 2019, *compare* ¶¶21-22 *with* ECF No. 52-2 at 8 (¶12), and Sprint's **admissions** of material weaknesses in internal controls were made in November 2019 after the FCC exposed its misconduct in September 2019. ¶¶128, 205. For this reason, Defendants' reliance on *Slayton v. Am. Express Co.*, 604 F.3d 758 (2d Cir. 2010) and *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172 (4th Cir. 2009) is utterly misplaced. Opp. at 20. Defendants' attempt to minimize Sprint's settlement with Oregon also fails. Opp. at 20 n.14. Materiality is irrelevant at the pleading stage, the Oregon False Claims Act requires scienter, ORS 180.755, and this qualitative factor would defeat Defendants' arguments at any stage of the proceedings. *See Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 96 (2d Cir. 2016) (rejecting identical arguments).

appear in the Amended Complaint. Opp. at 17, ECF No. 29 at ¶¶25, 89. The SAC also alleges that Sprint's attempt to blame the FCC for again taking illegal subsidies in 2017 was misleading because the law always disallowed subsidies for the receipt of text messages and voice messages. ¶130. It is also "[un]reasonable" to assume that Sprint "cured" the deficiencies in 2014-2015 when it admitted to the PUCC that the root cause was a persistent failure to maintain General IT Controls that ensured compliance with FCC rules. Opp. at 18 n.12.

The problems do not stop there. Defendants fail to distinguish *Christine Asia Co. v. Yun Ma*, 718 F. App'x 20, 23-24 (2d Cir. 2017). The idea that senior lawyers at Sprint would repeatedly admit to regulators that the Company had engaged in illegal conduct, but not report that information to Sprint's General Counsel or the Individual Defendants is absurd given that Sprint has paid over half a billion dollars to date. In fact, the inference of scienter was found sufficient in *Yun Ma* based on the seniority of the company's insiders and the ***potential*** impact of regulatory threats. *Id.* Here, the impact was not merely "potential" because both Divelbliss and Schifman admitted to OPUC that subsidies were taken in violation of federal and State laws. ¶¶107-09, 114-15. Divelbliss served as the General Counsel of Lifeline recipient Virgin Mobile from August 2016 to September 2018. ¶¶104, 118. There is no factual basis proffered to support Defendants' claim that she did not interact with Sprint's General Counsel. Opp. at 8 n.5.

Defendants mischaracterize the SAC with respect to the allegations regarding Schifman's communications with the Oregon AG's Office. Contrary to Defendants' mischaracterization, OPUC did not first reach out to Sprint on July 8, 2019. Opp. at 19. OPUC launched an investigation in the beginning of 2019 and alerted Sprint to the issue with data requests before the pivotal meeting in July 2019. ¶¶110-11. Schifman told the Oregon AG's Office that the primary cause of the internal control deficiencies was fixed on July 16, 2019. ¶115. Defendants allege that

they needed additional time to assess the impact on Sprint's financial statements. Such a response is a quintessential question of fact that cannot be resolved at this stage. Opp. at 19. Sprint illegally took subsidies from the Lifeline program for years in Oregon and other States. Sprint may not have known the full amount, but it was aware that there was a material risk of misstatements in its financial statements. At a minimum, Sprint should have advised investors when it spoke in August 2019 that there was a known risk of misstatements.

Defendant's reliance on *Slayton* is misplaced. There, the Second Circuit applied the safe harbor's actual knowledge prong, not the recklessness standard, and the defendants launched an investigation after making false statements. 604 F.3d at 776 n.9, 777.[5] Defendants' reliance on *BearingPoint, Inc.* is also misplaced where, unlike here, defendants updated their SEC filings with specific warnings about potential internal control deficiencies associated with the specific problem plaintiffs complained about. 576 F.3d at 188-90. Here, Defendants could have similarly told investors that potential internal control deficiencies existed because the Company took illegal Lifeline subsidies without extraordinary effort even assuming they needed additional time to quantify the impact. *Id.* Instead, Defendants chose to file false financial statements and made affirmative misrepresentations about the controls in August 2019. ¶¶196-99.

There is a strong inference that Gracia knew about these facts before August 2019 because Sprint's outside counsel was in communication with the FCC about the investigation in July 2019.

---

[5] *Higginbotham v. Baxter Int'l, Inc.* is similarly distinguishable because defendants there only learned about a potential problem in the same month that false statements were made, and the Seventh Circuit noted that the outcome would be different if defendants made affirmative misrepresentations. 495 F.3d 753, 758-61 (7th Cir. 2007). *See also Oaktree Principal Fund V, L.P. v. Warburg Pincus LLC*, No. CV 15-8574 PSG (MRWx), 2018 U.S. Dist. LEXIS 227458, at *48-49 (C.D. Cal. Aug. 29, 2018) (distinguishing *Higginbotham* where, like here, defendants conceded the existence of problems to third parties but not investors, and ruling that the amount of time required to make necessary corrections is a question of fact); *In re Volkswagen "Clean Diesel" Mktg.*, 328 F. Supp. 3d 963, 980-81 (N.D. Cal. 2018) (declining to adopt *Higginbotham* where, like here, defendants were "caught" engaging in illegal conduct before making admissions).

¶133.[6] Defendants do not dispute that Sprint's in-house lawyers were responsible for reviewing Sprint's SEC filings to ensure that they did not contain misleading statements or omissions. ¶118. These undisputed facts undermine Defendants' argument that knowledge of Sprint's lawyers cannot be imputed to Sprint. *See Barrett v. PJT Partners, Inc.*, No. 16-CV-2841 (VEC), 2017 U.S. Dist. LEXIS 145781, at *22 (S.D.N.Y. Sep. 8, 2017) (ruling that knowledge of junior officers can be imputed to the corporation "if they had direct involvement in the aspect of the business at issue or the company's disclosure functions."). These facts are sufficient to plead scienter. *See, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008) (holding that liability for a securities fraud claim can attach based on the conduct of senior executives who are not expressly named in the complaint).[7]

Defendants' arguments are equally weak and unpersuasive with respect to Sprint's admitted violations of express policy, the reporting structure at the Company, the Individual Defendants' roles and expertise, and the Representations and Warranties made in the Merger Agreement. In *In Re Scholastic Corp. Sec. Litig.*, the Second Circuit held that violations of express internal policies "can form the basis for proof of recklessness." 252 F.3d at 76-77. Contrary to Defendants' claim, it did not hold that the violations must be intentional. Opp. at 21 n.17. Defendants further disregard the Second Circuit's holding that a defendant's job responsibilities and role can support an inference of scienter in combination with other facts. *TAL Educ. Grp.*,

---

[6] Defendants misconstrue the SAC. Opp. at 25 n.23. Plaintiffs do not allege that the mere hiring of outside counsel is indicative of scienter. Rather, Plaintiffs rely on outside counsel's communications with the FCC before the false statements were made in August 2019 to infer what Gracia would have known. For this reason, the cases Defendants rely on in footnote 23 do not help them.

[7] Defendants fail to distinguish *Dynex Capital* because the Second Circuit clearly held there that corporate scienter can be imputed based on a non-defendant's actions and knowledge, and the SAC is also "replete," Opp. at 20 n.13, with other facts to support an inference of recklessness. Opp. at 24 n.21. Defendants' reliance on *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) is inappropriate. Opp. at 24-25. In *Jackson*, the plaintiffs incorrectly relied on whistleblowers from the company to impute scienter who had no intent to deceive themselves, and there were no allegations to support a reasonable belief that the whistleblowers told defendants about the issues.

9

837 F. App'x at 27. It is undisputed that CFOs Robbiati and Davies held themselves out as experts on internal controls, ¶119, and that Gracia and all four Individual Defendants regularly provided the Board of Directors with updates on legal issues that could impact Sprint's financial statements or any material weaknesses in internal controls respectively. ¶¶120-22.[8]

Indeed, it is undisputed that Claure signed a Merger Agreement guaranteeing that all necessary information to assess the Company's internal controls were provided to both the CEO and CFO. ¶¶123-26. Defendants' only response to this is that Plaintiffs do not allege what Claure was specifically told about the illegal subsidies when he signed the Merger Agreement. Plaintiffs, however, are not required to plead such evidence at the pleading stage. *See Ap-Fonden*, 545 F. Supp. 3d at 144-45 (rejecting similar strategy because a plaintiff is not required to plead a smoking gun to state plausible claims). That T-Mobile did not accuse Sprint of breaching the Merger Agreement is of no moment. Opp. at 21 n.15. T-Mobile completed its merger with Sprint before the Court found that Plaintiffs adequately pled misrepresentations in Sprint's financial statements in March 2022—that analysis supports a breach of the Merger Agreement even if T-Mobile has no incentive to enforce its rights anymore.

## II. CONCLUSION

For all of these reasons, Plaintiffs respectfully request the Court to grant the motion for leave to file the SAC and order the Defendants to file an Answer.

---

[8] *In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 237-38 (S.D.N.Y. 2021), *In re Veon Ltd. Sec. Litig.*, No. 15-CV-08672 (ALC), 2018 U.S. Dist. LEXIS 148272, at *44-54 (S.D.N.Y. Aug. 30, 2018), and *In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ 1691 (RJS), 2018 U.S. Dist. LEXIS 56897, at *38-39 (S.D.N.Y. Mar. 30, 2018) do not help Defendants. Plaintiffs do not rely on Defendants' positions ***alone*** to plead scienter, and Plaintiffs' other allegations are not deficient to demonstrate recklessness. Defendants also fail to distinguish *Sudunagunta v. Nantkwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228534, at *39 (C.D. Cal. Sep. 20, 2017) and *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1043-44 (N.D. Cal. 2016). Opp. at 22-23 n.19. There was no smoking gun evidence in *Nantkwest* concerning the Audit Committee's review of the warrants at issue, and Defendants' assertion that paying over half a billion dollars in settlements, $368 million of which the FCC determined to be from improperly received subsidies, ¶137, and fines for illegal misconduct is not material strains credulity. *Id.*

10

Dated: July 5, 2022

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Omar Jafri*

Patrick V. Dahlstrom
Omar Jafri
Brian P. O'Connell
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com
ojafri@pomlaw.com
boconnell@pomalaw.com

*Lead Counsel for Plaintiffs*