SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE MANHATTAN WEST
NEW YORK, NY 10001

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-7852
DIRECT FAX
917-777-7852
EMAIL ADDRESS
SCOTT.MUSOFF@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

July 7, 2022

**VIA ECF**
The Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

RE: *Solomon v. Sprint Corp., et al.*, No. 19-cv-05272 (MKV)

Dear Judge Vyskocil:

We represent defendants Sprint Corporation, Michel Combes, Andrew Davies, Marcelo Claure, and Tarek Robbiati ("Defendants") in the above-referenced action. We write in connection with Plaintiffs' Motion for Leave to File a Second Amended Complaint (the "Motion to Amend," ECF No. 73), to respectfully request leave to submit a short sur-reply to address two new issues raised by Plaintiffs for the first time in their Reply in Support of Plaintiffs' Motion for Leave to File the Second Amended Class Action Complaint (the "Reply Brief" or "RB," ECF No. 76).

As Plaintiffs have previously acknowledged, "Courts grant leave to file sur-replies when they address arguments raised for the first time in a reply brief." *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (AT), 2022 WL 329211, at *3 (S.D.N.Y. Feb. 3, 2022) (granting sur-reply "because the sur-reply is directed to arguments the SEC raise[d] for the first time in its reply"); *Stepski v. M/V Norasia Alya*, No. 7:06-cv-01694, 2010 WL 11526765, at *1 (S.D.N.Y. Mar. 3, 2010) (similar). (*See also*

ECF No. 52 at 2 (plaintiffs acknowledging same).)[1] Here, Plaintiffs raised two new arguments in the Reply Brief.

**1. <u>Plaintiffs' New Delay Excuse Does Not Excuse Their Delay.</u>**

Plaintiffs now seek to excuse their delay by asserting for the first time they sent document requests to the FCC before filing the Amended Complaint, but those requests were denied because the FCC's investigation was ongoing. (RB at 2.) This does not excuse Plaintiffs' delay here for at least two reasons:

*First*, Plaintiffs do not argue that they submitted public records requests to Oregon or any other regulator before the filing of the Amended Complaint. Yet, the only documents from public regulators cited in the proposed Second Amended Complaint (the "PSAC") that were not otherwise publicly available are emails with Oregon officials. (*See* ECF No. 74-1 (the "PSAC") ¶¶ 20-23, 102-103, 105-116.) Also, Plaintiffs were not obligated to commence this action or file an Amended Complaint before they had enough facts to sustain a claim (and it is significant that no other stockholder even sought to be lead plaintiff other than the individuals here).

*Second,* even if Plaintiffs have been or would have been denied access to records for any ongoing investigation, they concede that the investigations to which they cite concluded in November 2020 (FCC), April 2021 (California) and May 2021 (Oregon). (*Id.* ¶¶ 131, 134, 137.) Plaintiffs fail to explain why they did not pursue public records from the FCC again (or from state regulators at all) until after the Court dismissed their Lifeline claims on March 25, 2022. (ECF No. 62.) Plaintiffs also do not explain why they did not even (i) seek leave to amend in connection with opposing the motion to dismiss; (ii) inform the Court of the prior request to the FCC for records; or (iii) submit a proposed amended pleading prior to the Court's ruling, which was *ten months* after the final cited investigation concluded. Indeed, Plaintiffs allege in both the Amended Complaint and the PSAC that the 2019 Lifeline issue was not disclosed for the first time until September 2019, and Plaintiffs allege that Sprint did not make any corrective disclosure until November 4, 2019. (ECF No. 29 ¶¶ 19-21; PSAC ¶¶ 29-31.) Thus, under Plaintiffs' own theory, they could have waited another year or more for further facts to develop. *See* 28 U.S.C. § 1658(b) (two year statute of limitations for Exchange Act claims). Instead, Plaintiffs made the strategic decision to rush into Court in July 2020 with their Lifeline claims and seek Lead Plaintiff status. That strategic decision has consequences, and the Court

---

[1] Alternatively, the Court could choose not to consider Plaintiffs' new arguments. *See, e.g.*, *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018) ("It is well established, of course, that arguments first raised in reply briefs are forfeited or waived.").

can deny the Motion to Amend accordingly. *See Verizon N.Y. Inc. v. Glob. NAPS, Inc.*, No. 1:03-cv-05073-ENV-RML, 2007 WL 9706459, at *3 (E.D.N.Y. July 20, 2007) (denying leave to amend where plaintiff's "cho[ice]," "[f]or whatever reason," to not include the proposed amended allegations in the initial complaint, "was a strategic choice of [plaintiff]'s at the time that cannot simply be undone after th[e] litigation ha[d] been pending for almost four years") (previously cited by Defendants at ECF No. 75 ("Answering Brief" or "AB") at 11).

**2. <u>Plaintiffs' New Assertion That Sprint Made an Admission to California is False.</u>**

Plaintiffs assert in the Reply Brief that "Defendants admitted to the Public Utilities Commission of the State of California ('PUCC') that the primary cause of the [2019 Lifeline] problem was a persistent failure to maintain adequate General IT Controls within the scope of a SOX 404 assessment to ensure proper monitoring of usage and compliance with federal and State laws" and that "[t]his is the connective tissue between the taking of illegal subsidies in 2014-2015 and 2017-2019." (RB at 1.) Plaintiffs cite to paragraphs 134 through 136 of the PSAC as purported support for this new claim (RB at 5), but those paragraphs do not allege that Sprint admitted to any violation.

Plaintiffs cite to a "resolution" adopted by PUCC in April 2021 (PSAC ¶¶ 134-135), but neither the resolution nor the attachments incorporated into the resolution state that Sprint made any such admission, as the Court can read for itself. We attach the PUCC resolution and settlement agreement attachment, cited in the PSAC, to this letter as Exhibit A.[2]

The PUCC resolution does not contain any admission of any violation of state or federal regulations. To the contrary, the PUCC acknowledged in the Settlement Agreement that Sprint "d[id] not admit liability." (Ex. A, Settlement Agreement § II.A.) The resolution states that Sprint only admitted that its own policies were violated by the 2019 Lifeline issue and that the relevant federal regulation "does not make a distinction between calls answered personally or by voicemail." (*Id*. at 5.) The PUCC noted as a "mitigating factor" that it had not

---

[2] Both the resolution and settlement agreement are on the PUCC website. The resolution links to the settlement agreement and other attachments, and can be found at https://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M378/K247/378247393.docx. The Court may consider "'any statements or documents incorporated in [the complaint] by reference,' as well as any documents not so incorporated but nevertheless 'integral' to the complaint." *Yung v. Lee*, 160 F. App'x 37, 41 (2d Cir. 2005) (alterations in original; citations omitted).

updated its own regulations. (*Id.* at 7.) The PUCC also found as mitigating factors, among other things, that Sprint self-reported and was responsive to California's data requests, took prompt and decisive action, and "provided evidence showing the coding error was a result of inadvertent human error" in 2017 (*id.* at 5, 7) – hardly "the connective tissue" to 2014 (*supra* at 3). Notably absent from the resolution or the settlement agreement is *any statement* referencing the 2014 Lifeline issue at all, let alone linking them.[3]

Plaintiffs cannot rehabilitate their prior deficient allegations by making claims directly contradicted by the documents they cite. *See, e.g.*, *Rubinstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 295 (S.D.N.Y. 2020) ("[T]he Court need not credit claims that are contradicted by documents incorporated in the complaint or publicly filed with the SEC."); *Wimberly v. Experian Info. Sols.*, No. 1:18-cv-6058-MKV, 2021 WL 326972, at *3 (S.D.N.Y. Feb. 1, 2021) (denying motion for leave to amend as futile and stating that "'[t]he Court's obligation to construe *pro se* submissions liberally does not require the Court to accept allegations that are contradicted by documents incorporated by reference in the complaint.'" (citation omitted)); *Hammerstone NV, Inc. v. Hoffman*, No. 09 CV 2685(HB), 2010 WL 882887, at *8 (S.D.N.Y. Mar. 10, 2010) (dismissing claim as "'pitifully short of the pleading requirements'" because it was "unsupported by factual allegations and contradicted by the very documents [plaintiffs] cite for support" (citation omitted)).

Plaintiffs also offer no explanation how this purported intentional fraud could encompass two separate years over two distinct senior management teams (*i.e.*, Messrs. Combes and Davies, as CEO and CFO, who took over from Messrs. Claure and Robbiati in May 2018 and June 2018, respectively (PSAC ¶¶ 43-46)[4]), treating this alleged fraud like a baton in a relay race across different Sprint officers.[5] As Defendants noted in their Answering Brief, the Court will not find "the requisite inference of reckless conduct" where "several layers of speculative inferences are required to construe the new material as support for a finding of recklessness on the part of any Defendant." *Jackson v. Avanos Med., Inc.*, No. 16-CV-05093-LTS, 2019

---

3 As Defendants noted in their Answering Brief, Plaintiffs do not allege that any of the "investigative findings" from the California or Oregon regulators uncovered a link between the 2014 and 2019 Lifeline issues. (AB at 17 n.11 (citing PSAC ¶¶ 24, 134).)

4 Mr. Combes was CFO briefly in early 2018 before assuming the CEO role. (PSAC ¶ 43.)

5 The same is true of Sprint's non-party General Counsel/Chief Legal Officers, Messrs. Wunsch and Gracia. (*See* AB at 7 n.4 (citing plaintiffs' references to different "era[s]" of Sprint officers in the PSAC ¶¶ 25, 104, 113, 118).)

WL 1437517, at *3-4 (S.D.N.Y. Mar. 31, 2019), *aff'd sub nom. Jackson v. Abernathy*, 960 F.3d 94 (2d Cir. 2020) (cited at AB at 24).

If the Court grants Defendants' request to submit a sur-reply, we would respectfully request that the Court to accept this letter and Exhibit A as the sur-reply. If the Court prefers, Defendants can promptly file a brief not to exceed five pages.

Defendants contacted Plaintiffs' counsel via email this morning to ask if they would consent to Defendants' request to submit this sur-reply. Defendants have not yet received a response, but in light of the Court's indication that it would try to resolve the Motion to Amend ahead of the parties' July 21, 2022 mediation date, we wanted promptly to bring this to the Court's attention.

Respectfully submitted,

*/s/ Scott D. Musoff*

Scott D. Musoff

**Encl.**

cc: All counsel by ECF