

**Omar Jafri**
Of Counsel

July 8, 2022

<u>**VIA ECF**</u>

Hon. Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

<u>*Re: Solomon et al. v. Sprint Corporation et al., Civil Action No. 19-Civ. 05272-MKV*</u>

Dear Judge Vyskocil,

We write on behalf of Plaintiffs Isaac Solomon and Francine Cannion ("Plaintiffs") to respond to Defendants' Letter that contains a purported Sur-Reply (hereafter the "Letter").[1]  The Letter exceeds 3 pages and thus violates the Court's Individual Rules of Practice.  *See* Rule 2(B). It was also filed before the close of business yesterday without awaiting a response from Plaintiffs. Regardless, there is no basis to file a Sur-Reply.  Plaintiffs' response to Defendants' unfounded claims of delay were not "new" arguments.  *See Bonnie & Co. Fashions v. Bankers Tr. Co.*, 945 F. Supp. 693, 708 (S.D.N.Y. 1996) (ruling that a response to a new issue raised in an opposition is proper and does not entitle the non-moving party to a sur-reply).  And, the underlying issues were raised in both the SAC as well as the Motion, but were ignored by Defendants in their opposition. In fact, the phrase "General IT Controls" does not appear in Defendants' opposition.  Defendants' failure to respond to Plaintiffs' specific arguments constitutes a waiver, and Defendants are thus not entitled to file a Sur-Reply.  *See Gibson v. Suffolk Cty. Police Dep't*, No. 19-CV-03871 (JMA) (ST), 2021 U.S. Dist. LEXIS 32995, at *3-4 (E.D.N.Y. Feb. 22, 2021) (ruling that a failure to address a movant's arguments "head on" in an opposition brief constitutes a waiver).  Nor were the issues new to Sprint—the PUCC's specific findings on General IT Controls were based on what Sprint ***itself told*** the PUCC, which constitutes yet another waiver given Defendants' silence on General IT Controls in the Letter.  For all of these reasons, Plaintiffs respectfully request the Court to deny the request to file a Sur-Reply.

Even if the Court indulged Defendants' arguments in the Letter, the new assertions of delay are still without merit.  Notably, Defendants do not cure their failure to demonstrate undue prejudice and without such a showing, there are no grounds to deny leave based on claims of delay alone.  This is again demonstrated by the authorities that Defendants cite since no discovery has commenced in this Action yet.  *See Verizon N.Y., Inc. v. Glob. Naps, Inc.*, No. 1:03-cv-05073-

---

[1] Paragraph ("¶_") references are to the proposed SAC.  Internal quotation marks and citations are omitted, and emphases are added unless otherwise noted throughout this brief.  Capitalized terms have the same meaning as those in the SAC and Plaintiffs' Motion for leave ("Motion") unless otherwise defined herein.

**ojafri@pomlaw.com**

10 South LaSalle Street, Suite 3505, Chicago, IL 60603  Main: 312.377.1181  Direct: 312.881.4850
NEW YORK • CHICAGO • LOS ANGELES • PARIS • TEL AVIV
www.pomlaw.com

ENV-RML, 2007 U.S. Dist. LEXIS 95714, at *15-16 (E.D.N.Y. July 19, 2007) (finding that party would be prejudiced because discovery had "essentially concluded" on some claims unlike here where no discovery has commenced). There is still no credible claim of delay either. A description of Divelbliss's admissions in 2014 regarding a "systemic failure" was included in the Amended Complaint. ECF No. 29 at ¶89. Plaintiffs requested the underlying emails because the Court ruled that the article itself was not sufficient to support scienter. As for Schifman's admissions made to the Oregon AG's Office in 2019, those documents were exempt from disclosure under Oregon law and were not "available" as fully explained in the Motion. *See* Mot. at 16; Reply at 2-3. The remaining arguments in the Letter are without merit under Second Circuit precedent. Plaintiffs had no reason or obligation to amend before the Court's Order identified deficiencies in the Amended Complaint. *See* Mot. at 7; Reply at 2-3. Any insinuation that the statute of limitations has run or would run is also groundless. Letter at 2. The limitations period was tolled when the Amended Complaint was filed. *See, e.g.*, *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 560-61 (1974). Defendants simply want to have the last word on this issue, but the new arguments are just as unpersuasive.

Defendants' arguments in the Letter about alleged "contradictions" in the PUCC resolution or the absence of an admission about deficiencies in General IT Controls also show no ***pleading*** deficiencies in the proposed SAC, and instead only demonstrate that Defendants have an alternative view of the facts to present at trial. A "motion for leave to amend does not present an appropriate vehicle for the Court to weigh … factual disputes." *Purdue Pharma L.P. v. Ranbaxy Inc.*, 10 Civ. 3734 (SHS), 2012 U.S. Dist. LEXIS 126263, at *18 (S.D.N.Y. Sep. 5, 2012). Defendants misconstrue and misinterpret the arguments made in the Motion after taking them out of context. Neither the SAC nor the Motion state that Sprint admitted "liability." Letter at 3. The Motion's arguments are based on the ***facts*** Sprint admitted to the PUCC concerning General IT Controls, and the conclusions that can be drawn from those admitted facts after taking all allegations collectively in a light most favorable to Plaintiffs.

Still, even if the Court considered Defendants' arguments in the Letter, allegations of "contradictions" or inconsistencies fail. Below are the facts ***as alleged***, which taken collectively, support Plaintiffs' claim that Sprint's failure to maintain adequate General IT Controls within the scope of a SOX 404 assessment caused the Company to repeatedly take illegal subsidies for over five years. Defendants may dispute these well-pleaded allegations at trial. *Purdue Pharma*, 2012 U.S. Dist. LEXIS 126263, at *18.:

- On September 11, 2014, Divelbliss told OPUC that Sprint's IT platform failed to capture "***only the types of activity set forth in the FCC regulations***." ¶107.
- In 2019, Schifman made a similar admission to the Oregon AG's Office when he stated that incoming calls forwarded to voicemail were registered as "***usage***," which is like what occurred in 2014 and violated federal law and Sprint's own express policy (the last two facts are not even in dispute). ¶114-15. Defendants have repeatedly referred to this second event as a "coding error" throughout this litigation, which is a quintessential IT issue.

- In November 2019, Sprint *admitted* that there were material weaknesses in internal controls that existed for years, but the Company did not explain what specific aspect of the internal controls failed to ensure that the subsidies taken complied with the FCC's usage rules or other State laws. ¶¶128-29.
- The first time the specific internal control deficiency was identified was in the PUCC's resolution—based not on the PUCC's opinions but on what Sprint told the PUCC—when the PUCC disclosed that Sprint had taken *new* steps to validate the mechanisms used to track usage, understand any changes made to the mechanisms, and conduct testing to keep abreast of changes. This is the key quote from the resolution that Defendants repeatedly avoid: "Sprint *now* includes the *key system* used to track usage within the scope of the Company's *Sarbanes-Oxley compliance program* which ensures that programming changes meet IT General Controls requirements." ECF No. 77-1 at 6; *see also* ¶134. The dictionary definition of the word "now" is "*at the present time or moment*," *see* Merriam-Webster, meaning it either did not exist or was not effective in the past. This interpretation cogently explains why the problem kept repeating itself, and caused Sprint to take subsidies illegally for over five years as the SAC meticulously pleads with evidentiary detail. The SAC also explains in detail why ineffective General IT Controls create serious risks of error in a Company's financial statements—alleged facts that Defendants similarly did not bother to address. ¶¶135-36.

      As a result, Defendants' arguments lack merit. Other arguments in the Letter raised for the first time also do not undermine scienter, and at best create new factual issues for the jury to resolve. A denial of liability is never dispositive to scienter, and necessarily requires assessment of the speaker's credibility. Most settlement agreements contain denials of liability, but courts in the Circuit consider settlements as part of a holistic review. Mot. at 14-15. Nor does the timing suggest innocence. Defendants met with regulators in California on August 23, 2019, well after another state, Oregon, *caught* Sprint taking illegal subsidies. Mot. at 4; ECF No. 77-1 at 9. Whether the taking of illegal subsidies was precipitated by "technical failures" or "human errors" is also irrelevant. Letter at 3-4. The fact of the matter is that Sprint repeatedly failed to prevent these problems because of admitted weaknesses in its internal controls, and Plaintiffs plead a cogent basis to support the claim that the specific control deficiency was a failure to maintain effective General IT Controls within the scope of a SOX 404 assessment when all the facts are taken collectively, including facts Sprint admitted to the PUCC, as Supreme Court and Second Circuit precedent require. This is enough to proceed to the next stage.

      Respectfully submitted,

/s/ *Omar Jafri*
Patrick V. Dahlstrom
Omar Jafri
Brian P. O'Connell
**Pomerantz LLP**
10 South LaSalle Street
Suite 3505, Chicago IL 60606