UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/19/2022

---

ISAAC SOLOMON and FRANCINE CANION,
individually and on behalf of all others similarly
situated,

                              Plaintiffs,

              -against-

SPRINT CORPORATION, MICHEL COMBES,
ANDREW DAVIES, MARCELO CLAURE and
TAREK ROBBIATI,

                              Defendants.

---

1:19-cv-5272 (MKV)

**ORDER DENYING MOTION TO
FURTHER AMEND**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Isaac Solomon and Francine Canion assert that Defendant Sprint Corporation violated federal securities laws in connection with financial statements made in advance of its 2020 merger with T-Mobile. The allegations relate to allegedly misleading statements made with respect to Sprint's "postpaid net additions" and with respect to internal controls involving Sprint's participation in the federal "Lifeline" program, which provides customers opportunities for reduced-price phone lines.

On March 25, 2022, the Court granted in part the Motion to Dismiss filed by Defendants Sprints Corporation, Michel Combes, Andrew Davies, Marcelo Claure, and Tarek Robbiati, dismissing for failure to adequately plead scienter the claims asserted in the Amended Complaint with respect to the Lifeline program. [ECF No. 62] (the "March 25 Opinion"). After Defendants had answered the Amended Complaint [ECF No. 65], Plaintiffs sought leave to move to amend the Lifeline allegations, which the Court granted. [ECF No. 72]. Before the Court is Plaintiffs' Motion to Amend the Complaint. [ECF No. 73]. Plaintiffs have filed a Memorandum of Law in Support of the Motion, [ECF No. 74] ("Mem."), attaching their Proposed Second Amended

1

Complaint [ECF No. 74-1] (the "SAC").  Defendants oppose Plaintiffs' Motion [ECF No. 75] ("Opp."), and Plaintiffs have filed a reply [ECF No. 76] ("Reply").  For the reasons stated herein, Plaintiffs' Motion to Amend is denied.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave [to amend] when justice so requires."  Whether to grant leave is ultimately "within the sound discretion of the district court," and a district court may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  The party opposing the motion bears the burden of establishing that leave to amend would be futile.  *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 618 (S.D.N.Y. 2014).

The Court assumes familiarity with the facts and procedural history of this action, and refers only to the allegations dispositive of Plaintiffs' Motion to Amend.  Because the relevant standard for determining whether amendment is warranted parallels, in part, the standard applicable to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b), the Court "accept[s] as true all factual allegations" in the Proposed Second Amended Complaint, and "draw[s] all reasonable inferences in favor of" the Plaintiffs.  *City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017); *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 316 (S.D.N.Y. 2021).

## DISCUSSION

Defendants argue that Plaintiffs' proposed amendment should be denied as untimely and unduly prejudicial, and because the proposed amendment is otherwise futile.  Opp. at 9-14.  The Court first addresses Plaintiffs' delay before turning to whether amendment would be futile.

**I.**    **PLAINTIFFS' DELAY MILITATES IN FAVOR OF DENIAL OF THE MOTION**

It is well-settled that "a court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed." *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 357 (S.D.N.Y. 2020) (internal quotation marks omitted).  The burden to explain any delay is on the party that seeks leave to amend.  *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998).

The Proposed Second Amended Complaint and Plaintiffs' Memorandum in Support make clear that Plaintiffs took no steps to further investigate their claims during the time the prior Motion to Dismiss the Amended Complaint was pending.  Plaintiffs state that "in response" to the Court's March 25 Opinion they "immediately conducted *another* investigation . . . and this motion [to further amend] was filed within weeks of received additional information from the regulators that settled claims with Sprint."  Mem. at 8 (emphasis added); *see also* Mem. at 1 ("After reviewing the Order, Plaintiffs conducted another investigation, interviewed [Oregon] investigators . . . with direct oversight over the Lifeline program, . . . and again reviewed the Company's SEC filings and internal policies."); Mem. at 16; SAC ¶ 102 (the 2019 WSJ article was "corroborated by internal documents from both Sprint and [Oregon investigators].").

Plaintiffs argue that the investigatory lapse was precipitated by the fact that any relevant records request would have been "subject to an exemption from disclosure for ongoing investigations."  Reply at 2.  This is speculative and does not excuse a failure to request the relevant records.  Moreover, Plaintiffs appear to claim that document requests were made only to the *FCC*—and not the Oregon Attorney General—"before the Amended Complaint was filed."  Reply at 2-3 ("Oregon's Public Records Law similarly exempts from disclosure documents related to an ongoing law enforcement investigation, and the AG's recent production *would be* subject to the exemption before Sprint settled the claims.") (emphasis added).

In any event, Plaintiffs admit that the Oregon settlement was announced in May 2021, ostensibly concluding the investigation nearly a year after Plaintiffs had filed the Amended Complaint. *See* SAC ¶ 137; ECF No. 29. The California investigation which Plaintiffs also reference in the Proposed Second Amended Complaint concluded in April 2021. SAC ¶ 134. Still, Plaintiffs tarried in submitting any request to regulators in Oregon or California until after had received the Court's March 2022 Order—almost a year after the announcements of the settlements they now seek to rely upon in further amending their claim. *See* Mem. at 1, 8; Reply at 1 ("[C]rucial documents cited in the SAC such as the settlement agreements with the States of California and Oregon *became available nearly a year after the Amended Complaint was filed*.") (emphasis added).

Plaintiffs had ample opportunity to seek the information they now contend is incontrovertible indicia of scienter, and could have raised it in opposition to the prior Motion to Dismiss or promptly could have sought leave to amend to their complaint to include it. For example, Plaintiffs sought leave to file a sur-reply to the prior Motion to Dismiss, which the Court granted. [ECF Nos. 52, 55]. Plaintiffs filed their sur-reply on July 1, 2021—months *after* the settlements were announced. [ECF No. 56]. Thereafter, the Court held oral arguments on the prior motion, during which Plaintiffs never raised the prospect that it could pursue information from the now-concluded investigations to amplify their claims.

The Court also notes that in the document requests Plaintiffs obtained correspondence relating to an e-mail addressed in the prior Motion to Dismiss. *Infra* at 8-9. The correspondence now identifies a then-unnamed author of an e-mail. *Id.* Plaintiffs now rely on the correspondence and the identification of the author to remedy deficiencies the Court previously noted in the March 25 Opinion. SAC ¶¶ 20, 104. However, the belated identification of the

author of the e-mail underscores Plaintiffs' delay; there is no reason that Plaintiffs could not have sought the information after the settlement was announced and before Plaintiffs filed their sur-reply or attended oral argument.

In sum, the delay in seeking amendment because of pending investigations is insufficiently explained in light of the fact that certain investigations concluded over a year after the Amended Complaint was filed.  This delay militates in favor of denial of the Motion to Amend.[1]

## II. PLAINTIFFS' PROPOSED AMENDMENT WOULD BE FUTILE BECAUSE IT STILL FAILS TO ADEQUATELY PLEAD SCIENTER

In addition to weighing Plaintiffs' delay, the Court also considers whether Plaintiffs' proposed amendments would be futile.  *See Ruotolo v. City of New York*, 514 F.3d 184, 191-92 (2d Cir. 2008).  The futility analysis is predicated on whether an amendment could withstand a motion to dismiss under Rule 12(b)(6).  *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  A proposed claim is futile if it does not "plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs allege that all Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  SAC at 65.  Plaintiffs also allege that Defendants Michel Combes, Andrew Davies, Marcelo Claure, and Tarek Robbiati (the "Individual Defendants")

---

[1] Defendants separately argue that amendment should be denied as it would be prejudicial to them.  Opp. at 9. However, amendment would not unduly prejudice the Defendants.  In assessing whether an amendment would be prejudicial, courts "generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted). Courts also consider the extent to which the allegations are related to existing ones, and whether a party has had prior notice of a proposed claim.  *Id.*  Defendants have plainly been on notice of Plaintiffs' essential theory of liability with respect to the Lifeline program since the Lifeline claims were added to the Amended Complaint in 2020.  [ECF No. 29].  *Ap-Fonden v. GE Co.*, 2022 U.S. Dist. LEXIS 66717, at *29-30 (S.D.N.Y. Apr. 11, 2022). Further, discovery has not yet begun, and the Parties have advised that they are working towards resolving the dispute in private mediation.  *Jt. Stock Co. v. Infomir LLC*, 2017 U.S. Dist. LEXIS 50723, at *3-4 (S.D.N.Y. Mar. 27, 2017).

violated Section 20(a) of the Exchange Act in that they were "controlling persons" liable for the Exchange Act violations by Sprint.  SAC at 68-69.

To prevail on a securities fraud claim, Plaintiffs must allege (1) a material misrepresentation or omission by the Defendants; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008).

The Court previously dismissed Plaintiffs' Lifeline claims in the Amended Complaint for failure to adequately plead scienter.  March 25 Opinion at 20.  The Court concluded that Plaintiffs' allegations did not adequately support the inference that statements made in 2014 regarding Sprint's Lifeline system issues made by a then-"unnamed senior lawyer at Sprint" to Oregon regulators were company- and nation-wide (rather than localized to Oregon), and could be "linked for purposes of scienter to [] later Lifeline issues identified in 2019."  March 25 Opinion at 20.  The 2014 Lifeline issue related to counting as "usage" text messages received, contrary to FCC regulations for the Lifeline program.  *See* SAC ¶¶ 19-20, 61; 103.  On the other hand, the 2019 Lifeline issue relates to counting as "usage" calls received to voicemail, contrary to FCC regulations for the Lifeline program.  *See* SAC ¶¶ 19, 21; 62; 114; 130.

The Court concludes that Plaintiffs' proposed amendments do not rectify the deficiencies the Court identified in its March 25 Opinion, and accordingly fail to state a claim.  Specifically, Plaintiffs fail to adequately allege scienter with respect to the Lifeline program claim.[2]  As such, amendment would be futile.

---

[2] The Parties focus their arguments on whether Plaintiffs' Proposed Second Amended Complaint adequately alleges scienter.  Mem. at 8; Opp. at 14.  Accordingly, the Court does not address the other elements of a securities fraud claim.

A securities fraud claim must satisfy the heightened pleading requirements of both the Private Securities Litigation Reform Act (the "PSLRA") and Federal Rule of Civil Procedure Rule 9(b).  *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  Under Rule 9(b), "the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  This requires a securities-fraud plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).  To adequately plead scienter under the PSLRA, "the complaint shall, with respect to each act or omission alleged to violate this chapter state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  A plaintiff pleads scienter only where he alleges facts manifesting an intent to deceive, manipulate, or defraud.  *See Tellabs*, 551 U.S. at 313.  A plaintiff satisfies this requirement by "alleging facts (1) showing that the defendants [had both] motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *See ATSI Commc's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001).

Here, Plaintiffs do not press a "motive and opportunity" theory of scienter.  *See* Mem. at 2 (arguing Defendants "knew or recklessly disregarded" information about Lifeline issues). While "the absence of a motive allegation is not fatal," *Tellabs*, 551 U.S. at 325, "unless a complaint alleges facts supporting a motive to commit fraud, the circumstantial evidence of scienter must be correspondingly greater." *Inter-Local Pension Fund GCC/IBT v. GE*, 445 F.

App'x 368, 369-70 (2d Cir. 2011).  Accordingly, to plead scienter, Plaintiffs' allegations must sufficiently demonstrate conscious misbehavior or recklessness.

"Conscious misbehavior generally consists of deliberate, illegal behavior."  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 573 (S.D.N.Y. 2014) (citing *Novak*, 216 F.3d at 308). Alternatively, Plaintiffs can establish recklessness where the allegations show that the Defendants' conduct was "highly unreasonable" and constituted "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009).  In other words, the recklessness required to plead scienter is "conscious recklessness—*i.e.*, a state of mind approximating actual intent, and not merely a heightened form of negligence."  *S. Cherry St.*, 573 F.3d at 109 (quoting Novak, 216 F.3d at 312).

### A.    *Plaintiffs' "new" allegations do not adequately plead scienter with respect to Sprint*

Where a defendant is a corporation, 'scienter' requires pleading facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.  *Jackson v. Abernathy*, 960 F.3d 94, 98.  Plaintiffs now identify the previously referred to "senior lawyer" at Sprint [ECF No. 29 ¶ 89] as Elaine Divelbliss, Senior Counsel "responsible for designing and implementing the compliance strategy for the Lifeline program." SAC ¶¶ 20, 104.  Based on correspondence Plaintiffs belatedly requested, Plaintiffs assert that Divelbliss confirmed in 2014 to Oregon regulators that the Lifeline issue was "systemic and not confined to Oregon."  SAC ¶¶ 20, 103, 107.  However, the identification of the attorney does not move the needle in Plaintiffs' favor.  The Court notes that the prior motion to dismiss briefing addressed the exact e-mail Plaintiffs now simply address more fulsomely in the Proposed Second Amended Complaint.  Indeed, in their Motion to Dismiss, Defendants quoted directly from the

Divelbliss e-mail, acknowledging that it stated that the "failure was systemic and not confined to Oregon." [ECF No. 43 at 26]. Thus, the e-mail on which Plaintiffs rely is not new information that was previously unavailable. Significantly, in granting leave to move to further amend, the Court admonished Plaintiffs that they should not seek to relitigate the Court's prior decision.

In the Proposed Second Amended Complaint, Plaintiffs also plead for the first time that on July 8, 2019, senior representatives of Sprint participated in a conference call with Oregon regulators during which the regulators "provided Sprint with incontrovertible proof that the Company was collecting subsidies for illegal Lifeline subscribers." SAC ¶ 111. Kenneth Schifman, "Senior Counsel and the Director of Government Affairs at Sprint responsible for ensuring compliance with the Lifeline program" participated on the call. SAC ¶¶ 21; 112. Following the conference call, Schifman wrote a letter to an Assistant Attorney General in the Business Activities Section of the Oregon Department of Justice in which "he stated that incoming calls forwarded to a subscriber's voicemail were registered as 'usage.'" SAC ¶¶ 111, 114. In response to an inquiry about the scope of the problem, Schifman responded that "the issue was fixed on July 16, 2019." SAC ¶¶ 114-15. That described conduct, however, does not suggest that any Defendants deliberately or illegally misbehaved, *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 573, or that their conduct was "an extreme departure from the standards of ordinary care." *S. Cherry St.*, 573 F.3d at 109; *cf. Slayton v Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010); *see In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380-81 (S.D.N.Y. 2015).

Plaintiffs have also obtained correspondence which they argue further connects the 2014 Lifeline issue with the 2019 Lifeline issue. On September 30, 2019, Special Counsel at the FCC e-mailed the Oregon Assistant Attorney General and requested that he be sent "any other information you may [have] related to the 2014 usage incident." SAC ¶ 116 (alteration in

original).  In response, the Assistant Attorney General provided the relevant 2014 correspondence between the Oregon regulator and Divelbliss.  SAC ¶ 116.

The exchange between the FCC and the Oregon Assistant Attorney General does not sufficiently link the 2014 and 2019 Lifeline issues for purposes of scienter.  Plaintiffs do not explain the conclusion they draw based on that e-mail that "federal and State regulators considered the internal control deficiencies [in 2014 and 2019] as a common course of misconduct."  SAC ¶ 116.  Indeed, Plaintiffs' pleading makes clear that the 2014 and 2019 issues were precipitated by *two separate* events.  Plaintiffs acknowledge that Sprint disclosed that the 2019 Lifeline issue arose "in July 2017 while the system was being updated to address [] required" changes following new FCC regulations in 2016.  SAC ¶ 130.  It logically follows then that the 2019 issue could not link back to the 2014 issue since the new FCC regulations that required the upgrading which led to the 2019 issue were not promulgated until more than two years *after* the 2014 text issues.  Moreover, the 2014 issue and the 2019 issue relate to different "systems"—one text messages and the other voicemails.  Accordingly, the two separate events are not fairly said to be related for purposes of a multi-year unresolved general issue, giving rise to an inference of scienter.  While the facts are viewed holistically, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 323 (2007).

Plaintiffs' references to language contained in state settlement agreements with Sprint also do not support an inference of the requisite state of mind needed to support an inference of scienter.  On reply, Plaintiffs contend that the "connective tissue between the taking of illegal subsidies in 2014-2015 and 2017-2019" is a settlement approved by California regulators.  In

that settlement, Sprint agreed to take "new steps to properly monitor usage and prevent similar errors" and "include the key system used to track usage within the scope of the Company's Sarbanes-Oxley compliance program which ensures that programming changes meet IT General Controls requirements."  Reply at 1; SAC ¶ 134.  However, the California settlement Plaintiffs rely on relates to the 2019 Lifeline program, and does not mention the 2014 Lifeline issue.  [ECF No. 77-1 at 1, 6].[3]

That agreement also undermines Plaintiffs arguments in that, rather than supporting an inference of actual intent to defraud or deceive, it states that "Sprint [] provided evidence showing the coding error was a result of inadvertent human error."  [ECF No. 77-1 at 7].  It is well-settled that a "court need not accept as true an allegation that is contradicted by documents on which the complaint relies."  *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 206 (S.D.N.Y. 2008).  Even assuming the truth of the facts in the Proposed Second Amended Complaint for purposes of this Motion, the fact that Sprint agreed to take "*new* steps" and "include [a] key system" does not suggest that the 2014 Lifeline issue was connected in any way to the 2019 Lifeline issue.  Viewed holistically, Plaintiffs' newly-plead circumstantial evidence of fraud does not give rise to a strong inference of scienter or connect the two issues for purposes of strengthening an inference of scienter.

Further, the 2019 Lifeline issue itself, and related comments made by senior lawyers, do not raise a strong inference of scienter.  Plaintiffs contend that because Oregon regulators

---

[3] After the present Motion to Amend was fully briefed, Defendants sought leave to file a sur-reply.  [ECF No. 77]. The five-page letter violates the Court's Individual Rules of Practice in Civil Cases.  *See* Rule 2(B) (letters should not exceed three pages).  The Court does not consider the Defendants' letter and the Plaintiffs' letter in response on this motion.  However, the Court cites to and considers the California settlement agreement attached to the Defendants' letter for convenience.  The California settlement agreement is clearly incorporated by direct reference in the Proposed Second Amended Complaint, SAC ¶ 134, and is otherwise integral to Plaintiffs' complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (courts may consider documents integral to complaint).

identified the Lifeline issue on July 8, 2019, Defendants' statements in Sprints' financial disclosures just shy of a month later suggest that the Defendants knew about the issue and recklessly disregarded it at the time of the disclosures. *See* SAC ¶ 115. Sprint disclosed the Lifeline issue to the FCC within a few months on November 12, 2019, and amended its 2019 annual report to fully disclose the issue. SAC ¶ 128. "Taking the time necessary to get things right is both proper and lawful. Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal." *Slayton*, 604 F.3d at 777 (quoting *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 761 (7th Cir. 2007)); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1430-31 (3d Cir. 1997) (Alito, J.). "Later disclosures that timely raised questions about the reliability of financial information . . . lend weight to an inference that contemporaneous financial statements were made in good faith." *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 187 (4th Cir. 2009); *Slayton*, 604 F.3d at 777.

**B.      *Plaintiffs wholly fail to plead scienter with respect to the Individual Defendants***

Plaintiffs' allegations of scienter are futile not only with respect to the corporate Defendant, but also with respect to the Individual Defendants. That certain lawyers were made aware of the Lifeline issue or communicated with regulators shortly before Sprint issued its financial reports does not raise an inference that the Individual Defendants also knew of the issue. Plaintiffs do not include in their Proposed Second Amended Complaint any particularized allegations that statements or reports regarding the issue were made available to the Individual Defendants. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."); *Jackson*, 960 F.3d at 99 ("[W]hile particularized allegations that senior officers ignored those

employees' warnings could demonstrate that those officers acted fraudulently, Jackson's proposed amended complaint fails to make that showing."). Nor can the Individual Defendants' respective positions within Sprint lend weight to an inference of scienter. *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010), *aff'd.*, 430 Fed. Appx. 63 (2d Cir. 2011) ("[A]ssertions that certain information was the 'sort of measurement' or 'would have been' reviewed by the Individual Defendants are too speculative to give rise to a strong inference of scienter"); *In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 237-38 (S.D.N.Y. 2021); *cf. In re Avon Sec. Litig.*, 2019 WL 6115349, at *1 (S.D.N.Y. Nov. 18, 2019) (scienter adequately pled where multiple confidential witnesses specifically alleged that defendants received "daily updates" and "monthly forecasts" with facts that would suggest their public statements were inaccurate).

*    *    *

At bottom, Plaintiffs' new allegations viewed holistically do not establish circumstantial evidence of conscious misbehavior or recklessness, or otherwise support a "cogent" and "strong" inference of scienter that is "at least as compelling as any opposing inference one could draw from the facts alleged." *See Tellabs*, 551 U.S. at 324. Accordingly, Plaintiffs' Proposed Second Amendment would be futile.

## CONCLUSION

For the reasons stated herein, Plaintiffs' Motion to Amend is DENIED. Defendants separate request to file a sur-reply is DENIED. The Clerk of the Court respectfully is requested to terminate the letter motions at ECF Nos. 73 and 77. The Parties are directed to submit a letter advising of the status, but not substance, of mediation by July 27, 2022.

**SO ORDERED.**

**Date:  July 19, 2022**
**New York, New York**

_____
MARY KAY VYSKOCIL
United States District Judge

13