**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ISAAC SOLOMON and FRANCINE CANION, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>SPRINT CORPORATION, MICHEL COMBES, ANDREW DAVIES, MARCELO CLAURE and TAREK ROBBIATI<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action No. 1:19-cv-05272-MKV**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................................iii

I.   PRELIMINARY STATEMENT .........................................................................................1

II.  NATURE OF THE ACTION ..............................................................................................2

III. THE SETTLEMENT ...........................................................................................................3

IV.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .............................4

    A.  The Settlement Satisfies the Factors for Final Approval under Rule 23(e)(2) and
       *Grinnell* ...................................................................................................................5

        1.  The Settlement Class Was Well-Represented by Plaintiffs and Lead
           Counsel ...........................................................................................................7

        2.  The Settlement Is the Result of Good Faith, Arm's-Length
           Negotiations ....................................................................................................8

        3.  The Settlement Is an Excellent Result for the Settlement Class...............8

            a.  The costs, risks and delay of trial and appeal support approval ......9

            b.  Other 23(e)(2)(C) factors support approval ...................................10

        4.  The Settlement Treats All Members of the Settlement Class Equitably
           Relative to Each Other ..................................................................................12

    B.  The Remaining *Grinnell* Factors Support Approval..............................................12

V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED...............................................14

    A.  The Settlement Class Satisfies the Requirements of Rule 23(a)............................15

        1.  Numerosity..................................................................................................15

        2.  Commonality................................................................................................16

3.  Typicality ..................................................................................16

4.  Adequacy .................................................................................17

B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3).......................18

1.  Common Legal and Factual Questions Predominate.............................18

2.  A Class Action is Superior to Other Methods of Adjudication ..............19

C.  Lead Counsel Should be Appointed as Class Counsel ..........................................20

VI.    THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY
APPROVED .................................................................................................................20

VII.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
NOTICE TO THE SETTLEMENT CLASS....................................................................20

VIII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...............................................24

IX.    CONCLUSION..............................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................18

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..................................................................................................17

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ..................................................................................10

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    955 F.3d 254 (2d Cir. Apr. 7, 2020) .........................................................................10

*Beckman v. KeyBank*, N.A.,
    293 F.R.D. 467 (S.D.N.Y. 2013) ..............................................................................14

*Burns v. Falconstor Software*,
    10 CV 4572 (ERK), 2013 U.S. Dist. LEXIS 204703 (E.D.N.Y. Oct. 9, 2013)........................13

*Burns v. Falconstor Software*,
    10 CV 4572 (ERK), 2013 U.S. Dist. LEXIS 204701 (E.D.N.Y. Oct. 28, 2013)......................13

*Cent. States SE & SW Areas Health & Welfare Fund v. MerckMedco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)......................................................................................16

*Christine Asia Co. v. Jack Yun Ma*,
    No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y.
    Oct. 16, 2019) ..............................................................................................6, 12, 20

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)........................................................................................15

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).........................................................................................8

*Davenport v. Elite Model Mgmt. Corp.*,
    No. 1:13-CV-01061-AJN, 2014 U.S. Dist. LEXIS 205626 (S.D.N.Y. May 12, 2014)...........14

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).......................................................................................14

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...............................................................................5, 6, 12

*Dornberger v. Metro. Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ...............................................................................23, 24

*Edwards v. N. Am. Power & Gas, LLC*,
   No. 3:14-cv-01714 (VAB), 2018 U.S. Dist. LEXIS 130535 (D. Conn. Aug. 3, 2018)...........22

*Enriquez v. Nabriva Therapeutics plc et al.*,
   1:19-cv-04183, ECF No. 78 (S.D.N.Y. May 08, 2019).............................................................11

*Frontier Ins. Grp., Inc. Sec. Litig.*,
   172 F.R.D. 31 (E.D.N.Y. 1997)..........................................................................................15, 16

*Gauquie v. Albany Molecular Research*,
   No. 14-cv-06637(FB) (SMG), ECF No. 72 (E.D.N.Y. Oct. 13, 2017)...................................12

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................................................8, 14

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987).................................................................................................8, 24

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   293 F.R.D. 459 (S.D.N.Y. 2013) ...............................................................................................4

*In re Am. Int'l Grp. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)......................................................................................................19

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................................................10

*In re China Sunergy Sec. Litig.*,
   No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011)...............9

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ...............................................................................................4

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)........................................................................................12

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)......................................................................................................17

*In re Gila Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007) ........................13

*In re Globalstar Sec. Litig.*,
   No. 01 Civ 1748(PKC), 2004 U.S. Dist. LEXIS 24164 (S.D.N.Y. Dec. 1, 2004) .................16

iv

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................................4, 14

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) .........................................................................................15

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................................12

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009)........16, 18

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .......................................................................................23

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................................13

*In re Payment Card Interchange Fee & Merch. Antitr. Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................................6

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) .........................................................................................16

*In re Platinum & Palladium Commodities Litig.*,
No. 10-CV3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ....................6, 7, 23

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .......................................................................................7, 18

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) .......................................................................................15

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................................24

*In re Take Two Interactive Secs. Litig.*,
No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010)................21

*In re The Bank Of New York Mellon Adr Fx Litigation*,
1:16-cv-00212, ECF No. 149 (S.D.N.Y. Jan. 17, 2021).......................................................23

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008).................9

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...................................................................................17

*In re Veeco Instruments, Inc.*, *Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ...................................................................................18, 19

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ......................................................................................15

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000)................................................................................10

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)..............................................................................................10

*Melito v. Experian Mktg. Solutions, Inc.*,
    923 F.3d 85 (2d Cir. 2019)................................................................................................21

*Merryman et al v. Citigroup, Inc., et al.*,
   15-cv-09185, ECF No. 145 (S.D.N.Y. Feb. 14, 2019) .....................................................23

*Merryman et al v. JP Morgan Chase Bank, N.A.*,
   Docket No. 1:15-cv-09188, ECF No. 118 (S.D.N.Y. Mar. 25, 2019) ....................................23

*Pearlman v. Cablevision Sys. Corp.*,
   No. CV 10-4992 (JS) (AKT), 2019 U.S. Dist. LEXIS 142222
   (E.D.N.Y. Aug. 20, 2019).................................................................................................11

*P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*,
   No. 15 Civ. 1938 (DAB), 2018 U.S. Dist. LEXIS 20824 (S.D.N.Y. Feb. 1, 2018) ..................9

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)..............................................................................................18

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .......................................................................................10

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010)................................................................................................18

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) .....................................................................................24

*Stefaniak v. HSBC Bank USA, N.A.*,
   No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008)....................12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).............................................................................................4, 7

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
  10-CV-864(SLT)(RER), 2015 U.S. Dist. LEXIS 73726 (E.D.N.Y. April 17, 2015)...............5

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
  10-CV-864(SLT)(RER), 2015 U.S. Dist. LEXIS 73025 (E.D.N.Y. June 5, 2015)...................5

*Weigner v. City of New York*,
  852 F.2d 646 (2d Cir. 1988).................................................................................................23

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)...................................................................................................14

*Wilson v. LSB Indus.*,
  No. 15 Civ. 7614 (RA) (GWG), 2018 U.S. Dist. LEXIS 138832 (S.D.N.Y. Aug. 13,
  2018) .....................................................................................................................................15

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................2

Fed. R. Civ. P. 23(a) .........................................................................................................14, 19

Fed. R. Civ. P. 23(a)(1)...................................................................................................15, 16

Fed. R. Civ. P. 23(a)(2)...........................................................................................................16

Fed. R. Civ. P. 23(a)(3)...........................................................................................................16

Fed. R. Civ. P. 23(a)(4)......................................................................................................17, 18

Fed. R. Civ. P. 23(b)(3).................................................................................................14, 18, 19

Fed. R. Civ. P. 23(c)(1)(C) .....................................................................................................10

Fed. R. Civ. P. 23(c)(2)...........................................................................................................20

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................21

Fed. R. Civ. P. 23(c)(3)...........................................................................................................21

Fed. R. Civ. P. 23(e) ................................................................................................................21

Fed. R. Civ. P. 23(e)(1)...............................................................................................................5

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................................21

Fed. R. Civ. P. 23(e)(2)..................................................................................................... *passim*

Fed. R. Civ. P. 23(e)(3)....................................................................................................6

Fed. R. Civ. P. 23(f).......................................................................................................10

Fed. R. Civ. P. 23(g)......................................................................................................20

**Statutes and Regulations**

15 U.S.C. §78u-4(a)(7) ..................................................................................................21

Private Securities Litigation Reform Act....................................................................2, 21

**Other Sources**

Federal Judicial Center, *Manual for Complex Litigation*
    (4th ed.) (2004) ......................................................................................................24

NERA Economic Consulting. (Jan. 25, 2022). *Recent Trends in Securities Class Action
    Litigation: 2021 Full-Year Review*. Retrieved from
    https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-
    Year_Trends_012022.pdf...........................................................................................9

Sprint Corporation, Form 10-Q, (November 12, 2019),
    https://d18rn0p25nwr6d.cloudfront.net/CIK-0000101830/78c3f1d7-0214-453b-a4ca-
    f8fc0860fe6e.pdf......................................................................................................15

## I.    PRELIMINARY STATEMENT

Lead Plaintiff Isaac Solomon and additional Plaintiff Francine Canion (hereafter the "Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for an order preliminarily approving the proposed settlement ("Settlement") of this Action (hereafter the "Preliminary Approval Order"). The Settlement provides for a $3.75 million cash payment to the Settlement Class in consideration for resolving all claims alleged in this Action against all Defendants.[1] The Settlement is the result of Plaintiffs' and their Lead Counsel's vigorous investigation and litigation efforts and extensive arm's-length negotiations before an experienced mediator. The Preliminary Approval Order, among other things, will: (1) preliminarily approve the proposed Settlement as set forth in the Stipulation of Settlement dated September 12, 2022 (the "Stipulation"); (2) certify a Settlement Class for purposes of effectuating this Settlement; (3) approve the form and plan of notice to the Settlement Class; and (4) schedule a final approval hearing at which this Court will, among other things, make a final determination as to whether the Settlement is fair, reasonable, and adequate.

Preliminary approval is warranted where, as here, the Settlement is within the range of what may be found to be fair, reasonable, and adequate, so that notice of the Settlement can be given to all Settlement Class Members and a hearing scheduled to consider final approval of the Settlement. As provided herein, the proposed Settlement is the product of informed, good faith, arm's-length negotiations between experienced counsel. After assessing the merits of the case as well as Defendants' potential defenses, the risks and expenses in continuing litigation through trial,

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement. Except where otherwise indicated, paragraph references in the form "¶__" are to the numbered paragraphs of the Amended Class Action Complaint (the "Amended Complaint"), filed July 31, 2020, ECF No. 29.

and the recovery offered in the Settlement, Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Class.

## II.    NATURE OF THE ACTION

On June 5, 2019, Plaintiff Isaac Solomon filed a class action complaint against Defendants Sprint Corporation ("Sprint"), Michel Combes and Andrew Davies alleging violations of the federal securities laws in the United States District Court for the Southern District of New York. On May 13, 2020, the Court entered an Order appointing Isaac Solomon to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B)(iii) of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and approved Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel. ECF No. 23.

On July 31, 2020, Lead Plaintiff Isaac Solomon and Plaintiff Francine Canion filed an Amended Complaint. ECF No. 29. On October 2, 2020, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), and an accompanying memorandum of law. ECF Nos. 42, 43. On October 23, 2020, Plaintiffs responded by filing a memorandum of law in opposition to the motion to dismiss. (ECF No. 45), to which Defendants filed a reply on November 6, 2020. ECF No. 49. On July 1, 2021, Plaintiffs filed a sur-reply to the reply in support of the motion to dismiss, (ECF No. 56), to which Defendants responded with their own additional reply on July 7, 2021. ECF No. 57. The Court held oral argument on the motion on August 4, 2021.

On March 25, 2022, the Court denied in part and granted in part Defendants' motion to dismiss the Amended Complaint. ECF No. 62. The Court allowed Plaintiffs' claims related to Defendants' statements concerning Sprint's post-paid additions to proceed to discovery. The Court ruled that the Amended Complaint adequately pled falsity and loss causation regarding the Lifeline related claims, including false statements about Sprint's revenue figures and the adequacy of the

Company's internal controls over financial reporting, but found that Plaintiffs did not sufficiently plead scienter for the Lifeline related claims. *Id.* Thereafter, Plaintiffs moved to file a Second Amended Complaint that alleged the Lifeline-related claims with additional details. ECF No 73. The Court, however, denied leave to amend. As a result, the claims that remain in this litigation in the absence of an appeal are the ones that relate to the postpaid additions, and the associated decline in the Company's stock price after Sprint's letter to the Federal Communications Commission was disclosed in April 2019.

## III.    THE SETTLEMENT

On July 21, 2022, the Parties participated in an extended mediation session conducted by Jed Melnick, Esq., a mediator at JAMS with experience in mediating settlements in securities class actions. Following a full day mediation session, Mr. Melnick made a mediator's proposal to the Parties to settle the Action for $3.75 million, which both Plaintiffs and Defendants accepted. The Parties thereafter executed a Term Sheet on August 4, 2022 and finalized the terms of the Stipulation executed on September 12, 2022. The Class, as defined in the Stipulation, consists of:

> All individuals and entities who purchased or otherwise acquired Sprint common stock between October 25, 2017 and November 1, 2019, both dates inclusive, and who were damaged thereby.

Excluded from the Settlement Class are (i) Defendants; (ii) the parent entity, officers and directors of the Company, at all relevant times; (iii) members of the immediate families of such officers and directors of the Company, and their legal representatives, heirs, successors or assigns; and (iv) any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class is any Settlement Class member that validly and timely requests exclusion in accordance with the requirements set by the Court.

Under the Settlement's terms, Sprint will pay $3.75 million in cash into an Escrow Account

3

maintained by the Escrow Agent on behalf of Plaintiffs and the Class, within fifteen (15) business days from the day the Court enters the Preliminary Approval Order (together with all interest earned thereon, the "Gross Settlement Fund").

The Gross Settlement Fund shall be used first to pay the following: (1) taxes and tax expenses; (2) Notice and Administration Expenses; (3) attorneys' fees and expenses, including expert fees and investigators' fees, incurred in connection with prosecuting this Action; and (4) a reimbursement award to Plaintiff, if any. The remaining balance, the "Net Settlement Fund," shall be paid to Authorized Claimants on a pro rata basis as set forth in the Notice and the proposed Plan of Allocation contained therein. In exchange for the consideration above, the Settlement provides that Plaintiffs and the Class Members release known and unknown claims against Defendants, Defendants' Counsel, and other Released Parties arising from their Class Period purchases of Sprint common stock and the facts alleged in this Action. The Settlement also provides that Defendants release any claims against Plaintiffs, all Class Members, or Lead Counsel related to this Action or the prosecution thereof.

## IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Courts approve class action settlements that are determined to be "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).[2] The Second Circuit recognizes "the strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012). "Review of a

---

[2] Unless otherwise noted, all emphases are added and internal citations are omitted throughout.

proposed class action settlement generally involves a two-step process: preliminary approval and subsequent fairness hearing." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). In assessing whether to preliminarily approve a settlement, "courts should give proper deference to the private consensual decision of the parties," and bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276, *17-18 (E.D.N.Y. Apr. 17, 2015), *adopted by* 2015 U.S. Dist. LEXIS 73025 (E.D.N.Y. June 5, 2015).

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties[] show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). As set forth below, this Settlement satisfies both prongs. It meets the criteria for final approval expressly enumerated in Rule 23(e)(2), as well as those typically considered in this Circuit as articulated in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Additionally, the Settlement Class meets the standards for certification for purposes of effectuating the Settlement.

### A. The Settlement Satisfies the Factors for Final Approval under Rule 23(e)(2) and *Grinnell*

The Settlement is beneficial to the Settlement Class, and easily satisfies both the factors articulated in the recent amendments to Rule 23(e)(2) and in *Grinnell*. Under the recent amendments to Rule 23(e)(2), courts assessing approval are to consider whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

(C) The relief provided for the class is adequate, taking into account:

(i) The costs, risks, and delay of trial and appeal;

(ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) The terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Antitr. Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Courts in the Second Circuit have long considered the following factors, set forth in *Grinnell*, to evaluate "whether a class action settlement is fair, reasonable, and adequate under Rule 23":

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Christine Asia Co. v. Jack Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836, *35-36 (S.D.N.Y. Oct. 16, 2019) (citing *Grinnell*, 495 F.2d at 463). While the Second Circuit has not prescribed any set order of consideration, at least one district court has suggested that courts first "consider[] the Rule 23(e)(2) factors, and then consider[] additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *See Payment Card*, 330 F.R.D. at 29. However, courts should not "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 n.24 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10-CV3617, 2014 U.S. Dist. LEXIS 96457 at *38

6

(S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—may be premature at this stage. *Id.*

### 1. The Settlement Class Was Well-Represented by Plaintiffs and Lead Counsel

Plaintiffs and Lead Counsel more than satisfy Rule 23(e)(2)(A)'s "adequate representation" requirement. That requirement focuses mainly on the "alignment of interests between class members." *See Wal-Mart*, 396 F.3d at 106-07. Here, Plaintiffs' interests (and those of Lead Counsel) were fully aligned at all times with the interests of absent Settlement Class Members. All brought the exact same claims asserting the same legal theory over the same Class Period. And, because Plaintiffs, Lead Counsel, and the Class Members all "share the common goal of maximizing recovery, there is no conflict of interest." *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Plaintiffs and Lead Counsel vigorously litigated this case since their appointment on May 13, 2020. Plaintiffs have significantly contributed to the Action by overseeing the litigation and participating in settlement discussions with Lead Counsel. Plaintiffs and Lead Counsel substantially advanced this Action and benefitted the Settlement Class by: (i) conducting an extensive review of all relevant public filings and other publicly-available information; (ii) obtaining information from the regulatory bodies after substantial negotiation that supported Plaintiffs' claims;  (iii) drafting multiple iterations of the complaint, including the Initial Complaint, the Amended Complaint, and the proposed Second Amended Complaint; (iv) successfully defeating Defendants' attempt to have the case dismissed on the pleadings; (v) appearing at Court hearings and conferences; (vi) drafting a detailed mediation statement that assessed the strengths and weaknesses of the Action, as well as the risks and advantages of continued litigation; (vii) engaging in a full-day mediation session overseen by Mr. Melnick,

7

resulting in a favorable financial Settlement for the Class; and (viii) negotiating the terms of the Settlement, including the Stipulation and exhibits thereto. Thus, Plaintiffs and Lead Counsel readily satisfy Rule 23(e)(2)(A)'s adequate representation requirement.

### 2.    The Settlement Is the Result of Good Faith, Arm's-Length Negotiations

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). To that end, a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Here, the Settlement was the result of a mediator's proposal after vigorous negotiation and a full-day mediation session.

### 3.    The Settlement Is an Excellent Result for the Settlement Class

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

The proposed Settlement provides a cash payment of $3,750,000 for the benefit of the Settlement Class. This is an excellent result given the significant risks of continued litigation. Moreover, after consultation with experts on damages, Plaintiffs believe that the maximum damages that the Settlement Class could recover for the claims allowed to proceed to discovery pursuant to the standard two-trader model are approximately $30.3 million. The actual damages figure could be much smaller, as Plaintiffs might not be able to prove that the entirety of the decline

8

in stock price on the disclosure date was caused by the alleged fraud. The $3.75 million Settlement thus represents a recovery of approximately 12.4% of damages which is above "the range of the average recovery in shareholder litigation." *See, e.g.*, *P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*, No. 15 Civ. 1938 (DAB), 2018 U.S. Dist. LEXIS 20824, *21 (S.D.N.Y. Feb. 1, 2018) (granting final approval of settlement that was 5.6% to 6.9% of estimated class damages of between $15.94 million and $19.64 million); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, *15 (S.D.N.Y. May 13, 2011) (finding that recovery in the double digits as a percentage of total damages "far surpasses the 'average settlement amounts in securities fraud class actions . . . [of] 3% to 7% of the class members' estimated losses.'"); *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106, *20-21 (S.D.N.Y. July 31, 2008) (granting final approval of settlement that was 10.8% of estimated class damages of $13 million).

The percentage recovery here also exceeds the 1.8% median settlement value in 2021 for all securities class actions. *See* NERA, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review at p. 24 (Jan. 25, 2022).[3]  Thus, the Settlement provides an excellent recovery for the Settlement Class.

### a. The costs, risks and delay of trial and appeal support approval

The recovery also is favorable when considered against the risks of continued litigation. Defendants have vigorously contested their liability for securities fraud, arguing, for example, that their challenged statements were not false or misleading when made or made with scienter, as well

---

[3]  *available at*: https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf

as challenging loss causation. Defendants would certainly continue to challenge falsity, scienter, and loss causation were this case to proceed to summary judgment and trial. *See e.g.*, *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Moreover, prevailing at summary judgment and trial would guarantee a delay in recovery, but would not necessarily result in a larger recovery. The jury could award a smaller amount of damages, or the verdict could be appealed. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81.4 million for plaintiffs against an accounting firm and entering judgment for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case tried in 1988 on the basis of a Supreme Court opinion handed down in 1994).

Continued litigation would also involve risks relating to class certification. No class has been certified for litigation purposes. Risks related to class certification "militate[] in favor of settlement approval." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268-69 (S.D.N.Y. 2012). Moreover, even if a litigation class were certified, risks to maintaining certification would persist; at any time Defendants could move for modification or decertification prior to final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 258 (2d Cir. 2020) (*citing* Fed. R. Civ. P. 23(f)). Continued litigation, in addition to being highly uncertain, would be costly and take years to complete.

### b. Other 23(e)(2)(C) factors support approval

Rule 23(e)(2)(C) also states that adequacy should be assessed in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class

10

member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval.

First, the Settlement calls for an experienced Settlement Administrator to process claims and distribute the Net Settlement Fund pro rata to the Settlement Class Members according to the defined Plan of Allocation using procedures that are well-established and have been proved effective in securities fraud litigation. A.B. Data, Ltd. ("A.B. Data"), the Settlement Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, and provide the Settlement Class Members with a reasonable opportunity to cure deficiencies in their claims. Thereafter, A.B. Data will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation, and Lead Counsel will then move the Court for an order of distribution permitting checks to be mailed to eligible claimants.[4]

Second, as disclosed in the Notice, Lead Counsel, who have not been paid to date, will apply for a fee award not to exceed one-third of the Gross Settlement Fund. Such a fee would be reasonable for the work performed and the results obtained and consistent with awards in similar complex class action cases. *See, e.g.*, *Enriquez v. Nabriva Therapeutics plc et al*, 1:19-cv-04183, ECF No. 78 (S.D.N.Y. May 14, 2021) (approving fee award that was one third of a $3 million settlement); *Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS) (AKT), 2019 U.S. Dist. LEXIS 142222, *13 (E.D.N.Y. Aug. 20, 2019) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between

---

[4] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Gross Settlement Fund based on the number or value of the claims submitted.

11

$10 million and $50 million.")[5]

Third, to protect the Settlement and the Settlement Class, the Parties have placed the terms under which Defendants may terminate the Settlement if a certain threshold of Settlement Class Members submit valid and timely requests for exclusion into a separate confidential agreement. Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g.*, *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, *54.

### 4. The Settlement Treats All Members of the Settlement Class Equitably Relative to Each Other

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. Under the proposed Plan of Allocation, each Authorized Claimant will receive a pro rata share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See, e.g., In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### B. The Remaining *Grinnell* Factors Support Approval

The additional factors articulated in *Grinnell* but not expressly listed in Rule 23(e)(2) include: the stage of the proceedings and the amount of discovery completed; the ability of the

---

[5] *See also* Order, ECF No. 72, *Gauquie v. Albany Molecular Research*, No. 14-cv-06637(FB) (SMG) (E.D.N.Y. Oct. 13, 2017) (approving award of one-third of $2.868 million settlement); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, *10 (W.D.N.Y. June 28, 2008) (collecting cases, awarding attorneys' fee of 33% of $2.9 million settlement amount, and finding fee percentage "typical in class action settlements in the Second Circuit.").

defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. Here, the factors support approval. However, "a court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008) (internal quotations omitted).

First, after three years of litigation, Plaintiffs and Lead Counsel are well equipped to evaluate the Settlement and understand the strengths and weaknesses they will face at trial. They conducted an extensive investigation and thoroughly assessed the legal and factual merits of their claims, successfully defeated Defendants' attempt to have this Action dismissed, interviewed former employees of Sprint, evaluated damages with the assistance of forensic economics experts, thoroughly reviewed Sprint's and T-Mobile's public filings and other publicly-available information, served seven different sets of public records requests to state and federal public utilities regulators, prepared mediation papers and participated in a full-day mediation, and evaluated class certification. Thus, the litigation had sufficiently progressed to enable Plaintiffs and Lead Counsel to effectively assess the Settlement.[6]

Second, the Settlement is within the range typically found reasonable relative to the maximum prospective recovery. Reasonableness must be judged "in light of the strengths and

---

[6] *See, e.g.*, *In re Gila Satellite Networks, Ltd.*, No. CV-02-1510, 2007 U.S. Dist. LEXIS 68964, at *32-33 (E.D.N.Y. Sept. 18, 2007) ("Although little formal discovery has been completed, Lead Counsel has interviewed several former employees of [Defendant] and obtained a number of internal documents, and all parties have conducted extensive research[.]"); *Burns v. Falconstor Software*, 10 CV 4572 (ERK), 2013 U.S. Dist. LEXIS 204703, *19 (E.D.N.Y. Oct. 9, 2013), *adopted by* 2013 U.S. Dist. LEXIS 204701 (E.D.N.Y. Oct. 28, 2013) (information gained through the mediation and settlement process found to be sufficient in case without any discovery).

weaknesses of plaintiffs' case" not "the best of all possible worlds." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. At 762. Here, the $3.75 million recovery is reasonable even before considering potential impediments to continued litigation of this Action and is a good recovery after considering such risks.

Finally, although Defendants could likely withstand a greater judgment, "[their] ability to do so, 'standing alone, does not suggest that the settlement is unfair.'" *Davenport v. Elite Model Mgmt. Corp.*, No. 1:13-CV-01061-AJN, 2014 U.S. Dist. LEXIS 205626, at *21 (S.D.N.Y. May 12, 2014) (quoting *Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013). Thus, this factor is "neutral and does not preclude the Court from granting final approval." *Id.* at *21-22. Because these factors further support the Settlement, the Court should grant preliminary approval. *See Davenport*, 2014 U.S. Dist. LEXIS 205626, at *23.

## V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The Second Circuit has long acknowledged that courts may properly certify a class solely for purposes of effectuating a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982) ("A blanket rule prohibiting the use of temporary settlement classes may render it virtually impossible for the parties to compromise class issues and reach a proposed class settlement before a class certification. Such a firm restriction does not appear necessary or desirable."). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.*, 283 F.R.D. at 186.

As demonstrated below, as the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3) for the purposes of this Settlement, "certification may be granted." *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

14

### A.  The Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1. Numerosity

The Settlement Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed when a class consists of 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

Here, the Settlement Class is comprised of purchasers of Sprint common stock over a two-year period. According to Sprint's quarterly report on Form 10-Q issued for the period encompassing the end of the Class Period, as of September 30, 2019, Sprint had 4.098 billion ordinary shares outstanding. *See* SEC Form 10-Q at 2 (November 12, 2019);[7] *see also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (numerosity "'may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period'") (citation omitted).  Moreover, during the Class Period, Sprint had an average daily trading volume of 15.77 million shares. As courts in the Second Circuit have noted, "[c]ommon sense suggests that" even a moderate trading volume of 4.6 million shares over an eight-month class period when there are 13 million shares of common stock outstanding results in a sufficient number of purchases to make joinder impracticable. *Wilson v. LSB Indus.*, No. 15 Civ. 7614 (RA) (GWG), 2018 U.S. Dist. LEXIS 138832, *11-12 (S.D.N.Y. Aug. 13, 2018) (*quoting Frontier Ins. Grp., Inc. Sec. Litig.*,

---

[7] *Available at:* https://d18rn0p25nwr6d.cloudfront.net/CIK-0000101830/78c3f1d7-0214-453b-a4ca-f8fc0860fe6e.pdf

172 F.R.D. 31, 35, 40 (E.D.N.Y. 1997)). Accordingly, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Securities fraud cases like this easily satisfy commonality, because all "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also In re Globalstar Sec. Litig.*, No. 01 Civ 1748(PKC), 2004 U.S. Dist. LEXIS 24164, at *10-11 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this [securities class] action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues.").

Here, questions of law and fact common to the Settlement Class include whether Defendants made materially misleading statements, whether the statements were made with scienter, and whether Defendants' reckless misrepresentations damaged investors. These questions are susceptible to common proof at trial because their resolution does not differ based on the identity of the plaintiff. Thus, commonality is met. *See id.*

### 3. Typicality

The typicality requirement of Rule 23(a)(3) is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health & Welfare Fund v. MerckMedco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Absolute identity is not required. *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, *31 (S.D.N.Y. Dec. 23, 2009). The critical question is whether the proposed class

16

representatives and the class assert a "common course of conduct" by Defendants. "Factual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id.* at \*32.

Here, Plaintiffs' claims and those of the proposed Settlement Class are based on the exact same misrepresentations and omissions that Defendants made to the investing public during the Settlement Class Period, as well as the Individual Defendants' control of Sprint. Thus, any Settlement Class Member's claim will rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

### 4. Adequacy

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is measured by two standards: (i) whether the claims of the proposed class representative conflicts with those of the class; and (ii) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Both prongs are met here.

First, there is no antagonism or conflict of interest between Plaintiffs and the proposed Settlement Class. All purchased Sprint common stock and were injured by the same materially false statements and omissions. If Plaintiffs are to prove their claims at trial, they would also be able to prove the Settlement Class's claims. *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459-60 (2013) (investor class "will prevail or fail in unison" because claims are based

on common misrepresentations and omissions). Thus, the interests of Plaintiffs and the other members of the Settlement Class are aligned, and they share the common objective of maximizing their recovery from Defendants. *See Polaroid*, 240 F.R.D. at 77 ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Second, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel. Lead Counsel has extensive experience and expertise litigating securities class action cases and has zealously advanced the interests of absent Settlement Class Members, culminating in this favorable Settlement. Accordingly, Rule 23(a)(4) is satisfied.

### B.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

### 1. Common Legal and Factual Questions Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *In re Veeco Instruments, Inc.*, *Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006). Indeed, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). Thus, "if the liability issue is common to the class, common questions are held to predominate over individual questions." *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *35. This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, "questions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary." *Veeco*, 235 F.R.D. at 240. Because this is a Settlement Class, "concerns about whether individual issues [like reliance] would create 'intractable management problems' at trial drop out of the predominance analysis because 'the proposal is that there be no trial.'" *In re Am. Int'l Grp. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (*quoting Amchem*, 521 U.S. at 620, and vacating denial of class certification in a preliminary approval decision).

## 2. A Class Action is Superior to Other Methods of Adjudication

Class adjudication of this Settlement and Action is superior to other methods. Rule 23(b)(3) sets forth non-exhaustive factors to be considered in assessing superiority: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

Here, no opt-out actions have been filed and there is no evidence that Settlement Class Members desire to bring separate individual actions. Furthermore, it is desirable to concentrate the claims in this Court as Sprint common stock was traded on the New York Stock Exchange, and the Court is already familiar with the factual and legal issues in the case. Finally, since Plaintiffs' request for class certification is for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

In sum, the proposed Settlement Class meets all of the requirements of Rule 23(a) and 23(b)(3) for the purpose of Settlement and should be preliminarily certified. *See id.*

### C.  Lead Counsel Should be Appointed as Class Counsel

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). After being appointed Lead Counsel, *see* ECF No. 23, Pomerantz has substantially advanced the interests of the Class, as described above in Sections IV.A.1, IV.B and V.A.4. It has spent hundreds of hours and advanced a substantial monetary amount in expenses, risking the possibility that such time and expenses might not be reimbursed. Moreover, Lead Counsel consists of highly experienced litigators specializing in complex securities fraud actions. Accordingly, Lead Counsel is adequate to serve as and should be appointed as Class Counsel.

## VI.    THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

The proposed Plan of Allocation, which is detailed in the Notice to be sent to the Settlement Class Members, will govern how the Settlement proceeds will be distributed among Settlement Class Members who timely file a valid Proof of Claim. A plan of allocation, "particularly if recommended by experienced and competent class counsel," should be approved so long as it is "fair and adequate" and "ha[s] a reasonable, rational basis." *Christine Asia Co*., 2019 U.S. Dist. LEXIS 179836, \*55. The proposed Plan of Allocation was prepared by Lead Counsel after consulting with experts and A.B. Data, and rationally reflects the allegations and causes of action asserted in this case. It will result in a fair and equitable distribution of the proceeds among Settlement Class Members who submit valid claims, as all Settlement Class Members are treated fairly under the Plan. Each will receive no more, or less, than his or her pro rata share of the Net Settlement Fund based on recognized losses assessed by the formulas described in the Notice.

## VII.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the

circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)). Pursuant to the PSLRA, the notice must also include an explanation of plaintiffs' recovery. *In re Take Two Interactive Secs. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837, *44 (S.D.N.Y. June 29, 2010) (*quoting* 15 U.S.C. §78u-4(a)(7)). The notice must "fairly apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 95 (2d Cir. 2019).

Plaintiffs' proposed Notice and Summary Notice, attached as Exhibits 1-D and 1-C to the Stipulation, satisfy these standards. As specified by Rule 23(c)(3) and 15 U.S.C. §78u-4(a)(7), the Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the prospective Settlement Class and who is excluded; (3) the reasons the Parties have proposed the Settlement; (4) the amount of the Gross Settlement Fund; (5) the Settlement Class's claims and issues raised in this Action; (6) the Parties' disagreement over damages and liability; (7) the maximum amount of attorneys' fees and expenses that Lead Counsel may seek; (8) the maximum amount Lead Counsel will request as a reimbursement award to Plaintiffs; and (9) the plan for allocating the Settlement proceeds to the Class. *See* Exhibit 1-D. The Notice also describes the process for seeking exclusion from the Settlement Class, or for objecting to the Settlement, Plan of Allocation, or requests for awards of fees and expenses. *Id.*

The proposed Preliminary Approval Order directs that the Settlement Administrator shall cause the Notice to be disseminated to all Settlement Class Members who can be identified with reasonable effort under the most practicable means. *See* Exhibit 1-A.

To ensure the Notice is sufficiently disseminated to Settlement Class Members, Plaintiffs

21

propose a three-pronged approach, consisting of (1) direct notice to all Settlement Class Members who hold (or held) their eligible securities directly and are listed in the records of Sprint's transfer agent with respect to such holdings; (2) an extensive media and Internet-based notice campaign utilizing a combination of print media and online resources to target other Settlement Class Members, and (3) a universally accessible Settlement website.

First, Lead Counsel is coordinating with Sprint and its transfer agent to obtain information regarding a list of the identifiable registered holders of Sprint. Under Lead Counsel's direction, A.B. Data, which has significant experience administering large class settlements, will mail the Notice individually to registered holders identified through Sprint's transfer agent (substantially in the form attached as Exhibit 1-D to the Stipulation); Stipulation of Settlement VII.F; *see also, e.g.*, *Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-cv-01714 (VAB), 2018 U.S. Dist. LEXIS 130535, at *14 (D. Conn. Aug. 3, 2018) (approving mailed notice directing class members to website). The direct Notice will also provide general information regarding the Settlement and Settlement Class Members' rights in connection with it, and direct recipients to the Settlement website for additional information, including a copy of the Notice.

Second, for those Settlement Class Members whose information is not available through Sprint's transfer agent, the Notice will be disseminated via a comprehensive targeted media program (the "Media Plan"). The Media Plan will consist of: (1) Google Display Networks banner ads, (2) Google Search AdWords, (3) Linked Newsfeed Ads, and (4) Earned Media including a press release distributed via PR Newswire US1 National Newswire, which will be tweeted to PR Newswire and A.B. Data followers. All banner, newsfeed and mobile ads will include an embedded link to the Settlement website. The Media Plan will target mobile, tablets, and desktop users. A.B. Data estimates that the digital and social media campaign will generate 131 million

22

impressions (views). During the campaign, A.B. Data will monitor the success, conversions and activity associated with the Media Plan and will adjust the number of impressions delivered across each platform to maximize engagement and efficiency. The newswire release will also assist with driving search engine results, which will help increase traffic to the Settlement website.

Third, A.B. Data will cause the Stipulation, as well as the Notice, Proof of Claim and Release and the Preliminary Approval Order of the Court to be posted on a website dedicated to the Settlement and maintained by A.B. Data. The Summary Notice will also be published in the *PR Newswire* within ten (10) calendar days after the dissemination of the Notice.

These efforts are directed to maximize the reach of the Notice under the circumstances of this case, and demonstrate that Lead Counsel "acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)). *In Re: The Bank Of New York Mellon Adr Fx Litigation*, 1:16-cv-00212, ECF No. 149 (S.D.N.Y. Jan. 17, 2021) (approving combination of direct notice to registered shareholders and a media campaign similar to the ones Plaintiffs propose here as sufficient to provide notice to class members); *Merryman et al v. Citigroup, Inc., et al*, 15-cv-09185, ECF No. 145 (S.D.N.Y. Feb. 14, 2019) (same); *Merryman et al v. JP Morgan Chase Bank, N.A.*, Docket No. 1:15-cv-09188, ECF No. 118 (S.D.N.Y. Mar. 25, 2019) (same).

Indeed, courts have approved notice programs that mix individual notice with digital or media-based notifications. *See, e.g.*, *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *43-44 (S.D.N.Y. July 15, 2014) (approving publication notice as "the best practicable notice plan under the circumstances" where a "direct notice program [wa]s not feasible" for part of the settlement class); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 123-

23

24 (S.D.N.Y. 2001) (concluding that "reasonable efforts were taken to notify all members of the class" where part of the class was covered by publication notice in the *Wall Street Journal* and *International Herald Tribune*); *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("Because defendants do not have a list of potential class members… the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action"); *see also* Manual for Complex Litigation (4th ed 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort"); *Spann v. J.C. Penney Corp*., 314 F.R.D. 312, 330 (C.D. Cal. 2016) (approving notice program that "utilize[d] a combination of individual notice to known class members in the form of Email Notices and PostCard Notices and a schedule of publication notices in English and Spanish in magazines, on certain internet networks, on Facebook, and in a press release").

This Court can thus exercise its "considerable discretion" to approve the method of providing Notice proposed by Plaintiffs. *Dornberger*, 203 F.R.D. at 123; *see also In re "Agent Orange" Prod. Liab. Litig*., MDL No. 381, 818 F.2d 145, 169 (2d Cir. 1987) (district court's determination with respect to reasonableness of efforts to identify class members "must be accepted unless clearly erroneous").

### VIII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The specific timing of events is determined by the date on which the Final Approval Hearing is scheduled. In order to allow sufficient time for the Notice to be disseminated to the potential Settlement Class Members, Plaintiffs request that the Court schedule the Final Approval Hearing for a date not earlier than 100 calendar days after entry of the Preliminary Approval Order, or at

24

the Court's convenience.

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Fee and Expense Application, (Preliminary Approval Order ¶17) | 30 calendar days before the Final Approval Hearing |
| Deadline for mailing exclusion requests or objections (Preliminary Approval Order, ¶11) and Deadline for submitting Claim Forms (Preliminary Approval Order, ¶10(a)) | 14 calendar days before the Final Approval Hearing |
| Deadline for filing responses to any objections or in further support of the Settlement, the Plan of Allocation, and the Fee and Expense Application (Preliminary Approval Order ¶17) | 7 calendar days before the Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order, ¶4) | To be determined by the Court, but not earlier than 100 calendar days after the entry of the Preliminary Approval Order |

## IX.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement, (2) certify the Class for purposes of effectuating the Settlement, (3) approve the Plan of Allocation, (4) approve the proposed form and manner of Notice, and (5) schedule a Final Approval Hearing.

Dated:  September 12, 2022

**Pomerantz LLP**

By:  */s/ Omar Jafri*

25

Patrick V. Dahlstrom
Omar Jafri
Brian P. O'Connell
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
E-mail:  pdahlstrom@pomlaw.com
          ojafri@pomlaw.com


*Lead Counsel for Lead Plaintiffs
and the Class*

26