**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ISAAC SOLOMON and FRANCINE CANION, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>SPRINT CORPORATION, MICHEL COMBES, ANDREW DAVIES, MARCELO CLAURE and TAREK ROBBIATI<br><br>       Defendants. | **Civil Action No. 1:19-cv-05272-MKV**<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT** |

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

I.    INTRODUCTION ......................................................................................1

II.   NATURE OF THE ACTION ....................................................................2

    A.  Facts and Procedural History ...........................................................2

    B.  The Settlement .................................................................................4

        1.  Cash Consideration and Release ..............................................5

        2.  Notice to the Class ...................................................................5

        3.  Exclusion and Objection Deadline...........................................6

        4.  The Plan of Allocation ............................................................6

III.  ARGUMENT..............................................................................................7

    A.  The Court Should Approve the Settlement.......................................7

        1.  Certification of the Class Remains Appropriate ......................7

        2.  The Class Representatives and Lead Counsel Have Adequately Represented the Class ...............................................................7

        3.  The Court Should Approve the Settlement Because It is Fair, Reasonable, and Adequate ......................................................8

            a.  Complexity, Expense, and Likely Duration of the Litigation........10

            b.  Adequate Notice and Reaction of the Class...................11

            c.  Stage of Proceedings ....................................................11

            d.  Risks of Establishing Liability and Damages ...............12

            e.  Risks of Maintaining the Class Action Through Trial...................13

            f.  Range of Reasonableness of the Settlement ..................14

g.  The Settlement Resulted From Arm's-Length Negotiations .........15

h.  Greater Recovery ...........................................................................16

B.  The Court Should Approve the Plan of Allocation.................................................17

IV.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS..........18

V.    CONCLUSION.........................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
955 F.3d 254 (2d Cir. 2020)................................................................................................13

*Burns v. FalconStor Software, Inc.*,
No. 10 CV 4572 (ERK), 2014 U.S. Dist. LEXIS 203061 (E.D.N.Y. Apr. 11, 2014) ...............9

*Christine Asia Co. v. Yun Ma*,
No. 1:15-MD-02631(CM)(SDA), U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ........19

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................................ *passim*

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)....................................................................................................6, 17

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..........................................................................................................18

*Granada Investments, Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ..........................................................................................14

*Gordon v. Vanda Pharms. Inc.*,
No. 19 CV 1108(FB)(LB)*, 2022 U.S. Dist. LEXIS 169982 (E.D.N.Y. Sept. 15, 2022).........15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014).........................................................................................................13

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).............................................................................13, 15

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006)..............................................................................................14

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................................13

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895, 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011).........................14

*In re Citigroup, Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................................17

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...................................................................17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................10

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................17

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ...............................................................10, 11, 12

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................................17

*In re MetLife Demut. Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................................13, 14

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................13, 14, 16

*In re PaineWebber Ltd. P'ships Litig.*,
    117 F.3d 721 (2d Cir. 1997).....................................................................................13

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................................8

*In re Salomon Inc Sec. Litig.*,
    No. 91 CIV. 5442 (RPP), 1994 U.S. Dist. LEXIS 8038 (S.D.N.Y. June 16, 1994)................16

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) .............................................................................16

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................12

*In re Warner Commc'ns Sec. Litig.*,
    798 F.2d 35 (2d Cir. 1986)............................................................................9, 10, 12

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985).............................................................................12

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995)......................................................................................9

*Slomovics v. All for a Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ..........................................................................10

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993)......................................................................................9

*Velez v. Novartis Pharm. Corp.*,
   04 CIV 09194 CM, 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010).....................14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................................7, 8, 9, 15

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982)..................................................................................................8

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................3

Fed. R. Civ. P. 23(a) ...............................................................................................................7

Fed. R. Civ. P. 23(b)(3)...........................................................................................................7

Fed. R. Civ. P. 23(c)(1)(C) ...................................................................................................13

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................................18, 19

Fed. R. Civ. P. 23(e) .........................................................................................................7, 18

Fed. R. Civ. P. 23(e)(1)..........................................................................................................18

Fed. R. Civ. P. 23(f)...............................................................................................................13

**Statutes**

Private Securities Litigation Reform Act of 1995 ...................................................................2, 18

**Additional References**

4 Herbert Newberg and William B. Rubenstein, Newberg and Rubenstein on Class Actions
(6th ed. 2022). ......................................................................................................................16

Manual for Complex Litigation, Third (1995)............................................................................15

NERA, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review (Jan. 24,
2023) ......................................................................................................................................15

## I.      INTRODUCTION

Lead Plaintiff Isaac Solomon and additional Plaintiff Francine Canion (hereafter the "Plaintiffs") on behalf of themselves and the Settlement Class,[1] in the above-caption action ("Action") respectfully submit this unopposed memorandum of law in support of their motion for final approval of the proposed settlement ("Settlement"), as set forth in the Stipulation of Settlement filed with the Court on September 12, 2022.  ECF Nos. 83, 87-1.[2]

Plaintiffs propose that the Settlement Class Members release the claims advanced in this Action for $3.75 million.  The Parties reached the Settlement after extensive negotiations with the assistance of an experienced mediator.  Plaintiffs scrutinized the claims brought on behalf of the Settlement Class through an extensive investigation, drafted multiple complaints, and successfully convinced the Court to allow the case to proceed to discovery, at least in part. Through these processes and events, Plaintiffs came to appreciate the strengths and weaknesses of their case.

Plaintiffs followed the Court-approved notice plan to solicit claims, requests for exclusions, and objections.  As of July 14, 2023, Plaintiffs have only received one request for exclusion, from an individual investor who was not a member of the Settlement Class to begin with, and Plaintiffs have received no objections to the Settlement.  For these reasons and those set forth below, the

---

[1] The Settlement Class, as defined in the Stipulation of Settlement, consists of all individuals and entities who purchased or otherwise acquired Sprint common stock between October 25, 2017 and November 1, 2019, both dates inclusive, and who were damaged thereby.  Excluded from the Settlement Class are (i) Defendants; (ii) the parent entity, officers and directors of the Company, at all relevant times; (iii) members of the immediate families of such officers and directors of the Company, and their legal representatives, heirs, successors or assigns; and (iv) any entity in which Defendants have or had a controlling interest.  ECF No. 87-1.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement.  Except where otherwise indicated, paragraph references in the form "¶__" are to the numbered paragraphs of the Amended Class Action Complaint (the "Complaint"), filed July 31, 2020, ECF No. 29.

Settlement is fair, reasonable, and adequate, and Plaintiffs respectfully request the Court to approve it.

Lead Counsel also consulted with an economic expert to formulate a fair, reasonable, and adequate Plan of Allocation for the Settlement Fund. The Plan of Allocation treats all claimants fairly based on the applicable law. The Court should also approve the Plan of Allocation.

## II.    NATURE OF THE ACTION

### A.    Facts and Procedural History

On June 5, 2019, Plaintiff Isaac Solomon filed a class action complaint against Defendants Sprint Corporation ("Sprint"), Michel Combes ("Combes") and Andrew Davies ("Davies") alleging violations of the federal securities laws in the United States District Court for the Southern District of New York. On May 13, 2020, the Court entered an Order appointing Isaac Solomon to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B)(iii) of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and approved Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel. ECF No. 23.

On July 31, 2020, Lead Plaintiff Isaac Solomon and Plaintiff Francine Canion filed the Amended Complaint against Sprint, Combes, Davies and Tarek Robbiati (collectively the "Defendants"). ECF No. 29. Plaintiffs' Complaint alleged that Defendants repeatedly hyped the Company's quarter over quarter growth in postpaid net additions, but failed to disclose that no later than April 2018, Defendants informed Sprint's Board of Directors that postpaid handset gross and net adds were declining with postpaid churn for Sprint expected to be the highest among all national carriers. ¶¶84-87. While Sprint repeatedly touted non-phone devices as accretive contributors to postpaid net additions, Defendants submitted a letter to the Federal Communications Commission ("FCC") in April 2019, in which Sprint admitted that its statements regarding postpaid net additions throughout the Settlement Class Period were misleadingly

"incomplete," ¶158, because incorporating free lines and non-phone devices to postpaid net additions were "not a realistic analysis" of Sprint's "overall competitive position and prospects." *Id*. The Complaint also alleged that Sprint misappropriated funds it received for a federal assistance program known as Lifeline, rendering the Company's revenue and income figures and assurances of effective internal controls over financial reporting false. ¶¶16, 24.

On the evening of April 16, 2019, *The Wall Street Journal* published an article that discussed Sprint's April 15, 2019 letter to the FCC, and noted that Sprint had told the FCC "that its current performance would be unsustainable without the merger due to weak network infrastructure and a customer base prone to leave in search of better deals." ¶159. On this partial disclosure or the materialization of the risks thereof, the price of Sprint's common stock fell from $6.01 per share on April 16, 2019 to close at $5.64 per share on April 17, 2019. ¶160. Partial disclosures in September 2019 and November 2019 revealed the truth about Sprint's misappropriation of Lifeline subsidies. ¶¶19, 24.

On October 2, 2020, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), and an accompanying memorandum of law. ECF Nos. 42, 43. On October 23, 2020, Plaintiffs responded by filing a memorandum of law in opposition to the motion to dismiss. (ECF No. 45), to which Defendants filed a reply on November 6, 2020. ECF No. 49. On July 1, 2021, Plaintiffs filed a sur-reply to the reply in support of the motion to dismiss, (ECF No. 56), to which Defendants responded with their own additional reply on July 7, 2021. ECF No. 57. The Court held oral argument on the motion on August 4, 2021.

On March 25, 2022, the Court denied in part and granted in part Defendants' motion to dismiss the Amended Complaint. ECF No. 62. The Court allowed Plaintiffs' claims related to Defendants' statements concerning Sprint's post-paid additions to proceed to discovery. *Id.* The

3

Court ruled that the Amended Complaint adequately pled falsity and loss causation regarding the Lifeline-related claims, including false statements about Sprint's revenue figures and the adequacy of the Company's internal controls over financial reporting, but found that Plaintiffs did not sufficiently plead scienter for the Lifeline-related claims. *Id*. Thereafter, Plaintiffs moved to file a Second Amended Complaint that alleged the Lifeline-related claims with additional details using information subsequently obtained as the result of Freedom of Information Act and Public Records requests. *See* ECF No. 74; s*ee also* Declaration of Omar Jafri ("Jafri Declaration" or "Jafri Decl.") ¶¶26-27. The Court, however, denied leave to amend. As a result, the claims related to postpaid additions remained in this litigation in the absence of an appeal of the Court's dismissal of the Lifeline-related claims.

### B.    The Settlement

On July 21, 2022, the Parties participated in an extended mediation session conducted by Jed Melnick, Esq., a mediator at JAMS with experience in mediating settlements in securities class actions. Following a full-day mediation session, Mr. Melnick made a mediator's proposal to the Parties to settle the Action for $3.75 million, which both Plaintiffs and Defendants accepted. The Parties thereafter executed a Term Sheet on August 4, 2022 and finalized the terms of the Stipulation executed on September 12, 2022.

On September 12, 2022, Plaintiffs filed a motion for preliminary approval of the Settlement, which included the Stipulation and proposed notices to the Settlement Class Members. ECF Nos. 83-87. On April 11, 2023 the Court entered the Preliminary Approval Order, called for notice, and set a Fairness Hearing for August 8, 2023. ECF No. 89. On May 18, 2023, the Court re-set the Fairness Hearing to August 14, 2023. ECF No. 91.

### 1.    Cash Consideration and Release

The Settlement provides for a payment of $3.75 million in cash to pay the Settlement Class's claims.  If the Court grants final approval of the Settlement, Plaintiffs, on behalf of the Settlement Class Members, will forever release their claims against the Defendants and their related parties that were alleged or could have been alleged in this Action.  Defendants will release any claims that could have been brought against Plaintiffs related to the prosecution of this Action.

### 2.    Notice to the Settlement Class

Pursuant to the Preliminary Approval Order, the Notice was mailed to potential class members, brokers, and nominee holders.  *See* Declaration of  Eric Nordskog Regarding Notice Administration ¶¶3-6 ("Nordskog Decl.").  The Notice advised potential class members of the terms of the Settlement and Plan of Allocation; that Lead Counsel would seek a fee award not to exceed one-third of the Settlement Amount, plus interest; recovery of actual litigation expenses not to exceed $140,000; an award to Plaintiffs of $5,000; and that any objections to any aspect of the Settlement or to the fee and expense request were due to be received by the Court and counsel no later than July 25, 2023.  Nordskog Decl., Ex. A.

As of the date of this writing, 24,420 copies of the Notice were mailed to potential class members.  Nordskog Decl. ¶6.  The Settlement Administrator also established and continues to maintain a website dedicated to the Settlement, www.SprintSecuritiesClassAction.com.  *Id*. ¶12. The website also provides a link for online claim filing and lists important deadlines.  *Id*.  The Settlement Administrator also maintains a case-specific toll-free telephone hotline.  *Id*. ¶11. Additionally, the Settlement Administrator disseminated the Summary Notice over *PR Newswire*. *Id*. ¶8.

Beginning on or about May 11, 2023, the Settlement Administrator also commenced a 30-day digital media campaign publicizing the Settlement, which resulted in at least 137 million

5

impressions among the targeted audience. *Id*. ¶9. Banner ads were delivered to targeted financial

websites such as marketwatch.com, cnbc.com, finance.yahoo.com, and many others. *Id*. Banner

advertisements were placed in premium positioning on multiple devices, including desktop, tablet,

and mobile devices. Viewers were able to click on the banner advertisement and instantly be

directed to the case-specific settlement website. *Id.* ¶9; Ex. C. Also, on or about May 11, 2023,

the Settlement Administrator began to utilize microtargeting strategies on social media (LinkedIn

and Twitter) to identify and engage potential Settlement Class Members. *Id.* ¶10; Ex. D.

### 3.    Exclusion and Objection Deadline

Requests for exclusion must be received on or before July 31, 2023. As of July 5, 2023,

there has only been one request for exclusion, from an individual investor who was not a member

of the Settlement Class to begin with and would not be eligible to recover from the Settlement

proceeds. Nordskog Decl. ¶13, Jafri Decl. ¶38. Objections to the Settlement must be received by

the Court and counsel by July 31, 2023. As of this writing, there have been no objections to any

aspect of the Settlement. Nordskog Decl. ¶14.

### 4.    The Plan of Allocation

The Notice sent to potential Class Members describes the Plan of Allocation. Nordskog

Decl., Ex. A. at 3-6. Lead Counsel formulated the Plan of Allocation with the help of an economic

expert and the Settlement Administrator to distribute the Settlement Fund fairly and reasonably to

Class Members consistent with the federal securities laws and the principles of loss causation. To

that end, the Plan of Allocation does not compensate losses resulting from "in and out"

transactions, *i.e.*, losses from sales made prior to revelation of the truth. *See Dura Pharm., Inc. v.

Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant

truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of

Allocation establishes a formula that determines Authorized Claimants' recognized losses based

on the foregoing application of the securities laws and calculates Class Members' *pro rata* share of the Settlement Fund (*i.e.*, the Settlement Amount less attorneys' fees and expenses, and a reimbursement award to each Plaintiff).  Nordskog Decl., Ex. A at 3-6.

## III.   ARGUMENT

### A.  The Court Should Approve the Settlement

#### 1.   Certification of the Settlement Class Remains Appropriate

Federal Rule of Civil Procedure 23(a) provides that a movant must meet four requirements to be entitled to class certification: numerosity, commonality, typicality, and adequacy of representation.  In addition, Federal Rule of Civil Procedure 23(b)(3) provides that the movant must show both (i) that common questions predominate over any questions affecting only individual members, and (ii) that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

In the Preliminary Approval Order, the Court found that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure had been satisfied.  ECF No. 89 at 2 (finding each of the six factors of Rule 23(a) and (b)(3) had been satisfied).  Nothing has changed since the Court entered the Preliminary Approval Order.  Thus, Plaintiffs respectfully request the Court to grant final certification to this Class.

#### 2.   The Class Representatives and Lead Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel more than satisfy Rule 23(e)(2)(A)'s "adequate representation" requirement. That requirement focuses mainly on the "alignment of interests between class members." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc,* 396 F.3d 96, 106-07 (2d Cir. 2005).  Here, Plaintiffs' interests (and those of Lead Counsel) were fully aligned at all times with the interests of absent Settlement Class Members.  All brought the exact same claims asserting the

same legal theory over the same Class Period.  And, because Plaintiffs, Lead Counsel, and the Class Members all "share the common goal of maximizing recovery, there is no conflict of interest." *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Plaintiffs and Lead Counsel vigorously litigated this case since their appointment on May 13, 2020.  Plaintiffs have significantly contributed to the Action by overseeing the litigation and participating in settlement discussions with Lead Counsel. Plaintiffs and Lead Counsel substantially advanced this Action and benefitted the Settlement Class by: (i) conducting an extensive review of all relevant public filings and other publicly-available information; (ii) obtaining information from the regulatory bodies after substantial negotiation that supported Plaintiffs' claims; (iii) drafting multiple iterations of the complaint, including the Initial Complaint, the Amended Complaint, and the proposed Second Amended Complaint; (iv) successfully defeating Defendants' attempt to have the case dismissed on the pleadings; (v) appearing at Court hearings and conferences; (vi) drafting a detailed mediation statement that assessed the strengths and weaknesses of the Action, as well as the risks and advantages of continued litigation; (vii) engaging in a full-day mediation session overseen by Mr. Melnick, resulting in a favorable financial Settlement for the Class; and (viii) negotiating the terms of the Settlement, including the Stipulation and exhibits thereto.  Thus, Plaintiffs and Lead Counsel readily satisfy Rule 23(e)(2)(A)'s adequate representation requirement.

**3.    The Court Should Approve the Settlement Because It is Fair, Reasonable, and Adequate**

As a matter of public policy, courts favor settlements, *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982),[3] especially in complex class actions like this one.  *Wal-Mart Stores, Inc.*, 396 F.3d at 116.

---

[3] Emphasis is added and internal citations and quotations are omitted unless otherwise stated.

When evaluating a proposed settlement under Federal Rule of Civil Procedure 23(e), a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate, and was not the product of collusion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078-79 (2d Cir. 1995). A proposed class action settlement enjoys a presumption of fairness where, as here, it resulted from arm's-length negotiations, through a mediator, conducted by capable counsel who are experienced in class action litigation arising under the federal securities laws. *See Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 U.S. Dist. LEXIS 203061, *8-9 (E.D.N.Y. Apr. 11, 2014) (citing *Wal-Mart*, 396 F.3d at 116). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit are well-settled:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). In weighing these factors, courts recognize that settlements require give and take between the negotiating parties. Thus, courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*,

9

798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.")

The proposed settlement is fair, reasonable and adequate under the *Grinnell* factors and the Court should approve it.

### a.    Complexity, Expense, and Likely Duration of the Litigation

The Settlement avoids further, expensive litigation that would not necessarily lead to a greater recovery for the Settlement Class Members. *See Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class."). "[F]ederal courts [] have long recognized that [securities class action] litigation is notably difficult and notoriously uncertain." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011).

While this Action was pending, Plaintiffs investigated and drafted multiple complaints, successfully defeated Defendants' attempt to dismiss the Complaint at least in part, and initiated steps to take discovery. Conducting discovery and retaining experts would be expensive, and a motion for summary judgment, and trial would also be expensive and risky. Not only would the Settlement Class risk recovering nothing at all or less than the Settlement, but because the loser at trial would almost certainly appeal, the Settlement Class would likely not collect any judgment for many years. *See In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006) ("A trial would probably not have resulted in the conclusion of the action. Time-consuming post-trial motions and appeals were almost inevitable. The action could have gone on for many more years. Either no recovery for the class or substantial loss to defendants could have ultimately resulted.").

**b.      Adequate Notice and Reaction of the Settlement Class**

A "[l]ack of objection is strong evidence of the settlement's fairness." *Luxottica*, 233 F.R.D. at 311; *Grinnell*, 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants). As of July 14, 2023, no one has objected to the Settlement, and only one individual, who was not a Class member to begin with, has requested exclusion from the Settlement. Nordskog Decl. ¶¶13-14; Jafri Decl. ¶38. Plaintiffs will again address any requests for exclusion or objections in their Reply, should any additional ones be received after this motion is filed but before the Court holds a Fairness Hearing on August 14, 2023.

**c.      Stage of Proceedings**

The Parties agreed to the Settlement only after Plaintiffs: (1) conducted an extensive review of all relevant public filings and other publicly-available information; (2) obtained information from the regulatory bodies after substantial negotiation that supported Plaintiffs' claims; (3) drafted multiple iterations of the complaint, including the Initial Complaint, the Amended Complaint, and the proposed Second Amended Complaint; (4) successfully defeated Defendants' attempt to have the case dismissed on the pleadings at least in part; (5) appeared at Court hearings and conferences; (6) negotiated a discovery schedule with the Defendants and prepared to serve and take discovery; (7) drafted a detailed mediation statement that assessed the strengths and weaknesses of the Action, as well as the risks and advantages of continued litigation; (8) engaged in a full-day mediation session overseen by Mr. Melnick, resulting in a favorable financial Settlement for the Settlement Class; and (9) negotiated the terms of the Settlement, including the Stipulation and exhibits thereto. Jafri Decl. ¶50. Accordingly, Plaintiffs had the information they needed to evaluate the Settlement, and before entering into the Settlement, Lead Counsel and Plaintiffs understood the strengths and weaknesses of their case. *See Luxottica*, 233 F.R.D. at 312 (settlement approved where counsel had "a clear view of the strengths and weaknesses of the

11

case") (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986)).  The stage of proceedings thus weighs in favor of approving the Settlement.

### d.    Risks of Establishing Liability and Damages

In assessing class settlements, courts recognize that the immediacy and certainty of a recovery provide benefits to the class.  *See Luxottica*, 233 F.R.D. at 316 ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate").  Chasing a better result through continued litigation risks that Class Members would end up with less money or no money at all.

One of these risks is that the Court might grant summary judgment.  One of the elements Plaintiffs must prove, scienter, is notoriously difficult to establish.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008).  In this case, Defendants strenuously challenge that element as well as other elements of a securities fraud claim.  There is a risk that the Court could agree that Defendants did not materially mislead investors or do so with reckless disregard for the truth.  If the Court granted summary judgment, then Plaintiffs would have spent years, even more attorney hours, hundreds of thousands of dollars in additional costs, and many judicial resources, and recovered nothing.

Likewise, if the Action proceeded to trial, the jury might find against Plaintiffs at trial and Plaintiffs and the Settlement Class would recover nothing after expending significantly more time, expense, judicial resources, and the jury's time.  Proof of damages in a securities case also is always difficult, and invariably requires highly technical expert testimony.  The experts retained by Plaintiffs and Defendants no doubt would have widely divergent views as to the range of recoverable damages at trial.  Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise.  *See*

12

*generally In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (stating that "[i]n such a battle, Lead Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Finally, a favorable jury verdict could be reversed on appeal.  In that case, in addition to all the costs of taking a case through trial, Plaintiffs would have also spent the Second Circuit's time and again recovered nothing.

### e.        Risks of Maintaining the Class Action Through Trial

Another risk is that the Court might deny class certification.  No class has been certified for litigation purposes. Risks related to class certification "militate[] in favor of settlement approval." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268-69 (S.D.N.Y. 2012). Moreover, even if a litigation class were certified, risks to maintaining certification would persist; at any time Defendants could move for modification or decertification prior to final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C); *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 258 (2d Cir. 2020) (citing Fed. R. Civ. P. 23(f)).  In maintaining class certification, Defendants may challenge whether Sprint's common stock traded on an efficient market, entitling investors to a presumption of reliance on Defendants' alleged false statements and omissions.  Defendants could then attempt to rebut that presumption by showing a lack of price impact.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). Further, the Parties may dispute whether Sprint's common stock traded on an efficient market with expert testimony, subjecting the Settlement Class to all the risks inherent to any such battle of the experts.  *See In re MetLife Demut. Litig.*, 689 F. Supp. 2d 297, 338-39 (E.D.N.Y. 2010).  The risks of maintaining a class action through trial thus weigh in favor of approving the Settlement.

13

### f.    Range of Reasonableness of the Settlement

Defendants have no economic incentive to enter into settlements unless they receive a discount on the value of the claims.  Further, in a factually and legally complex securities class action lawsuit, responsible counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near the full amount of the class-wide damages that they would propose.  Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992).

Indeed, the Second Circuit has held that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455; *accord In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006).  "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455, n.2.  Courts agree that the determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum.  *See MetLife*, 689 F. Supp. 2d at 340 (citing *PaineWebber*, 171 F.R.D. at 130).

In this case, the Settlement recovers a substantial portion – approximately 12.4% of maximum estimated damages for the claims that the Court allowed to proceed to discovery.  This percentage of recovery of damages is well above the range of typical class action securities settlements.  *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895, 2011 U.S. Dist. LEXIS 53007, *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the class's total estimated losses); *Velez v. Novartis Pharm. Corp.*, 04 CIV 09194 CM, 2010 U.S. Dist. LEXIS 125945, *40 (S.D.N.Y. Nov. 30, 2010) (noting that

"courts often approve class settlements even where the benefits represent 'only a fraction of the potential recovery'" and collecting cases from the Southern District where settlements were approved for percentages of estimated damages such as 1.6%, 2%, and 5%). Moreover, the percentage recovery here also exceeds by over six times the 1.8% median settlement value in 2022 for all securities class actions. *See* NERA, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review at p. 17 (Jan. 24, 2023).[4]  Thus, the Settlement proposes a reasonable recovery for Class Members.

g.      **The Settlement Resulted From Arm's-Length Negotiations**

The experience and reputation of the Parties' counsel and the arm's-length nature of the negotiations are entitled to great weight. *See, e.g.*, *Wal-Mart*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third § 30.42 (1995)) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'"); *Am. Bank Note Holographics*, 127 F. Supp. 2d at 428 ("Courts have looked to ensure that the settlement resulted from arm's-length negotiations between counsel possessed of experience and ability necessary to effective representation of the class's interests.").

The record demonstrates the procedural fairness of the Settlement.  The proposed Settlement was the result of lengthy negotiations between Plaintiffs' counsel and Defendants' counsel, with the aid of a well-regarded mediator with experience in securities class actions. *See Gordon v. Vanda Pharms. Inc.*, No. 19 CV 1108 (FB)(LB),  2022 U.S. Dist. LEXIS 169982, *8 (E.D.N.Y. Sep. 15, 2022) ("The participation of [Jed D. Melnick, a] highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without

---

[4] *Available at* https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf

collusion."). The attorneys on both sides are experienced and thoroughly familiar with the factual and legal issues posed in the litigation (as evidenced by the procedural history of the case and the issues briefed before the Court). Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (when settlement negotiations are conducted at arm's length, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (quoting *In re Paine Webber Ltd. P'ships. Litig.*, 171 F.R.D. at 125); *In re Salomon Inc Sec. Litig.*, No. 91 CIV. 5442 (RPP), 1994 U.S. Dist. LEXIS 8038, *42 (S.D.N.Y. June 16, 1994) (judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"); 4 Herbert Newberg and William B. Rubenstein, Newberg and Rubenstein on Class Actions § 13.59 (6th ed. 2022).

Lead Counsel urges final approval of the proposed Settlement based upon their: knowledge of the strengths and weaknesses of the case; analysis and investigation to date; the likely recovery at trial and/or after appeal; and experience in evaluating proposed class action settlements. Defendants are also represented by highly-capable counsel that zealously represented their clients. These experienced firms entered into the Settlement following extensive negotiations.

### h.      Greater Recovery

For the reasons explained herein, the possibility of greater recovery than provided by the Settlement is not a guarantee and poses several risks to continue the litigation. If the Action proceeds, both sides would be expending substantial resources and thus could deplete funds available to the Settlement Class.

The Settlement should therefore be finally approved because it is fair, adequate and reasonable under the Second Circuit's *Grinnell* factors.

**B.  The Court Should Approve the Plan of Allocation**

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another.  The Plan of Allocation was formulated with the principles of loss causation in mind.  Therefore, those shareholders who bought and then sold shares, "before the relevant truth begins to leak out" have no recognized losses under the Plan of Allocation because "the misrepresentation will not have led to any loss."  *Dura*, 544 U.S. at 342; *see also In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable.").  In addition to excluding those who incurred no provable damages, the Plan of Allocation also recognizes differences in damages incurred by those who bought and sold their shares at different times during the Settlement Class Period, reflecting the different damages due to the purchase and sale prices that they paid.  Nordskog Decl., Ex. A at 3-6.  After considering lack of loss causation and the timing of Class Members' stock purchases and sales, the Plan of Allocation does not discriminate between Class Members who are in the exact same position.  The Net Settlement Fund will be distributed on a *pro rata* basis depending on a Class Member's recognized losses.  *See, e.g., In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

In short, the Plan of Allocation has a rational basis, which is all the law requires, and Lead Counsel believes that it fairly compensates Class Members, and respectfully requests the Court to approve it.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'").

17

## IV.    NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice must be the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, including the following, without limitation: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) a detailed description of the Plan of Allocation; (v) the reasons for proposing the Settlement; (vi) the fees and expenses to be sought by Lead Counsel, administrative costs, and reimbursement awards to Plaintiffs; (vii) the Settlement Class Members' rights, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Class Member to examine the Court records should they desire to do so; and (x) the binding effect of a judgment on Class Members.

The Notice was disseminated under Lead Counsel's supervision by the Court-appointed third-party Settlement Administrator, A.B. Data. Nordskog Decl. ¶¶2-10. In accordance with the Court's orders, A.B. Data distributed 24,420 Notice and Claim Forms to Class Members, brokers, and nominee holders. *Id*. ¶6. The Summary Notice was posted over *PR Newswire* on May 19, 2023. *Id*. ¶8. The Notice and Claim Forms were also available on a website dedicated to the Settlement and maintained by A.B. Data. *Id.* ¶12. In addition, a targeted digital media campaign

18

to reach out to potential Class Members was conducted that resulted in at least 137 million impressions among the targeted audience. *Id*. ¶9.

This combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire and posted on the internet together with a targeted digital media campaign, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *Christine Asia Co. v. Jack Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836, at \*58 (S.D.N.Y. Oct. 16, 2019) ("the combination of Notice Packets sent individually by first-class mail and/or e-mail to those Class Members who could be identified with reasonable effort, combined with the print and Internet-based publication of Settlement documents was 'the best notice . . . practicable under the circumstances.' Fed. R. Civ. P. 23(c)(2)(B)").

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to (i) certify the Settlement Class for Settlement purposes, (ii) approve the Settlement, and (iii) approve the Plan of Allocation.

Dated: July 14, 2023                                    */s/ Omar Jafri*

                                                                **POMERANTZ LLP**

                                                                Patrick V. Dahlstrom
                                                                Omar Jafri
                                                                Brian P. O'Connell
                                                                Ten South La Salle Street, Suite 3505
                                                                Chicago, Illinois 60603
                                                                Telephone: (312) 377-1181
                                                                E-mail:  pdahlstrom@pomlaw.com
                                                                            ojafri@pomlaw.com

19

boconnell@pomlaw.com

-and-

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
        ahood@pomlaw.com

20