| | |
|---|---|
| ISAAC SOLOMON, and FRANCINE CANION, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT CORPORATION, MICHEL COMBES, ANDREW DAVIES, MARCELO CLAURE, and TAREK ROBBIATI,<br><br>Defendants. | **Case No. 1:19-cv-5272-MKV**<br><br>CLASS ACTION<br><br>**DECLARATION OF OMAR JAFRI IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND A REIMBURSEMENT AWARD TO PLAINTIFFS** |

The undersigned hereby declares under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief. Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement filed with the Court on September 12, 2022 [ECF Nos. 83, 87-1].

1.     I, Omar Jafri, am an attorney licensed to practice in the State of Illinois and appearing in this case *pro hac vice*. I am a Partner with the firm of Pomerantz LLP, the firm appointed Lead Counsel in the above-captioned litigation, and I have represented Lead Plaintiff Isaac Solomon and additional Plaintiff Francine Canion (collectively, the "Plaintiffs") throughout this litigation. I have personal knowledge of the facts asserted herein, and could testify to those facts if called to do so.

2.     I submit this Declaration in support of Plaintiffs' Unopposed Motion for Final Approval of the Class Action Settlement, and an Application for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and a Reimbursement Award for Plaintiffs (the "Fee

1

Brief"), filed concurrently herewith. The purpose of this Declaration is to set forth the nature of the investigation, legal briefing, litigation and negotiations that led to the Settlement with Defendants Sprint Corporation ("Sprint"), Michel Combes, Andrew Davies, Marcelo Claure, and Tarek Robbiati (collectively, "Defendants"). This Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's fee and expense request and Award to Plaintiffs are reasonable and should be approved by the Court.

3. The Settlement provides that the Class Members – certain investors in the securities of Sprint – release the claims advanced in this Action for $3.75 million.

4. After Plaintiffs moved for preliminary approval of the Settlement on September 12, 2022, the Court signed an Order preliminarily approving the Settlement, preliminarily certifying the Class for the purposes of settlement and approving the form and manner of providing Notice to potential Class Members. ECF No. 89.

5. Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of one-third of the Settlement Amount, plus interest, recovery of actual litigation expenses in the amount of $121,491.12 and an award to each of the Plaintiffs of $5,000.

6. Attached hereto as Exhibit A is a true and correct copy of the Declaration of Eric Nordskog On Behalf of A.B. Data, Ltd. Regarding Notice Administration ("Nordskog Decl."), dated July 14, 2023.

7. Attached hereto as Exhibit B is a true and correct copy of the Declaration of Omar Jafri on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), dated July 14, 2023.

8.      Attached hereto as Exhibit C is a true and correct copy of the Declaration of Lead Plaintiff Isaac Solomon, dated July 14, 2023.

**Procedural History**

9.      On June 5, 2019, an initial complaint was filed in this Action.  ECF No. 1.

10.      On May 13, 2020, the Court entered an Order appointing Isaac Solomon to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B)(iii) of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and approved Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") to serve as Lead Counsel.  ECF No. 23.

11.      Both before and after the Court's May 13, 2020 Order, Lead Counsel carried out an extensive investigation into the factual basis for the claims.  Lead Counsel reviewed Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Sprint (or the "Company"), analysts' reports and advisories about the Company, and other information readily obtainable on the Internet.  In addition, Lead Counsel's private investigator tracked down and interviewed numerous former employees of Sprint to develop the claims asserted in this Action.

12.      On July 31, 2020, Plaintiffs filed their Amended Class Action Complaint (the "Complaint").  ECF No. 29.  In the Complaint, Plaintiffs alleged that Defendants omitted any discussion of known, material adverse facts regarding postpaid additions, a key metric by which the market evaluated Sprint's performance, and the Lifeline program.

13.      Specifically, the Complaint alleged that, Sprint improperly inflated subscriber growth and its financial results, including inflating revenue from federal reimbursements received under the Lifeline program, in order to remain an attractive target for a merger, despite the fact

that, at the same time, the Defendants had internally informed the Company's Board of Directors as early as between January and March 2018 that Sprint could not remain a meaningful company on a standalone basis and that a path without a merger "was not realistic and Sprint's turnaround efforts were failing." ¶6.[1]

14.     As a result, the Complaint alleged, Defendants made false and misleading statements that caused Sprint's stock to trade at artificially inflated prices during the Class Period.

15.     Plaintiffs also alleged that Defendants' statements were revealed to be false and misleading through a series of partial disclosures beginning on April 15, 2019 when Defendants filed a letter with the FCC stating that the Company was not on a "sustainable competitive path," had a "deficient network," and "was losing customers" among other things and continuing through November 12, 2019 with the Company's filing of its Amended Annual Report.  ¶¶158-168. Plaintiffs alleged that they and the members of the proposed Class of Sprint investors they sought to represent were damaged upon the disclosure and/or materialization of the risks concealed by Defendants' Class Period misrepresentations and omissions.

16.     On October 2, 2020, Defendants filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 43.

17.     After Defendants filed their Motion to Dismiss, Lead Counsel researched and drafted a memorandum of law in opposition to Defendants' Motion to Dismiss.

18.     On October 23, 2020, Plaintiffs filed their memorandum of law in opposition to Defendants' Motion to Dismiss, arguing that the Complaint stated actionable claims for each statement challenged therein.  ECF No. 45.

---

[1] All references herein to "¶" or "¶¶" are to the Complaint, unless indicated otherwise.

19. On November 6, 2020, Defendants filed a memorandum setting forth Defendants' arguments in reply. ECF No. 49.

20. On November 17, 2020, Plaintiffs filed a letter request to file a sur-reply to address the Defendants' newly raised arguments in their reply memorandum. ECF No. 52

21. On June 29, 2021, the Court entered an Order granting Defendants' request for oral argument and Plaintiffs' request for leave to file a sur-reply. ECF. No. 55.

22. On July 1, 2021, Plaintiffs filed their sur-reply memorandum in opposition to the Defendants' Motion to Dismiss. ECF No. 56.

23. On August 4, 2021, the Court heard oral argument on Defendants' Motion to Dismiss. The August 4, 2021 Transcript was filed as ECF No. 60.

24. On March 22, 2022, the Court issued an Opinion and Order granting in part and denying in part the Defendants' Motion to Dismiss. The Court found that Plaintiffs pled actionable misstatements regarding Sprint's postpaid net additions and ordered the Defendants to file an answer by April 8, 2022. ECF No. 62.

25. On April 5, 2022, Defendants filed a letter motion requesting additional time to file their Answer to the Complaint [ECF No. 63] and the Court granted the same on April 6, 2022 [ECF No. 64]. On April 22, 2022, Defendants filed their Answer to the Complaint. ECF No. 54.

26. On June 8, 2022, Lead Counsel appeared before the Court for a scheduling conference. The Court thereafter entered a scheduling order which set deadlines for Plaintiffs' Motion for Leave to File a Second Amended Complaint, Defendants' response in opposition, and Plaintiffs' reply in support. The Parties also informed the Court that they would seek to privately mediate their dispute on July 21, 2022. The Court directed the Parties to submit a letter advising on the status of mediation by July 27, 2022. ECF No. 72.

27. On June 17, 2022, Lead Counsel drafted and filed a Motion for Leave to File a Second Amended Complaint to address the scienter allegations relating to Sprint's misstatements regarding its revenue figures and internal controls over financial reporting. ECF No. 74. The proposed amendment included additional details about Sprint's Lifeline program using information obtained as the result of Freedom of Information Act and Public Records requests.

28. On June 29, 2022, Defendants filed their opposition memorandum to Plaintiffs' Motion for Leave to File a Second Amended Complaint [ECF No. 75], and thereafter, Plaintiffs filed their reply memorandum in support of their motion [ECF No. 76].

29. On July 19, 2022, the Court denied Plaintiffs' Motion for Leave to File a Second Amended Complaint. ECF No. 80.

30. During this time, the Parties also engaged in preliminary negotiations regarding a potential settlement of the Action. The Parties ultimately agreed to participate in non-binding mediation and retained Jed Melnick, Esq. of JAMS ADR to facilitate the process.

**Settlement Negotiations and Terms**

31. The Parties scheduled the mediation with Mr. Melnick for July 21, 2022.

32. Lead Counsel drafted and served a mediation statement on July 14, 2022.

33. After consulting with damages experts, Lead Counsel participated in a full-day mediation session before Mr. Melnick on July 21, 2022. Mr. Melnick ultimately circulated a proposal to the Parties to settle the Action for $3,750,000, which the Parties accepted. The Parties executed a Term Sheet reflecting the agreement on August 4, 2022.

34. The Parties notified the Court of their agreement to settle the Action and requested that the Action be stayed for 45 days to allow Plaintiffs to file a motion for preliminary approval of the Settlement, as required by the PSLRA. *See* ECF No. 81.

35.     On September 12, 2022, after further negotiations, the Parties executed a Stipulation of Settlement.  *See* ECF No. 87-1.  On September 12, 2022, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement together with all its exhibits.  ECF Nos. 83-87.

36.     The Settlement provides for a payment of $3.75 million in cash to pay the Class's claims.  If the Court grants final approval of the Settlement, Plaintiffs, on behalf of the Class Members, will forever release their claims against the Defendants that were alleged or could have been alleged in this Action.  The Settlement Amount of $3.75 million is approximately 12.4% of the $30.3 million maximum estimated damages in this Action for the claims the Court allowed to proceed to discovery.

**Preliminary Approval and Response from the Settlement Class**

37.     On April 11, 2023, the Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and entered the Preliminary Approval Order.  ECF No. 89.

38.     Pursuant to the Preliminary Approval Order, requests for exclusion and objections to the Settlement must be received by July 31, 2023.  As of July 14, 2023, there have not been any requests for exclusion from any actual member of the Class, although one individual investor who was not a member of the Class filed an exclusion.  Nordskog Decl. ¶13.  Lead Counsel has received no other requests for exclusions.  As of this writing, Lead Counsel has not received any objections to any aspect of the Settlement.

39.     The Notice sent to potential Class Members describes the Plan of Allocation.  Nordskog Decl., Ex. A at 3-6.  Lead Counsel formulated the Plan of Allocation with the help of an economic expert and the Settlement Administrator to fairly and reasonably distribute the Net Settlement Fund to Class Members consistent with the federal securities laws and the principles

of loss causation. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.,* losses from sales made prior to the revelation of the truth. The Plan of Allocation establishes a formula that determines Authorized Claimants' recognized losses based on the foregoing application of the securities laws and calculates Class Members' *pro rata* share of the Net Settlement Fund (*i.e.*, the Gross Settlement Fund, less: (i) attorneys' fees and expenses; (ii) taxes and tax expenses; (iii) Notice and Administration Expenses; and (iv) a reimbursement award to Plaintiffs, if any). Nordskog Decl., Ex. A at 3-6.

**Complexity, Expense, and Likely Duration of the Litigation**

40.     While this Action was pending, Plaintiffs: (1) investigated the claims in this Action to file two amended complaints; (2) successfully opposed Defendants' efforts to have the case dismissed; (3) obtained and negotiated for substantial documentary evidence through Freedom of Information and Public Records requests; and (4) negotiated the Settlement. Thus, before entering into the Settlement, Plaintiffs and Lead Counsel understood the strengths and weaknesses of their case.

41.     Completing discovery and hiring additional experts would have imposed substantial costs, and summary judgment and trial would have been expensive and risky. Not only would the Class risk recovering nothing at all or less than the Settlement, but because the loser at trial would almost certainly appeal, the Class could not collect any judgment until the appeals were resolved.

**Risks of Continued Litigation**

42.     Plaintiffs and the Class face various risks that continued litigation would result in lesser or no recovery. The Court might grant summary judgment or deny class certification, or the

jury might find against Plaintiffs at trial. Even a favorable jury verdict might be reversed on appeal.

43. At many junctures, securities class action plaintiffs must prove esoteric concepts to recover on their claims. For example, to certify a class, plaintiffs must prove with expert testimony that the shares trade on an efficient market, a concept most jurors will never have heard of. To prove damages, plaintiffs must put a price figure not only on the information that was allegedly fraudulently withheld but also on all other confounding information released at the same time. To prove scienter, plaintiffs must ask the jury to peer into the mind of the defendants to determine that when they made public statements, they were doing so with an eye towards defrauding investors – even as these defendants steadfastly maintain their innocence on the stand in front of the jury.

44. Moreover, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Defendants would likely oppose any expert Plaintiffs retained with an expert expressing the opposite view.

45. Further, additional defense costs incurred through trial and appeal of this Action, if incurred, would likely erode the limited amount of insurance available to Defendants, and reduce Plaintiffs' source of recovery.

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

46. Lead Counsel is experienced in prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country, including in the Southern District of New York. Lead Counsel has extensive experience in the specialized field of shareholder securities litigation. Lead Counsel leveraged its experience and resources to assess the merits and value of the case and negotiate the Settlement.

47. Defendants are represented by highly capable, prominent counsel, Skadden, Arps, Slate, Meagher & Flom LLP. Notwithstanding this opposition, Lead Counsel was able to develop a case that was sufficiently strong to persuade Defendants to settle it on terms that are favorable to the Class.

**Lead Counsel's Fee and Expense-Reimbursement Request, and Plaintiffs' Reimbursement Award are Justified**

48. As compensation for their efforts, Lead Counsel is applying for an award of attorneys' fees in the amount of 33 1/3 percent of the Settlement Amount, plus interest, and reimbursement of $121,491.12 in expenses reasonably incurred in the prosecution and settlement of the Action. *See* Fee Brief filed herewith. Plaintiffs and Lead Counsel have prosecuted this case for over four years without any compensation whatsoever, and incurred tens of thousands of dollars in expenses without any guarantee of success.

49. The 33 1/3 percent fee request is routinely awarded by courts in the Second Circuit, as further detailed and discussed in the Fee Brief.

50. Plaintiffs, through the vigorous efforts of Lead Counsel, engaged in extensive factual investigation and litigation of the claims alleged in the Complaint. By the time the Settlement was reached, Lead Counsel had:

- conducted an extensive review of all relevant public filings and other publicly available information;

- interviewed numerous former employees of Sprint;

- obtained information from the regulatory bodies after substantial negotiation that supported Plaintiffs' claims;

- drafted and argued against the dismissal of the Complaint and moved for leave to file a proposed Second Amended Complaint;

- defeated Defendants' attempt to have the case dismissed on the pleadings;

- appeared for Court hearings and conferences;

- negotiated a discovery plan;

- drafted a detailed mediation statement and engaged in a full-day mediation session with an experienced Mediator, which resulted in a Settlement that is highly favorable to the Class;

- negotiated the terms of the Settlement, including the Stipulation and exhibits attached thereto; and

- successfully moved for preliminary approval of the Settlement.

51. The expertise and experience of Lead Counsel is also an important factor to be weighed in assessing a fair fee. Lead Counsel is comprised of experienced and skilled practitioners in the securities litigation field. Lead Counsel has achieved significant settlements in securities class actions, as well as being counsel of record in cases establishing important precedents that enable litigation such as this to be successfully prosecuted.

52. Lead Counsel prosecuted the Action vigorously, expending substantial time and resources without any assurance of obtaining any compensation for its efforts. Lead Counsel has already devoted a significant amount of time to this case, and fully expects to devote more time in connection with the future administration and distribution of the Settlement.

**Litigation Risks Support the Fee Award**

53. Lead Counsel represented Plaintiffs and the Class on a wholly contingent basis. From the outset, Lead Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require if the Action proved unsuccessful. In

undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

54. As described above, this Action involved serious legal and practical hurdles that could have resulted in no recovery. Continued litigation would have entailed significant risks to the Class, as the Action could be derailed in any number of ways before a final judgment was entered (and withstood possible appeal) in favor of a yet-to-be-certified Class of Sprint investors.

**The Reaction of the Settlement Class Supports the Requested Fee, Expenses, and Reimbursement Award to Plaintiffs**

55. 24,420 copies of the Notice have been mailed to potential Class Members. Nordskog Decl. at ¶6. The Notice advised Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Amount, plus interest, and reimbursement of litigation expenses incurred not to exceed $140,000.00.

56. As of the time of this filing, there have been no objections to the proposed fee application. Additionally, as of the time of this filing, no actual Class Member has filed a request for exclusion. Nordskog Decl. at ¶¶13-14.

**The Fee Request is Also Justified Under the Lodestar/Multiplier Approach**

57. Altogether, Lead Counsel dedicated 1,130.78 hours to prosecuting this Action. These hours were compiled from contemporaneous time records maintained by each attorney. Applying Lead Counsel's normal, hourly rates, which are consistent with those charged by similarly skilled firms in their respective geographic areas, to the hours expended in this Action yields a lodestar amount of $952,305.00. *See* Jafri Fee Decl. at ¶5.

12

58.     The fee requested represents a lodestar multiplier of approximately 1.312.  As reflected in the Notice, Lead Counsel has agreed to apply for fees cumulatively not to exceed 33 1/3% of the Settlement Amount, plus interest.

59.     Lead Counsel's work will not end with the Court's approval of the Settlement. Lead Counsel will necessarily spend more time and resources assisting Class Members with their Claim Forms, overseeing the claims process, and responding to Class Members' inquiries.

**Request for Reimbursement of Expenses**

60.     Lead Counsel also request reimbursement of $121,491.12 in expenses. *See* Jafri Fee Decl. ¶6.  The expenses requested are reflected in the records of Lead Counsel, prepared in the normal course of business, and are an accurate record of the expenses incurred.  The expenses noted are reasonable and were incurred for items necessary to the prosecution of the Action.  The expenses were incurred largely in conjunction with experts, mediation, necessary travel, private investigation, and computer-based legal research.  These expenses were all incurred for the benefit of the Class, and, as explained in the Fee Brief submitted herewith, are of the type generally billed to, and reimbursed by, individual clients in standard billing arrangements.

**The Requested Reimbursement Award to Plaintiffs Is Justified**

61.     Plaintiffs seek reimbursement, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), of their reasonable expenses and time incurred in connection with the Action in the amount of $5,000. The amount of time and effort devoted to this Action by Plaintiffs, who reviewed the complaints and numerous other filings in this Action, regularly communicated with Lead Counsel to stay apprised of developments in the case, and participated in settlement discussions with Lead Counsel, justifies this reasonable award.

**Conclusion**

62.    In view of the significant recovery to the Class, the substantial risks of this litigation, the substantial efforts of Lead Counsel, the quality of the work performed, the contingent nature of the fee, and the standing and experience of Lead Counsel, Lead Counsel respectfully submits that: the Settlement should be approved as fair, reasonable, and adequate; the Plan of Allocation should be approved as fair and reasonable; a fee in the amount of 33 1/3% of the Settlement Amount, plus interest, should be awarded to Lead Counsel; litigation expenses of $121,491.12 should be reimbursed in full; and each of the Plaintiffs should be awarded $5,000.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 14, 2023.

*/s/ Omar Jafri*

Omar Jafri, Esq.